UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION | Case No.: C 12-01382 PSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**(Re: Docket No. 29)** |

In this putative consumer privacy class action, Defendant Google, Inc. ("Google") moves to dismiss Plaintiffs Robert B. Demars, Lorena Barios, Nicholas Anderson, Matthew Villani, Scott McCullough, David Nisenbaum, Pedro Marti, and Allison C. Weiss's (collectively, "Plaintiffs") consolidated complaint.[1] In light of Plaintiffs' concessions in their opposition,[2] the operative complaint alleges violations of the Wiretap Act, 18 U.S.C. 2511 *et seq.*, California's Right of Publicity Statute, Cal. Civ. Code 3344, California's Unfair Competition Law, Cal. Bus. & Prof. Code 17200 *et seq.*, California's Consumer Legal Remedies Act, Cal. Civ. Code 1750 *et seq.*, common law breach of contract, common law intrusion upon seclusion, common law commercial misappropriation, and violation of consumer protection laws of the various states. The parties

---

[1] The other consolidated actions are: *De Mars et al. v. Google, Inc.,* 12-CV-01382 (filed on March 20, 2012) and *Anderson v. Google, Inc.*, 12-CV-01565 (filed on March 29, 2012).

[2] *See* Docket No. 37 at 25.

1

Case No.: C 12-01382 PSG
ORDER

appeared for hearing. Having studied the papers and considered the arguments of counsel, the court GRANTS Google's motion to dismiss with leave to amend.

## I. BACKGROUND

Unless otherwise noted, the following allegations are taken from the consolidated complaint and are presumed true for purposes of ruling on the pending motion.

Plaintiffs bring this nationwide class action against Google on behalf of all persons and entities in the United States who acquired a Google account between August 19, 2004 and February 29, 2012 and maintained such an account until on or after March 1, 2012.[3] Before March 1, 2012, Google maintained approximately 70 separate privacy policies for each of its products, each of which confirmed that Google used a consumer's personal information for only that particular product. On March 1, 2012, Google announced that it was eliminating the majority of its separate privacy policies in favor of a single, universal privacy policy that allows Google to cross-reference and use consumers' personal information across multiple Google products. Google explained the basis for the change in policy as follows:

> The main change is for consumers with Google Accounts . . . Our new Privacy Policy makes clear that, if you're signed in, we may combine information that you've provided from one service with information from other services. In short, we'll treat you as a single user across all our products, which will mean simpler, more intuitive Google experience.[4]

In other words, Google may now combine information collected from a consumer's Gmail account with information collected from that consumer's Google search queries, along with the consumer's activities on other Google products, such as YouTube, Picasa, Maps, Docs, and

---

[3] Plaintiffs also bring a nationwide class action against Google on behalf of a subclass of persons and entities in the United States that acquired a device powered by Android between August 19, 2004 and February 29, 2012, and continued to own that device on or after March 1, 2012. (the "Android Subclass").

[4] Docket No. 1 ¶ 8.

2
Case No.: C 12-01382 PSG
ORDER

Reader. According to Plaintiffs, in violation of its prior policies, Google now combines across its products logs of the following consumer information, without consumer consent:

- first and last name;
- home or other physical address (including street name and city);
- current, physical location, a consumer's email address, and other online contact information (such as the identifier or screen name);
- IP address;
- telephone number (both home and mobile numbers);
- list of contacts;
- search history from Google's search engine;
- web surfing history from cookies placed on the computer; and
- posts on Google+.

Plaintiffs contend that Google's new policy violates its prior policies because the new policy no longer allows consumers to keep information gathered from one Google product separate from information gathered from other Google products. Plaintiffs further contend that Google's new policy violates consumers' privacy rights by allowing Google to take information from a consumer's Gmail account and Google+ account, for which consumers may have one expectation of privacy, for use in a different context, such as to personalize Google search engine results, or to personalize advertisements shown while a consumer is surfing the internet, products for which a consumer may have an entirely different expectation of privacy.[5]

---

[5] According to Plaintiffs, the Federal Trade Commission ("FTC") previously found Google deceptively claimed that it would seek the consent of consumers before using their information for a purpose other than for which it was collected, and that Google had misrepresented consumers' ability to exercise control over their information. On October 11, 2011, Google and the FTC entered into a consent order to resolve the matter.

3

Case No.: C 12-01382 PSG
ORDER

Plaintiffs allege that they each acquired a Gmail account before the March 1, 2012 announcement of the new policy.[6] Plaintiffs also allege that that they each purchased an Android-powered mobile phone before the March 1 date, that they did not consent to Google's post-March 1 data aggregation activities, and that they received no compensation for these activities.[7]

## II. LEGAL STANDARDS

To satisfy Article III, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[8] A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.[9] In that event, the suit should be dismissed under Rule 12(b)(1).[10] The injury required by Article III may exist by virtue of "statutes creating legal rights, the invasion of which creates standing."[11] In such cases, the "standing question . . . is whether the constitutional or standing provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[12]

A complaint must state a "short plain statement of the claim showing that the pleader is entitled to relief."[13] While "detailed factual allegations" are not required, a complaint must include

---

[6] *See* Docket No. 14 at 7-9.

[7] *See id.*

[8] *See Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.,* 528 U.S. 167, 180-181 (2000).

[9] *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 101 (1998).

[10] *See id.* at 109-110.

[11] *See Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir. 2010) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)).

[12] *See id.*

[13] Fed. R. Civ. P. 8(a)(2).

4
Case No.: C 12-01382 PSG
ORDER

"more than an unadorned, the defendant-unlawfully-harmed-me accusation."[14] In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."[15] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[17]

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[18] Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[19] The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[20] Further, the court need not accept as true allegations that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[21]

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.* at 1940 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.*

[17] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[18] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[19] *See id.* at 1061.

[20] *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[21] *See In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008).

5
Case No.: C 12-01382 PSG
ORDER

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[22] A dismissal with prejudice, except one for lack of jurisdiction, improper venue, or failure to join a party operates as an adjudication on the merits.[23] Dismissal without leave to amend, however, may be granted for reasons of undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, futility of the amendment, and prejudice.[24]

### III. DISCUSSION

#### A. Request for Judicial Notice

The parties request that the court take judicial notice of certain documents. Together with its motion Google requests that the court take judicial notice of both its past and present Terms of Service and Privacy Policies, an announcement dated January 24, 2012, its current account signup page, and sample notices to users of its new policy.[25] Except for noticing the existence (but not the contents) of Google's January 24, 2012 announcement of the change in its privacy policy[26] and the February 2009 Gmail Privacy Policy,[27] Plaintiffs object to the court taking judicial notice of any prior or new Terms of Service,[28] Google privacy policies,[29] a current account signup page,[30] or

---

[22] *Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[23] *See* Fed. R. Civ. P. 41(b).

[24] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

[25] Docket No. 30, Exs. A-I.

[26] *Id.* Ex. E.

[27] *Id.* Ex. C.

[28] *Id.* Exs. A, G.

[29] *Id.* Exs. B, D, H.

[30] *Id.* Ex. F.

6
Case No.: C 12-01382 PSG
ORDER

any sample notices to users.[31] Plaintiffs dispute that their consolidated class action complaint either references the exhibits[32] or that they are authentic.[33]

For their part, Plaintiffs request that the court take judicial notice of the following: (1) the October 11, 2011 consent decree between Google and the FTC;[34] (2) an FTC press release dated August 9, 2012;[35] (3) the FTC's complaint against Google;[36] and (4) a Gmail Legal Notices page from before March 1, 2012.[37] Google objects to notice of any of Plaintiffs' documents, contending that the FTC proceedings which Plaintiffs seek to introduce relate to Google Buzz, a product not specifically at issue in this case, and also that the consent order did not constitute any admission by Google that the law had been violated as alleged in the FTC's complaint. Google also objects to the Gmail Legal Notice on the grounds that its authenticity cannot readily be established.

When asked to take judicial notice of documents, the general rule is that a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."[38] A court may, however, "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."[39] In addition, Fed. R. Evid. 201 allows a court to take judicial notice of "matters of public record," but not facts that may be subject to a reasonable

---

[31] *Id.* Ex. I.

[32] *Id.* Exs. A-D, G and H.

[33] Docket No. 30, Exs. B, D, H.

[34] Docket No. 38, Ex. 1.

[35] *Id.* Ex. 2.

[36] *Id.* Ex. 3.

[37] *Id.* Ex. 4.

[38] *United States v. Corinthian Colleges,* 655 F.3d 984, 998-99 (9th Cir. 2011) (internal citations omitted).

[39] *See id.*

7
Case No.: C 12-01382 PSG
ORDER

dispute.[40] Taking judicial notice of "matters of public record" under Fed. R. Evid. 201 and consideration of documents "necessarily relie[d]" upon in the complaint are two separate exceptions to the general rule that a court may not consider beyond the pleadings on a Rule 12(b)(6) motion.[41] The Ninth Circuit further instructs that a district court may consider contract terms beyond those cited in a complaint if the contract's authenticity is not contested and the complaint necessarily relies on that contract.[42]

Applying these standards, the court will take judicial notice of Google Exhibits A-E, G-H on the grounds that they are either a matter of public record,[43] Plaintiffs' complaint necessarily relied upon them,[44] or Plaintiffs have not objected to them.[45] For similar reasons, the court will also take judicial notice of Plaintiffs' Exhibits 1-3. The court sustains the objections by the parties to each of the remaining disputed exhibits on the grounds that the exhibit's authenticity is either disputed or the exhibit constitutes inadmissible hearsay.

### B. Article III Standing

The court observes that Plaintiffs have raised serious questions regarding Google's respect for consumers' privacy. But before it may consider these questions, the court must heed the constraints Article III imposes upon its jurisdiction to do so.

With respect to their claims regarding the cost of replacing their Android-powered phones to escape the burden imposed by Google's new policy, Plaintiffs fail to allege injury in fact to

---

[40] *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). *See also* Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts not subject to a reasonable dispute because "they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[41] *See Lee,* 250 F. 3d at 689-90.

[42] *See Perrine v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998).

[43] *See* Docket No. 30, Exs. A-D, G-H.

[44] *See id.* Exs. A-D, G-H.

[45] *See id.* Exs. C, E.

8

Case No.: C 12-01382 PSG
ORDER

themselves. This alone is sufficient to dismiss Plaintiffs' replacement-related claims.[46] In *Birdsong*, the Ninth Circuit reviewed claims that Apple's iPod with its capacity to produce sound as loud as 120 decibels created a risk of hearing loss. The Ninth Circuit held:

> The plaintiffs do not claim that they suffered or imminently will suffer hearing loss from their iPod use. The plaintiffs do not even claim that they used their iPods in a way that exposed them to the alleged risk of hearing loss. At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod user who might *choose* to use their iPods in an unsafe manner. The risk of injury the plaintiffs allege is not concrete and particularized as to *themselves*.

This same logic applies to Plaintiffs' allegations against Google here. In the consolidated complaint, Plaintiffs do not allege that they have ever purchased a replacement mobile phone for the Android-based phones at issue. While individuals who did purchase such a replacement might have standing to pursue the associated costs, by including no such allegations in their complaint, Plaintiffs stand apart.

Plaintiffs' current allegations fall short in another way. Plaintiffs have not identified a concrete harm from the alleged combination of their personal information across Google's products and contrary to Google's previous policy sufficient to create an injury in fact. As Judge Koh noted in *In re iPhone Application Litig.*,[47] a recent case from the Central District of California is instructive.[48] In *Spectrum Media*, the plaintiffs accused an online third-party advertising network of installing cookies on their computers to circumvent user privacy controls and to track internet use without user knowledge or consent. The court held that the plaintiffs lacked Article III standing because (1) they had not alleged that any named plaintiff was actually harmed by the defendant's alleged conduct and (2) they had not alleged any "particularized example" of economic

---

[46] *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) ("The plaintiffs have not shown the requisite injury to themselves and therefore lack standing" under Article III.).

[47] Case No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).

[48] *See Genevive La Court v. Specific Media*, Case No. SACV-10-1256-JW, 2011 WL 1661532, (C.D. Cal. Apr. 28, 2011).

injury or harm to their computers, but instead offered only abstract concepts, such as "opportunity costs," "value-for-value exchanges," "consumer choice," and "diminished performance."[49] Other cases have held the same.[50]

Plaintiffs' arguments to the contrary are not persuasive. These arguments all reduce to the central notion that, in contrast to the plaintiffs in each of the cases discuss above, Plaintiffs here have alleged cognizable, non-pecuniary harm in addition to pecuniary damages by virtue of Google's statutory and common law violations. But a careful review of these cases proves this assertion to be false. For example, like Plaintiffs here, the plaintiffs in *In re iPhone Application Litig.* also brought claims under statutes like California's Consumer Legal Remedies Act and California's Unfair Competition Law as well as common law claims.[51] Similarly, in *Low*, the plaintiff argued that the loss of personal information, even in the absence of any cognizable economic harm, was sufficient to confer Article III standing. But as Judge Koh explained, nothing in the precedent of the Ninth Circuit or other appellate courts confers standing on a party that has brought statutory or common law claims based on nothing more than the unauthorized disclosure of personal information, let alone an unauthorized disclosure by a defendant to itself.[52]

If it could survive Google's Rule 12(b)(6) challenge, Plaintiffs' Wiretap Act claim might help, in that a violation of the rights provided under the statute may be sufficient by itself to confer

---

[49] *Specific Media*, 2011 WL 1661532, at *7-13.

[50] *See In re Doubleclick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third party is not "economic loss"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (holding that airline's disclosure of passenger data to third party in violation of airline's privacy policy had no compensable value); *In re iPhone Application Litig.*, 2011 WL 4403963, at *4-6 (holding that undifferentiated "lost opportunity costs" and "value-for-value exchanges" resulting from collection and tracking of personal information were not cognizable injuries in fact); *Low v. LinkedIn Corp.*, Case No. 11-CV-01468-LHK, 2011 WL 5509848, at * 4 (N.D. Cal. Nov. 11, 2011) (rejecting sufficiency of independent economic value of personal information to establish injury in fact).

[51] *See In re iPhone Application Litig.*, 2011 WL 4403963, at *3.

[52] *See Low*, 2011 WL 5509848, at *6 (discussing *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010); *Pisciotti v. Old Nat'l Bankcorp.*, 499 F.3d 629, 634 (7th Cir. 2007)).

10
Case No.: C 12-01382 PSG
ORDER

standing.[53] A Wiretap Act claim requires, at a minimum, (a) an "electronic communication" and (b) interception of that communication by someone other than "a provider of wire or electronic communication service . . . in the normal course of" business or disclosure to someone other than the intended recipient.[54] An interception claim under the Wiretap Act also requires the use of a defined "device," which cannot include Google's own systems and software. The Wiretap Act expressly excludes from its definition of "device" any equipment "being used by a provider of wire or electronic communication service in the ordinary course of business."

Plaintiffs contend that, under the Wiretap Act, an interception occurred when their content from one Google product was stored on Google's servers and then combined with information from another Google product that also was stored on Google's servers. Plaintiffs further contend that because the Wiretap Act defines "device" broadly as "any device or apparatus which can be used to intercept a[n] . . . electronic communication,"[55] Google's cookies, application platforms, and servers constitute devices under that act in that they intercept information from one Google product to store on Google's servers and then to combine with information collected by other Google products. Plaintiffs utterly fail, however, to cite to any authority that supports either the notion that a provider can intercept information already in its possession by violating limitations imposed by a privacy policy or the inescapably plain language of the Wiretap Act that excludes from the definition of a "device" a provider's own equipment used in the ordinary course of business.

---

[53] *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (holding that the "Wiretap Act provides that any person whose electronic communications is 'intercepted, disclosed or intentionally used' in violation of the Act may in a civil action recover from the entity which engaged in that violation").

[54] 18 U.S.C. § 2510(5)(a)(ii).

[55] 18 U.S.C. § 2510(5).

11

Case No.: C 12-01382 PSG
ORDER

Similarly, Plaintiffs' might find support in California's Right of Publicity Act. But to sustain a right of publicity claim, Plaintiffs must allege in their complaint that Google somehow utilized their name, voice, signature, photograph or likeness without their consent.[56] This Plaintiffs simply do not do.[57]

As Judge Koh and the Central Distict both have observed, "[i]t is not obvious that Plaintiffs cannot articulate some actual or imminent injury in fact. It is just that at this point they haven't offered a coherent and factually supported theory of what that injury might be."[58]

In light of Plaintiffs' failure to allege fact sufficient to confer Article III standing, the court must refrain from addressing the remainder of Google's arguments and instead respect its lack of jurisdiction.

## IV.   CONCLUSION

Google's motion to dismiss is GRANTED with leave to amend. Plaintiffs shall file any amended complaint no later than January 31, 2012.

**IT IS SO ORDERED.**

Dated: December 28, 2012

                                        PAUL S. GREWAL
                                        United States Magistrate Judge

---

[56] *Eastwood v. Superior Court,* 149 Cal.App. 3d 409, 417-18, 198 Cal. Rptr. 342 (1983) (explaining that a right of publicity claim provides that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.").

[57] The court appreciates Plaintiffs' arguments in their opposition regarding Google's "+1" feature, but agrees with Google that the court's jurisdiction does not extend to materials not properly incorporated into the complaint.

[58] *In re iPhone Application Litig.*, 2011 WL 4403963, at *6 (quoting *Specific Media*, 2011 WL 1661532, at *6).

12

Case No.: C 12-01382 PSG
ORDER