```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4

 5

        IN RE GOOGLE, INC. PRIVACY      )  CV-12-1382-PSG
 6      POLICY LITIGATION               )
                                        )  SAN JOSE, CALIFORNIA
 7                                      )
                                        )  APRIL 15, 2014
 8                                      )
                                        )  PAGES 1-54
 9                                      )
                                        )
10                                      )

11

12                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE PAUL S. GREWAL
13                   UNITED STATES DISTRICT JUDGE

14

15      A P P E A R A N C E S:

16      FOR THE PLAINTIFF:      GRANT & EISENHOFER P.A.
                                BY:  KYLE MCGEE
17                              123 JUSTISON STREET
                                WILMINGTON, DE 19801
18

19      FOR THE DEFENDANT:      DURIE TANGRI, LLP
                                BY:  MICHAEL PAGE
20                              217 LEIDESDORFF STREET
                                SAN FRANCISCO, CA 94111
21

22      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
        PRODUCED WITH COMPUTER.
23

24              APPEARANCES CONTINUED ON THE NEXT PAGE

25      OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                      CERTIFICATE NUMBER 13185
```

```
 1      FOR THE PLAINTIFF:       BURSOR FISHER, P.A.
                                 BY:  YEREMEY KRIVOSHEY
 2                               1990 N. CALIFORNIA BLVD., STE 940
                                 WALNUT CREEK, CA 94596
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    APRIL 15, 2014
 2                    P R O C E E D I N G S
 3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5              THE COURT:  MR. RIVERA, WOULD YOU CALL THE NEXT CASE,
 6    PLEASE.
 7              THE CLERK:  CALLING IN RE GOOGLE, INC. PRIVACY POLICY
 8    LITIGATION.  CASE CV-12-1382-PSG.
 9       MATTER ON FOR DEFENDANT'S MOTION TO DISMISS, PLAINTIFF'S
10    CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT, AND
11    PLAINTIFF'S MOTION TO STRIKE.
12         PLEASE STATE YOUR APPEARANCES.
13              MR. PAGE:  GOOD MORNING, YOUR HONOR.
14       MICHAEL PAGE, DURIE TANGRI, FOR GOOGLE.
15              THE COURT:  MR. PAGE, GOOD MORNING.
16              MR. MCGEE:  GOOD MORNING, YOUR HONOR.
17       KYLE MCGEE FOR PLAINTIFFS.
18              THE COURT:  MR. MCGEE, GOOD MORNING TO YOU.
19              MR. KRIVOSHEY:  GOOD MORNING, YOUR HONOR.
20       YEREMEY KRIVOSHEY, BURSOR FISHER, ALSO FOR PLAINTIFFS.
21              THE COURT:  GOOD MORNING TO YOU AS WELL.
22         ALL RIGHT.  WHERE TO BEGIN, WHERE TO BEGIN
23              MR. PAGE:  WHEREVER YOU WANT.
24              THE COURT:  WELL, IF I MIGHT OFFER SOME SUGGESTIONS.
25         SINCE MR. PAGE, I WILL BEGIN WITH YOUR MOTION TO DISMISS,
```

1   THERE IS OBVIOUSLY THE MOTION TO STRIKE ALSO ON CALENDAR, BUT I

2   WOULD LIKE TO FOCUS OUR TIME AND ENERGY THIS MORNING ON THE

3   ISSUES IN THE MOTION TO DISMISS.

4          WHERE I WOULD LIKE TO BEGIN, FRANKLY, IS WITH -- AND I'M

5   GOING TO GIVE THE PLAINTIFFS THE SAME OPPORTUNITY, I REALLY

6   WOULD APPRECIATE A TUTORIAL OR PRIMER ON THE TIMELINE OF THE

7   OPERATIVE AGREEMENTS OR POLICIES THAT WE ARE TALKING ABOUT IN

8   THIS MOST RECENT COMPLAINT.  AND THEN I WOULD LIKE TO TURN TO

9   THE ISSUE OF STANDING, IN PARTICULAR THE INJURY AND FACT

10  REQUIREMENT.

11         MR. PAGE:  THE TIMELINE ON AGREEMENTS, THE SECOND

12  CONSOLIDATED -- CONSOLIDATED SECOND AMENDED COMPLAINT.

13            THE COURT:  THE CSAC.

14         MR. PAGE:  THE CSAC.

15      THE FIRST TIME IT ACTUALLY IDENTIFIES THE DOCUMENT, IT

16  DIDN'T ACTUALLY IDENTIFY IT.  IT TOOK US A WHILE TO FIGURE OUT

17  WHAT IT WAS.  BUT WHAT IT WAS, WAS THE ORIGINAL ANDROID PRIVACY

18  POLICY FROM SOME TIME IN MID 2008 THAT YOU COULD GET TO IF YOU

19  BOUGHT ONE OF THE FIRST ANDROID PHONES BY CLICKING ON THE

20  PRIVACY POLICY ON THE PHONE.

21      AS THE VARIOUS PHONE MANUFACTURERS WENT, MOVED TOWARDS

22  RELEASING THE NEXT GENERATION OF PHONES IN EARLY 2010, GOOGLE

23  AND THE PHONE MANUFACTURERS REVISITED THE PRIVACY POLICY.  THEY

24  REPLACED THE 2008 ANDROID POLICY THAT IS QUOTED IN THE

25  COMPLAINT WITH THE 2009 POLICY WHICH WAS, I BELIEVE, ISSUED

1    DECEMBER FIRST 2009.

2            THE COURT:  AND THESE WERE BOTH POLICIES ISSUED BY

3    GOOGLE REGARDING THE ANDROID OS.

4        IN OTHER WORDS --

5            MR. PAGE:  EXACTLY.

6            THE COURT:  OKAY.  YOU MENTION BY 2009 THERE WERE NEW

7    PHONES COMING ONLINE FROM THE HTC'S AND SAMSUNG'S OF THE WORLD.

8    THAT'S WHAT PROMPTED THE NEW POLICY.

9            MR. PAGE:  RIGHT.  YES, YOUR HONOR.

10        BASICALLY THE FIRST ONE CAME OUT IN 2008, THE 2008

11   POLICY.  2009 IN THE FALL THEY WROTE THE NEXT POLICY.  THERE'S

12   BEEN A SERIES OF THEM SINCE, AND IT CARRIES ON.

13        THESE WERE EACH POLICIES THAT UNLIKE THE GENERAL PRIVACY

14   POLICIES OR THE GMAIL POLICIES OR WEB BASED POLICIES WERE SORT

15   OF AN ADJUNCT TOOL PHONE YOU BOUGHT.

16        SO UNLIKE THE ONES THAT WERE ON THE WEB FOR GMAIL, THERE

17   WOULD BE A LINK ON YOUR PHONE IF YOU WANTED TO SEE THE PRIVACY

18   POLICY, YOU WOULD HIT THAT LINK, IT WOULD LEAD YOU TO THE

19   POLICY.

20            THE COURT:  DO YOU HAPPEN TO KNOW, MR. PAGE, THIS MAY

21   NOT BE TERRIBLY SIGNIFICANT BUT I WAS CURIOUS, COULD SOMEONE GO

22   ON THE WEB IN 2008 FOR EXAMPLE AND LOOK AT THE PRIVACY POLICY

23   BEFORE PURCHASING THE PHONE?  OR IS IT SOMETHING YOU WOULD HAVE

24   TO HAVE THE DEVICE TO GET TO?

25            MR. PAGE:  I DO NOT KNOW THE ANSWER ON THE 2008

1    POLICY.  I KNOW THE 2009 POLICY HAS, IN THE POLICY, A REFERENCE

2    TO THE WEB ADDRESS WHERE YOU CAN SEE A WEB BASED VERSION OF IT,

3    OR YOU COULD AT THE TIME WHEN IT WAS IN PLACE.  AND THEN THE

4    PHONE WAS SIMPLY HARD WIRED TO GO TO THAT LOCATION.

5         SO IT WAS IN FACT ON A GOOGLE SERVER ON THE WEB, NOT ON

6    THE PHONE.  YOU WOULD CLICK THE LINK ON THE PHONE, THE PHONE

7    WOULD DIRECT YOU TO THAT ADDRESS.

8         SO THAT'S THE CHRONOLOGY ON THOSE TWO POLICIES.

9              THE COURT:  ALL RIGHT.

10        I THINK YOU JUST ANSWERED MY QUESTION, BUT THESE POLICIES

11   THAT YOU WOULD EITHER CLICK ON THE PHONE OR PERHAPS IN A LATER

12   ITERATION GO TO ON THE WEB.

13        THESE WERE POLICIES POSTED BY GOOGLE, THESE WERE GOOGLE

14   POLICIES ON GOOGLE SERVERS.

15             MR. PAGE:  YES.

16             THE COURT:  EVEN THOUGH THE PHONE, BY 2009, MIGHT

17   HAVE BEEN A SAMSUNG PHONE OR HTC PHONE.

18             MR. PAGE:  PRECISELY.

19             THE COURT:  OKAY.

20        SO AS I UNDERSTAND IT, THE POLICY WE ARE TALKING ABOUT

21   HERE WITH RESPECT TO MR. NISENBAUM, CONCERNS THE 2008 POLICY,

22   CORRECT?

23             MR. PAGE:  WELL, HE'S PLED THE TEXT OF THE 2008

24   POLICY, BUT HE'S ALSO PLED THAT HE PURCHASED HIS PHONE IN JULY

25   2010.

1    SO IN FACT HE WAS NEVER'S PARTY TO THE TO THOUSAND EIGHT

2  POLICY, IT DIDN'T EXIST AT THE TIME HE BOUGHT HIS PHONE.

3    THE COURT:  I'M SORRY, I WAS GOING TO ASK, IS THAT

4  ALSO BECAUSE BY THE TIME HE PURCHASED HIS PHONE IN JULY OF

5  2010, ONE OR MORE NEW POLICIES HAD COME ON LINE AND THOSE

6  POLICIES MADE CLEAR THEY WERE SUPERSEDING OR REPLACING THE

7  EARLIER POLICY.

8    MR. PAGE:  RIGHT.  AND IF YOU LOOKED AT HIS PHONE ON

9  THE DATE HE BOUGHT IT, YOU WOULD GET TO THE DECEMBER FIRST 2009

10  POLICY.

11    THE COURT:  OKAY.

12    MR. PAGE:  NOW I UNDERSTAND WE HAVE A MOTION TO

13  STRIKE BECAUSE THAT POLICY WAS NEVER ALLEGED IN THE COMPLAINT,

14  HOWEVER, THE POINT IS THAT THERE'S NO ALLEGATION THAT HE EVER

15  SAW EITHER OF THEM OR RELIED ON THEM.

16    AND WE'VE SUBMITTED THE 2009 POLICY SIMPLY ON THE GROUND,

17  TO ESTABLISH THAT THAT'S NOT JUST A DRAFTING PROBLEM.  IT'S NOT

18  OOPS, CAN WE GET LEAVE TO AMEND ONE MORE TIME.

19    THE COURT:  YOUR POINT IS IT'S A RELIANCE ISSUE.

20    MR. PAGE:  EXACTLY.

21    YES.  OR MORE PRECISELY, IT'S A PLEADING ISSUE.  HE NEVER

22  PLED HAVING EVER SEEN OR RELIED ON THE 2008 POLICY BECAUSE HE

23  COULDN'T HAVE BECAUSE IT WAS NO LONGER AVAILABLE WHEN HE

24  ALLEGES HE BOUGHT HIS PHONE.

25    SO AMENDMENT WON'T FIX THAT PROBLEM.

1          THE COURT:  OKAY.

2          MR. PAGE:  AND THAT'S WHY IT'S OFFERED.

3      MOVING FROM THAT TO ARTICLE THREE STANDING, WE HAVE, WE

4  ARE BACK TO KILIMANJARO, AT LEAST.  THERE WERE THREE

5  ALLEGATIONS OF ARTICLE III STANDING.

6      THE FIRST IS ONLY MR. NISENBAUM'S AND ONLY AFFECTS THAT

7  SUBCLASS.  AND IT'S THE CLAIM THAT HE SUFFERED FINANCIAL HARM

8  BY HAVING TO BUY A NEW PHONE.

9      BUT THE PROBLEM IS THERE IS NO NEXUS BETWEEN THE

10 COMPLAINED OF ACTS BY GOOGLE AND THE CLAIM THAT HE NEEDED TO

11 REPLACE HIS PHONE.

12     THE CLAIM HERE IS THAT GOOGLE CHANGED ITS POLICIES TO

13 ALLOW ITS APPS TO SHARE INFORMATION BETWEEN THEM.  IF THAT

14 CHANGE IN POLICY IS OFFENSIVE TO MR. NISENBAUM, THE SOLUTION IS

15 STOP USING THE FREE APPS, RIGHT.

16     THAT'S NOT A PROBLEM WITH THE PHONE.  THAT'S NOT A DEFECT

17 WITH THE PHONE, IT'S NOT SOMETHING THAT COMES UNDER CLRA,

18 RIGHT, IT -- THE HARM HE'S CLAIMING HAS NO NEXUS TO THE CLAIMS

19 OF THE COMPLAINT.

20     ESSENTIALLY WHAT HE'S SAYING IS EVEN IF YOU PUT ASIDE THE

21 FACT THAT HE COULDN'T HAVE BEEN A PARTY TO THE 2008 COMPLAINT

22 POLICY, WHAT HE'S SAYING ESSENTIALLY IS IN 2008 YOU TOLD ME YOU

23 WOULDN'T DO X.  AND THEN IN 2012 YOU STOPPED TELLING ME YOU

24 WOULDN'T DO X.

25     BUT THERE'S NO ALLEGATION THAT GOOGLE EVER DID X.  ANY OF

1    THE THINGS HE POINTS TO IN THE 2008 OR 2009 POLICY, THERE ISN'T

2    A FACTUAL ALLEGATION IN THE COMPLAINT THAT GOOGLE DID ANY OF

3    THEM, IT SIMPLY STOPPED PROMISING HIM IT WOULDN'T, HE SAYS.

4         THAT'S NOT ACTUALLY TRUE, AS WE ADDRESS IN THE TEXT OF

5    THE COMPLAINTS, BUT EVEN IF IT WERE, SAYING DAY -- DOCUMENT ONE

6    YOU PROMISED ME YOU WOULDN'T DO X.  IN DOCUMENT TWO YOU LEFT

7    THAT PROMISE OUT DOESN'T GET YOU TO A CLAIM OF HARM UNLESS YOU

8    ALSO SAY, AND THEN YOU DID X.

9         THE COURT:  CAN I ASK YOU MR. PAGE, IF THERE WERE

10   SUCH AN ALLEGATION HERE, DO YOU BELIEVE THAT WOULD AT LEAST

11   CLEAR THAT HURDLE, FOR PURPOSES OF PLEADING ANYWAY.

12        MR. PAGE:  IF HE COULD PLEAD HE WAS ACTUALLY A PARTY

13   TO THE CONTRACT.  IF THE CONTRACT ACTUALLY SAID WHAT HE SAID

14   AND IF HE COULD PLEAD THAT GOOGLE HAD BREACHED THAT TERM OF THE

15   CONTRACT, WELL YES, THEN THERE WOULD BE A BREACH OF CONTRACT

16   CLAIM.

17        THERE STILL WOULDN'T BE A CLRA CLAIM BECAUSE IT DOESN'T

18   APPLY TO SOFTWARE.  RIGHT.

19        GOOGLE DIDN'T SELL HIM ANYTHING.  AND IN EACH ITERATION

20   OF THIS MOTION AND THIS CASE, WE HAVE BEEN CONFRONTED WITH THIS

21   STRAW MAN THAT SAYS YOU DON'T HAVE TO BE THE DIRECT SELLER,

22   THERE'S PLENTY OF LAW THAT SAYS PEOPLE IN THE CHAIN COULD BE

23   LIABLE.

24        AND AS WE SAY, WE ARE NOT SAYING THAT, OF COURSE THE

25   MANUFACTURER COULD BE LIABLE FOR A PRODUCT DEFECT.

1          THE COURT:  YOU SAYING THAT'S NOT YOU.

2          MR. PAGE:  THAT'S NOT US.

3      SO NOW WE HAVE A NEW BRIEF THAT ADDS FOUR MORE CASES THAT

4  SAY OTHER PEOPLE IN THE CHAIN OF COMMERCE CAN BE LIABLE IN THE

5  CLRA CLAIM, INCLUDING I BELIEVE IT'S THE KLEINHOLTZ CASE WHICH

6  THEY SAY REJECTED A CLAIM EXACTLY LIKE OURS.

7          BUT WHAT THAT WAS, WAS IT WAS A MANUFACTURER OF

8  FIREPLACES BEING HELD LIABLE FOR REPRESENTATIONS ABOUT THE

9  FIREPLACES WHEN HE SOLD THEM TO CONTRACTORS WHO THEN PUT THEM

10  IN HOUSES AND SOLD THEM TO PEOPLE.  HE WAS IN THE CHAIN OF

11  COMMERCE SELLING THE GOOD THAT THE CLRA COVERS.

12      WE ARE JUST NOT IN THAT CHAIN.  ALL WE DO IS PROVIDE THE

13  OPEN SOURCE FREE SOFTWARE THAT THE MANUFACTURES USE IN THEIR

14  PRODUCTS.

15          THE COURT:  SO I TAKE IT MR. PAGE, YOU WOULD TAKE THE

16  POSITION THAT FOR AT LEAST THE PURPOSES OF THE CLRA CLAIM IF

17  YOU ARE IN THE SOFTWARE BUSINESS, YOU ARE NOT LIABLE, PERIOD

18  END STOP, WHETHER THAT SOFTWARE IS SOLD BY YOU DIRECTLY TO THE

19  CUSTOMER, WHETHER IT'S SOLD THREE LINKS DOWN THE CHAIN, YOU ARE

20  OUT OF IT.

21          MR. PAGE:  THAT'S WHAT THE CASE LAW SAYS.

22      AND KEEP IN MIND, I MEAN, OUTSIDE OF WHAT THE CASES SAY,

23  I COULD SEE A REASONABLE ARGUMENT THAT IF I PROMISED YOU THAT

24  MY SOFTWARE WOULD DO X AND THEN I SOLD IT TO YOU AND IT DIDN'T

25  DO X, THAT THAT SHOULD SOMEHOW COME UNDER THE CLRA.

1          AND WHEN YOU ACTUALLY SELL SOMEONE A DISK OF SOFTWARE,

2     THERE'S A REASONABLE ARGUMENT THAT THAT'S A GOOD.

3          BUT WE DIDN'T SELL MR. NISENBAUM ANYTHING AT ALL.  AND IN

4     THAT CASE, THE CASE LAW IS CLEAR THAT THE CLRA DOESN'T REACH

5     IT.

6          THE SECOND OF THE THREE ARTICLE III HOOKS IS AGAIN, THE

7     BATTERY LIFE ARGUMENT.  WHICH THEY REPEAT AND CLAIM THAT THIS

8     COURT HAS ALREADY DECIDED.  THE PROBLEM IS IN THE PREVIOUS

9     COMPLAINT, THE COMPLAINT WAS THAT GOOGLE WAS INTERMINGLING DATA

10    BETWEEN ITS APPS CONTRARY TO -- AND THAT WAS A CHANGE, AND THE

11    COURT FOUND THAT IN A VERY CLOSE CALL, THE DOWNLOAD TIME AND

12    THE BATTERY LIFE OF DOWNLOADING DOZENS AND DOZENS OF APPS, EACH

13    OF WHICH ARE HUNDREDS OF K OR MEGS OF DATA, WAS ENOUGH TO GET

14    OVER THAT HURDLE.

15         BUT YOU THEN DISMISSED THE UNDERLYING CLAIMS ON THE

16    MERITS BECAUSE IN FACT WE HAD ALREADY HAD CONTRACTS WITH THE

17    PLAINTIFFS THAT SAID THAT WE COULD COMINGLE BETWEEN APPS.

18         THE NEW CLAIM IS THAT, ACTUALLY, ALL IT IS IS THAT THERE

19    ARE PRESS REPORTS THAT MERCHANTS CAN GET NAME, E-MAIL ADDRESS

20    AND ZIP CODE FROM GOOGLE PLAY, THAT IS A TRANSACTION THAT

21    HAPPENS BETWEEN MERCHANTS AND GOOGLE SERVERS, IT HAS NOTHING TO

22    DO WITH THE PHONE WHATSOEVER.

23              THE COURT:  SO YOUR POINT IS THAT TRANSACTIONAL

24    ACTIVITY DOESN'T DRAW EVEN A SINGLE BIT OFF THE PHONE, DRAIN

25    DOWN THE BATTERY.

1          MR. PAGE:  YEAH.

2      EVEN IF YOU BOUGHT -- AND KEEP IN MIND THE ENTIRE

3  COMPLAINT, THERE'S ALLEGATION THAT IS AMONG THESE SIX

4  PLAINTIFFS THEY BOUGHT A TOTAL OF THREE APPS.  BUT EVEN IF YOU

5  BUY THE IDEA OF THE NEW BITS OF INFORMATION OF NAME E-MAIL

6  ADDRESS ZIP CODE IS MORE THAN DE MINIMUS.

7      IF YOU GO BACK TO THE UNDER LYING ALLEGATIONS OF THE

8  PRESS REPORTS, WHICH IS ALL THEY PLEAD, IN FACT IT WAS A

9  BLOGGER A MERCHANT IN AUSTRALIA WHO SAID WHY IS IT WHEN I LOG

10  ON I CAN GET THE GUY'S ZIP CODE.  THE ANSWER IS BECAUSE YOU

11  HAVE TO FIGURE OUT HOW TO CHART THAT.

12      BUT THERE'S SEVERAL PLACES IN THE COMPLAINT WHERE THEY

13  ADMITTEDLY PLEAD THAT THE ALLEGATION IS THAT MERCHANT CONSIST

14  GET INFORMATION FROM GOOGLE SERVERS NOT FROM THE PHONE.

15      AT PARAGRAPH 67, AT PARAGRAPH ONE 36, AT PARAGRAPH 174.

16  THEY THEN TRY -- THEN AT ONE POINT THEY PUT IN AN ALLEGATION

17  THAT THIS IMPLICATES BATTERY LIFE BECAUSE THE TRANSACTION THAT

18  ENDED UP WITH MERCHANTS GETTING INFORMATION FROM GOOGLE PLAY IN

19  SOME SENSE ORIGINATED FROM THE PHONE BECAUSE ORIGINALLY THE

20  PERSON DOWN LOADED THE APP.  BUT THERE'S NO NEXUS THERE,

21  THERE'S NO CONNECTION.

22      THE THIRD ARTICLE III CLAIM IS THE CLAIM THAT THERE'S A

23  RISK OF DISCLOSURE OF PERSONAL INFORMATION BY AN UN

24  SCRUPULOUSLY MERCHANT BY GOING GOTTEN YOUR NAME E-MAIL ADDRESS

25  OR ZIP CODE WHO THEN MIGHT SELL IT OR MAKE SOME USE OF IT.

1      BUT ONE THIS IS JUST THE TYPICAL INFORMATION YOU GIVE TO

2 ANY MERCHANT ANY WAY.  BUT MORE IMPORTANTLY, THERE'S NO

3 ALLEGATION THAT ANYONE EVER DID THAT OR THAT ANY MERCHANT EVER

4 GOT ANY INFORMATION ABOUT ANY OF THE PLAINTIFFS AT ALL.

5      THE COURT:  SO YOUR POINT ON THAT ONE, MR. PAGE, IS

6 EVEN THOUGH THE CIRCUIT HAS SUGGESTED THAT PERHAPS THIS TYPE OF

7 ANXIETY OR WORRY IS SUFFICIENT TO GIVE RISE TO STANDING, THERE

8 HAS TO BE THE PREDICATE ACT ALLEGED.

9      MR. PAGE:  YEAH.

10    THERE HAS TO BE SOMETHING MORE THAN GOSH THERE'S THIS GUY

11 THAT SAYS MAYBE MERCHANTS GET INFORMATION AND MAYBE A MERCHANT

12 GOT MY E-MAIL ADDRESS, WHICH IT'S VERY HARD TO BUY ANYTHING ON

13 THE WEB WITHOUT GIVING TO SOMEONE ANYWAY, AND MAYBE HE THEN

14 GAVE IT TO SOMEONE ELSE.

15     AND THEY CITE JUDGE KOH'S IPHONE OPINION FOR SUPPORT FOR

16 THIS.  BUT THE -- THAT ACTUALLY MAKES EXACTLY THE OPPOSITE

17 POINT.  JUDGE KOH DISMISSED ON ARTICLE III GROUNDS, THE KIND OF

18 VAGUE ALLEGATIONS WE HAVE HERE, AND IT WAS ONLY WHEN THEY CAME

19 BACK WITH CHAPTER AND VERSE OF THIS APP DEVELOPER DOWNLOADED

20 THIS INFORMATION AND SOLD IT TO THIS THIRD PARTY WHO USED IT

21 FOR THIS POWER PRESS AND LAID OUT EXACTLY WHEN IT WAS HOW THAT

22 HAPPENED THAT SHE DECIDE SIDE IT WAS SUFFICIENT TO PLEAD

23 ARTICLE III STANDING.

24     SO THOSE ARE THE THREE ARTICLE III HOOKS.

25     I DON'T KNOW IF YOU WANT TO GET INTO THE INDIVIDUAL

1    CLAIMS AS WELL.

2            THE COURT:  IF YOU COULD, I WOULD LIKE TO BENEFIT

3    FROM BOTH SIDES ARGUMENTS ON THOSE ISSUES AS WELL.

4        SO PLEASE GO AHEAD.

5            MR. PAGE:  OKAY.  WE'VE TALKED A LITTLE BIT ABOUT THE

6    CLRA CLAIM.  BUT IN ADDITION TO THE -- ARTICLE III STANDING

7    ISSUES AND THE SOFTWARE COVERED ISSUES, IT'S REALLY A STRAIGHT

8    IQBAL TWOMBLY PLEADING PROBLEM HERE.

9        THIS IS ESSENTIALLY A FALSE ADVERTISING CLAIM, RIGHT,

10   SOMEBODY TOLD ME THIS DEVICE WOULD DO SOMETHING AND IT DOESN'T,

11   EXCEPT IT DOESN'T HAVE AN ALLEGATION THAT THE BUYER EVER SAW

12   ANY REPRESENTATION, AN ALLEGATION THAT THE BUYER EVER RELIED ON

13   ANY REPRESENTATION, AN ALLEGATION THAT ANY OF THOSE

14   REPRESENTATIONS WAS IN FACT BREACHED.

15       WHAT DEVICE HE BOUGHT OR WHO HE BOUGHT IT FROM?  IT'S A

16   FALSE ADVERTISING CLAIM WITH NONE OF THE ELEMENTS ALLEGED.  SO

17   JUST ON THAT BASIS THERE'S -- I MEAN, HOW DO YOU ASSESS A FALSE

18   ADVERTISING CLAIM WHEN YOU DON'T EVEN PLEAD WHAT PRODUCT YOU

19   BOUGHT?

20       AND AGAIN, THE LAST TIME AROUND, MR. NISENBAUM'S ARGUMENT

21   WAS I WOULDN'T HAVE BOUGHT THIS PHONE IF YOU HAD TOLD ME THAT

22   YOU WERE GOING TO INTERMINGLE DATA BETWEEN APPS.  AND AS WE

23   PLED AND AS THIS COURT HELD, WE DID TELL HIM PREVIOUS TO BUYING

24   THE PHONE AND THIS COURT DISMISSED THAT CLAIM ON THAT BASIS.

25       NOW WE HAVE THE SAME PERSON BACK DISCUSSIONS THE SAME

1    DECISION TO PURCHASE THE SAME PHONE AND HE'S NOW SAYING I

2    WOULDN'T HAVE BOUGHT THIS PHONE IF YOU HAD TOLD ME THAT MY

3    DEVICE ID COULD BE TRANSMITTED TO GOOGLE, AND IN FACT WE DID IN

4    THE VERSION OF THE PRIVACY POLICY THAT ACTUALLY APPLIED TO HIM,

5    BUT YOU CAN'T JUST PLEAD NEW FACTS THAT ARE INCONSISTENT WITH

6    THE PREVIOUS ONES, RIGHT.

7         THIS MAN HAS ALREADY COME BEFORE THE COURT ONCE WITH A

8    COMPLETELY DIFFERENT REASON WHY HE WOULDN'T HAVE BOUGHT THIS

9    PHONE.  AND WHEN THAT BLEW UP, IT WAS NO, NO, I'M SORRY, IT'S

10   IN THE FORM OF, IF YOU HAD TOLD ME X I WOULDN'T DO Y, BUT X

11   KEEPS CHANGING EACH TIME AROUND.

12         THE COURT:  WELL, THAT'S ACTUALLY AN INTERESTING

13   ISSUE THOUGH BECAUSE I TAKE YOUR POINT, BUT IT SEEMS TO ME THAT

14   IN A SITUATION LIKE THIS, THERE MAY HAVE BEEN ALL SORTS OF

15   NONSTARTERS FOR MR. NISENBAUM OR ANY OF THE OTHER NAMED

16   PLAINTIFFS, RIGHT.

17         THERE MIGHT HAVE BEEN TWO REASONS THREE REASONS 10 REASONS

18   WHY IF HE HAD KNOWN SOMETHING, HE WOULDN'T HAVE BOUGHT THE

19   PHONE, SUCH THAT THERE'S X 1, X 2, UP TO X 10.

20         IF THAT'S THE CASE, WHY WOULDN'T FOR PURPOSES OF PLEADING

21   AND TWOMBLY AND IQBAL AND ALL OF THAT, WHY WOULDN'T IT BE

22   SUFFICIENT THAT HE'S WILLING TO SIGN OFF ON A COMPLAINT UNDER

23   RULE ELEVEN AND ALL OF THAT, THAT THIS WAS YET ANOTHER REASON

24   WHY HE WOULDN'T HAVE BOUGHT THE PHONE.  WHAT IS PRECLUSIVE

25   ABOUT THAT?

1          MR. PAGE:  IT IS NOT ACTUALLY FORMALLY PRECLUSIVE.

2     IT COULD SIMPLY BE YES, THERE WAS ANOTHER REASON THAT I LEFT

3     OUT THE LAST TIME, IT'S JUST SOMEWHAT SUSPECT.

4          BUT THE REAL POINT IS THAT WHAT HE'S SAYING NOW IS THERE

5     WAS AN EARLIER VERSION OF THIS POLICY THAT MAY BE A PROMISE.

6     THERE'S NOW A LATER VERSION OF THIS POLICY THAT DOES NOT REPEAT

7     THE SAME PROMISE.

8          BUT WHAT'S MISSING IS, AND YOU BROKE THE PROMISE.  THERE

9     IS NO ALLEGATION THAT GOOGLE HAS EVER DONE ANYTHING THAT EVEN

10    IF HE -- EVEN IF HE WERE A PARTY TO THAT AGREEMENT, EVEN IF HE

11    HAD READ IT, EVEN IF HE RELIED ON IT, EVEN IF HE WOULDN'T HAVE

12    WATT THE PHONE IF HE KNEW ABOUT IT, THERE'S NO ALLEGATION THAT

13    HE BREACHED ANY OF THOSE.  IT'S JUST NOT THERE.

14         SO THAT'S THE CLRA CASE.

15         ALSO, AN OMISSION CANNOT SUPPORT A CLRA CLAIM, ESSENTIAL

16    A FRAUD CLAIM UNLESS IT CONTRADICTS A POSITIVE REPRESENTATION,

17    RIGHT.  SO OMITTING TO TELL SOMEONE X ISN'T A FRAUDULENT ON

18    MISSION UNLESS YOU'VE TOLD THEM NOT X IN THE PAST.

19         THE COURT:  AND THAT'S NOT WHAT'S HAPPENING HERE?

20    BECAUSE.

21         MR. PAGE:  NO.

22         THE COURT:  I THOUGHT I UNDERSTOOD YOUR EARLIER

23    COMMENTS TO SAY THAT IN THE SO CALLED REVISED POLICY, AND AGAIN

24    LET'S ASSUME FOR THE SAKE OF THIS POINT OF CONVERSATION THAT

25    ALL THE OTHER ISSUES YOU'VE RAISED DON'T APPLY, THAT IN THE SO

1    CALLED REVISED POLICY THERE WAS NO LONGER THE AFFIRMATIVE

2    REPRESENTATION THAT GOOGLE WOULD NOT SHARE THIS PARTICULAR

3    DATA.

4         I TAKE YOUR POINT THAT THAT'S NOT AN ADMISSION THAT

5    GOOGLE IS IN FACT SHARING THAT DATA, BUT WHY WOULDN'T THAT AT

6    LEAST BE INCONSISTENT WITH THE --

7         MR. PAGE:  ACTUALLY, I DRIFTED OVER TO THE BREACH OF

8    CONTRACT ARGUMENT A BIT.

9         BUT THE POINT IS THAT IN DEFENDING THE RELIANCE ON THE 2008

10   POLICY, ONCE THEY REALIZED IT DIDN'T APPLY, WHAT THEY'VE DONE

11   IS THEN SAID THERE ARE THESE OTHER CONTRACTS THAT ARE ALSO

12   BREACHED EVEN IF IT'S THE 2008 POLICY DOESN'T APPLY, AND THEY

13   IDENTIFY THREE OF THEM, GOOGLE PLAY, GOOGLE WALLET AND THE

14   GENERAL GOOGLE PRIVACY POLICY.

15        BUT THE PROBLEM IS WHAT THEY SAY ABOUT THOSE IS THAT THEY

16   DON'T CONTAIN THE -- IS NOT THAT THEY CONTAIN THE SAME

17   PROMISES, BUT RATHER TO QUOTE THEIR OPPOSITION, NONE OF THESE

18   POLICY DOCUMENTS EXPRESSLY PERMITS GOOGLE'S PRACTICE.

19        BUT YOU DON'T BREACH A CONTRACT BY DOING SOMETHING YOU

20   HAVEN'T PROMISED NOT TO DO.  YOU BREACH A CONTRACT BY DOING

21   SOMETHING YOU PROMISED NOT TO DO OR NOT DOING SOMETHING OR

22   NOT --

23             THE COURT:  YOU PROMISED TO DO.

24             MR. PAGE:  I'VE MANGLED IT HORRIBLY, BUT YOU GET THE

25   POINT.

1      BUT THE FACT THAT THERE'S NOTHING IN THE POLICY THAT IS

2  AFFIRMATIVELY STATES WE WILL DO X, DOESN'T MEAN DOING X IS A

3  BREACH OF THOSE CONTRACTS, IT'S SIMPLY NOT ADDRESSED IN THEM.

4      THOSE ARE THE OMISSIONS I WAS REFERRING TO.

5          THE COURT:  I SEE.

6          MR. PAGE:  SORRY I CONFUSED THAT.

7      THE INTRUSION ON SECLUSION CLAIM, THERE'S SIMPLY NOTHING

8  HERE THAT CAN MEET THE HIGHLY OFFENSIVE TO A REASONABLE PERSON

9  TEST UNDER HERNANDEZ.  WE BREACHED THAT EXTENSIVELY.  YOUR

10  NAME, YOUR E-MAIL ADDRESS, YOUR ZIP CODE, THOSE ARE ALL THINGS

11  WE USE TO WRITE ON THE OUTSIDE OF EVERY ENVELOPE WE PUT IN THE

12  MAILBOX.  THIS IS NOT A PRIVATE FACT, HIGHLY OFFENSIVE TO A

13  REASONABLE PERSON, IT SIMPLY DOES NOT SATISFY THE STANDARD.

14      AND FINALLY THERE'S THE UCL CLAIMS WHICH ARE THE UNLAWFUL

15  ONE STANDS OR FALLS WITH THE CLRA CLAIM I THINK.

16          THE COURT:  YOU WOULD AGREE THOSE TWO ARE TIED AT THE

17  HIP, RIGHT, THAT PRONG ANY WAY.

18          MR. PAGE:  YEAH.  ON THE UNLAWFUL PRONG IF YOU DON'T

19  HAVE THE UNDERLYING UNLAWFUL ACT YOU DON'T HAVE THE UCL

20  VIOLATION.

21      THE FRAUDULENT CLAIM FAILS FOR THE SAME REASONS IT DID

22  BEFORE.  THERE'S NO COHERENT ALLEGATIONS OF THE PIECES OF FRAUD

23  YOU NEED.

24      THIS WHOLE EMERALD SEA, YOU KNOW, I MEAN, I CALL IT A

25  FROLIC.  IT'S LIKE YOU GUYS DECIDED THAT YOU WERE GOING TO DO

1    SOCIAL MEDIA, AND YOU DIDN'T TELL PEOPLE THAT YOU WERE THINKING

2    ABOUT CHANGING THE WAY YOU DO BUSINESS AND THEREFORE THAT YOU

3    WERE GOING TO CHANGE THE CONTRACTS THAT WENT ALONG WITH IT TO

4    MAKE THE LEAP FROM THAT TO YOU WERE TRYING TO DEFRAUD THE

5    PUBLIC BY NOT AN ANNOUNCING BEFORE YOU AN ANNOUNCED YOUR

6    CHANGE, YOUR CHANGE, IS JUST, IT MAKES EVERY CHANGE OF A

7    PRIVACY POLICY FRAUDULENT.  BASICALLY ON NOTHING BUT INFERENCE.

8         PEOPLE -- COMPANIES DEVELOP PRODUCTS IN SECRET.  AND THE

9    FACT THAT THEY KNOW THEY ARE DEVELOPING THEM BEFORE THEY AN

10   ANNOUNCE THEM DOES NOT MEAN THEY ARE FRAUDULENTLY CONCEALING

11   THEM FROM THE PUBLIC.  THEY ARE JUST NOT READY TO AN ANNOUNCE

12   THEM YET.

13        AND THE LEAP IN LOGIC THAT GETS TO THAT WAS A FRAUD, MUCH

14   LESS THAT THERE'S ANY ALLEGATION THAT ANYBODY RELIED ON IT OR

15   ANY DAMAGES FLOWED FROM IT OR ALL THE OTHER PIECES YOU NEED FOR

16   RULE NINE, IT'S JUST NOT THERE.

17        AND NOTHING HAS CHANGED ON THE UNFAIR PRONG SINCE THE

18   COURT'S LAST RULING.  YOU KNOW, WHATEVER THE ALLEGED HARM OF A

19   LITTLE BATTERY LIFE, UP AGAINST THE PROVISION OF FREE AND AS

20   THEY PLED LAST TIME, INDISPENSABLE PRODUCTS, THE UN BALANCE ON

21   UNFAIRNESS COMES OUT STRONGLY IN GOOGLE'S DIRECTION.

22        THE COURT:  BEFORE I LET YOU SIT DOWN, MR. PAGE, JUST

23   ONE FURTHER QUESTION ON THE FRAUDULENT PRONG.

24        I TAKE IT THAT IN THIS CURRENT ITERATION, WE HAVE THE

25   SAME CHALLENGE AS WE DID IN THE EARLIER ITERATION, THAT IS SO

```
 1    LONG AS GOOGLE IN YOUR VIEW HAS DISCLOSED THAT IF IT WAS

 2    ACCUSED OF DOING, THERE CAN BE NO FRAUD.

 3              MR. PAGE:  YES, ABSOLUTELY.

 4         AND AS WE POINTED OUT, EVEN IF YOU WANT TO GO ALL THE WAY

 5    BACK TO THE 2009 POLICY, MUCH LESS THE ONES THE COURT RELIED ON

 6    LAST TIME, THEY EXPRESSLY SAY WE ARE GOING TO DO EXACTLY WHAT

 7    WE SAY WE CONCEALED FROM THEM.  AND THEY CROSS REFERENCE THE

 8    OTHER INDIVIDUAL AP POLICIES.

 9         I DON'T KNOW IF YOU WANT ME TO ADDRESS THE MOTION TO

10    STRIKE NOW.

11              THE COURT:  IF YOU WOULD, I WOULD LIKE TO HEAR FROM

12    YOU.

13              MR. PAGE:  I MEAN, THEY ARE ABSOLUTELY RIGHT THAT

14    THERE IS NO PLEADING OF THE EXISTENCE OF THE 2009 POLICY IN THE

15    COMPLAINT.  THAT'S THE POINT, RIGHT.  THEY HAVE ALL BUILT THEIR

16    WHOLE OPPOSITION ON THE CONTENTS OF THE 2009 POLICY.  AND IT

17    HAS THE SAME TERMS AS 2008, WHICH SIMPLY IS FALSE.  IT'S

18    NOTHING LIKE IT.  IT CONTAINS NONE OF THE PROMISES THEY CLAIM

19    IT CONTAINS.

20              THE COURT:  ON THAT POINT MR. PAGE, I'M SORRY FOR

21    INTERRUPTING YOU, IT SEEMS TO ME TO MAKE THE POINT OR

22    SUBSTANTIVE THE POINT THAT THERE WAS NO ALLEGATION THAT THE 09

23    AGREEMENT, YOU DON'T NEED THE SUBJECT FOR THE REQUEST FOR

24    JUDICIAL NOTICE.

25         I'M PERMITTED TO SIMPLY OBSERVE THAT FACT IN THE COMPLAINT
```

1    WITHOUT GETTING INTO THE BUSINESS OF LOOKING AT THAT.

2            MR. PAGE:  THIS IS TRUE.  YOU CAN SIMPLY SAY THAT ALL

3    OF THIS STUFF ABOUT THE 2009 POLICY IN THE OPPOSITION IS ALL

4    VERY NICE, BUT NONE OF IT'S IN THE COMPLAINT.

5            THE COURT:  I INTERRUPTED YOU, DID YOU WANT TO MAKE A

6    LAST POINT.

7            MR. PAGE:  THAT WAS PRETTY MUCH THE LAST POINT I

8    WANTED TO MAKE.

9            THE COURT:  I WILL HAVE QUESTIONS FOR YOU I'M SURE IN

10   REBUTTAL.

11       OPPOSITION.

12           MR. MCGEE:  GOOD MORNING, YOUR HONOR.

13           THE COURT:  GOOD MORNING.

14           MR. MCGEE:  WELL, I THINK THERE'S A FEW THINGS THAT

15   SHOULD BE CLARIFIED.  I UNDERSTAND YOU HAVE QUESTIONS REGARDING

16   THE CHRONOLOGY AND I CERTAINLY WOULD LIKE TO ADDRESS THEM.

17           ONE THING THAT I THINK IS REALLY IMPORTANT TO MAKE CLEAR

18   AT THE OUTSET, NOW WE HAVE THREE SEPARATE GROUPS OF CONSUMERS

19   AT ISSUE HERE.  THE FACTUAL PREDICATE UNDER LYING THE CLAIM

20   THAT IS THEY ASSERT ARE DIFFERENT BUT RELATED.  AND IT'S

21   IMPORTANT TO REGISTER THE DISTINCTION.

22           OKAY.  SO WE HAVE THE ANDROID DEVICE SWITCH SUBCLASS

23   WHICH STATES CLAIMS UNDER CLRA AND UNDER ALL THREE PRONGS OF

24   THE UCL.

25           WE HAVE THE ANDROID AP DISCLOSURE SUBCLASS.  THAT

1    SUBCLASS STATES DIFFERENT CLAIMS.  IT STATES A BREACH OF

2    CONTRACT CLAIM, IT STATES CLAIMS UNDER THE UCL UNFAIR AND

3    FRAUDULENT PRONGS AND IT STATES AN INTRUSION UPON SECLUSION

4    CLAIM.

5         THE FACTUAL PREDICATE IS DIFFERENT BECAUSE WE ARE TALKING

6    ABOUT THESE POLICIES WE ARE TALKING ABOUT THE 2008 VERSUS 2009

7    POLICY WITH THE DEVICE SWITCH SUP CLASS.  WE ARE NOT TALKING

8    ABOUT THOSE 308 SEES WITH RESPECT TO THE AP DISCLOSURE

9    SUBCLASS.

10         THIS IS A PRACTICE THAT INVOLVES GOOGLE'S DISCLOSURE OF

11   PERSONAL INFORMATION AT LEAST IN E-MAIL AND LOCATION DATA, TO

12   THIRD PARTY AP DEVELOPERS AND IT'S PREMISED ON THE VIOLATION OF

13   A CONTRACTURAL PROVISION.

14         I WILL POINT OUT, IT'S IN PARAGRAPH 135 OF THE COMPLAINT

15   TO BE CLEAR, BUT I WILL POINT IT OUT AGAIN.

16         THEN WE HAVE A GENERAL CLASS CLAIM THAT'S ANOTHER

17   INTRUSION UPON SOLUTION CLAIM AND IT HAS AGAIN, A DIFFERENT

18   FACTUAL PREDICATE THAT THE OTHER INTRUSION UPON SECLUSION

19   CLAIM.

20         SO IT'S VERY IMPORTANT TO DISTINGUISH WITH THE CLAIMS

21   ACTUALLY ARE OTHER THAN GOOGLE'S ATTEMPT TO SORT OF DUMP

22   EVERYTHING INTO A BIG BUCKET, MIX IT ALL AROUND AND TO FIGHT

23   AGAINST SOMETHING THAT WAS NOT ALLEGED.

24         SO WITH THAT BEING SAID, I THINK I WOULD JUST LIKE TO

25   ADDRESS THE CHRONOLOGY WHICH IS THE FIRST POINT THAT YOUR HONOR

1    RAISED.

2              THE COURT:  I APPRECIATE THAT.

3         JUST SO THAT I FULLY APPRECIATE THE POINT YOU'VE JUST

4    MADE, THIS CHRONOLOGY I TAKE IT IS RELEVANT ONLY TO THE ANDROID

5    DEVICE SWITCH SUBCLASS, CORRECT?

6              MR. MCGEE:  YES, THAT'S CORRECT.

7              THE COURT:  OKAY.  GO AHEAD.

8              MR. MCGEE:  PLAINTIFF NISENBAUM HAS ALLEGED THAT HE

9    WOULD NOT HAVE PURCHASED HIS ANDROID DEVICE WHICH IS IDENTIFIED

10   BY THE WAY IN THE COMPLAINT AS AN HTC DEVICE IN JUNE, NOT JULY,

11   OF 2010.

12        AND HE'S ALLEGED THAT HE WOULD NOT HAVE PURCHASED THIS OR

13   WOULD HAVE PURCHASED IT AT A LESSER PRICE, HAD GOOGLE

14   ACCURATELY DISCLOSED ITS INTENTION NOT TO HONOR ITS PRIVACY

15   OBLIGATIONS IN THE ROLLING PRIVACY POLICY.

16        WE ALLEGED IN THE COMPLAINT THAT THIS IS WHAT WE CALL THE

17   2008 ANDROID POLICY, THIS IS THE ONLY PUBLICLY AVAILABLE

18   ANDROID POLICY.  IT'S THE ONE THAT OUR PLAINTIFF RECALLED.  ITS

19   TERMS, GOOGLE IN ITS MOTION HAS RAISED THIS OTHER DOCUMENT, BUT

20   FOR EXHIBIT B TO OUR RJN WHICH IS DATED 2009, THEY SAY CAME

21   INTO EFFECT IN 2010, ALL THESE FACTUAL ALLEGATIONS.

22        IT'S SORT OF A RED HERRING BECAUSE THE TERMS ARE

23   MATERIALLY IDENTICAL ON ALL RELEVANT POINTS, OKAY.

24        GOOGLE IS RELYING ON THIS IDEA THAT THE ANDROID DEVICE ID

25   IS SOMEHOW ABLE TO BE CONFLATED WITH THESE FIVE DISCREET

1    CATEGORIES OF ANDROID DATA WHICH GOOGLE SAYS IT'S NOT GOING TO

2    COMINGLE.  IT'S NOT GOING TO ASSOCIATE IT WITH THE USER'S

3    ACCOUNT.  IT'S NOT GOING TO USE IT TO IDENTIFY THAT USER

4    PERSONALLY.

5         THE DEVICE ID AND THESE FIVE CATEGORIES ARE VERY

6    DIFFERENT THINGS.  WE EXPLAIN IN OUR OPPOSITION BRIEF THAT THE

7    DEVICE ID IS NOT WHAT GOOGLE ASSUMES TO BELIEVE IT IS, IT'S A

8    RANDOMLY GENERATED SEQUENCE OF NUMBERS AND LETTERS THAT TETHERS

9    AN ACCOUNT TO A DEVICE.

10        OKAY.

11        CERTAIN INFORMATION, CERTAIN ACTIVITY ON THE ANDROID

12   DEVICE, YES, WILL BE ASSOCIATED.  THAT IS THE POINT OF THE

13   DEVICE ID, WITHOUT THAT DEVICE ID, IT DOESN'T MAKE ANY SENSE

14   ANY OTHER WAY, OKAY.

15        GOOGLE COULD NOT POSSIBLY SAY WE ARE NOT GOING TO

16   ASSOCIATE YOUR DEVICE ID WITH YOUR ACCOUNT BECAUSE IT WOULDN'T

17   DO ANYTHING, IT WOULDN'T EXIST.

18             THE COURT:  SO ARE YOU SAYING THAT THE 2008 AGREEMENT

19   NUMBER ONE IS AN AGREEMENT UPON WHICH MR. NISENBAUM NOOSE

20   RELIED UPON; AND NUMBER 2, SOMEHOW REPRESENTED TO MR. NISENBAUM

21   AND OTHERS LIKE HIM THAT GOOGLE WOULD NOT COMINGLE THE DEVICE

22   ID WITH THIS OTHER DATA?

23             MR. MCGEE:  NO, TO BE ENTIRELY CLEAR, DEVICE ID'S ARE

24   NOT PART OF THIS CASE, TOTAL RED HERRING.

25             THE COURT:  OKAY.  GO AHEAD.

1          MR. MCGEE:  WE HAVE HARDWARE MODEL.  LET ME GIVE YOU

2     A QUICK EXAMPLE JUST SO WE ARE ALL ON THE SAME PAGE.

3          IF I GO INTO A VERIZON STORE AND BEHIND THE COUNTER

4     THERE'S BOXES OF ANDROID DEVICES THEY ARE UN ACTIVATED, NO ONE

5     HAS BOUGHT THEM, THEY ARE THERE FOR THE PURCHASE.

6          THOSE DEVICES HAVE HARDWARE SERIAL NUMBERS, THEY HAVE

7     MAKES, THEY HAVE MODELS, OKAY.  THEY DON'T HAVE DEVICE ID'S YET

8     UNTIL YOU ACTIVATE IT UNTIL YOU START PUNCHING IN YOUR

9     INFORMATION.

10          THAT'S WHEN YOU GET A DEVICE ID AND IT ASSOCIATES WITH

11     YOUR GMAIL ACCOUNT YOUR CONTACTS.  IT TELLS THE DEVICE THAT

12     IT'S ALLOWED TO HAVE ACCESS TO THESE MATERIALS.  IF YOU

13     DOWNLOAD APPS, IF YOU PURCHASE MEDIA, OKAY.

14          THAT IS WHAT THE DEVICE ID DOES.  THERE'S ABSOLUTELY NO

15     SENSE IN SUGGESTING THAT THIS CANNOT BE COMBINED WITH YOUR

16     ACCOUNT.  IT'S PART OF YOUR ACCOUNT.  WE HAVE NOT ALLEGED

17     OTHERWISE

18          THE COURT:  SEE, IT'S THE ONLY WAY THAT ANY WEBSITE

19     OR FRANKLY EVEN THE NETWORK KNOWS WHOSE DEVICE THAT IS,

20     CORRECT?  AND WHAT ACCOUNTS TO ASSOCIATE WITH IT; THAT'S THE

21     WHOLE POINT OF IT, RIGHT?

22          MR. MCGEE:  I WOULD SAY THAT'S LARGELY TRUE.    BUT

23     THE POINT I'M MAKING IS THERE ARE DISCREET CATEGORIES OF DATA

24     WHICH ARE NOT DEVICE ID'S WHICH GOOGLE SAYS WE ARE NOT GOING TO

25     USE TO IDENTIFY YOU, WE ARE NOT GOING TO COMINGLE IT.

1          THE COURT:  AND THOSE ARE THE FIVE CATEGORIES LAID

2     OUT IN THE '08 AGREEMENT, CORRECT?

3          MR. MCGEE:  LAID OUT IN THE '08 AGREEMENT, AND THEY

4     REAPPEAR IN THE '09 AGREEMENT.

5          SO THIS IS ANOTHER POINT I THINK IS REALLY IMPORTANT AND

6     IF GOES DIRECTLY TO THE STANDING ISSUE, THE TERMS ARE

7     MATERIALLY IDENTICAL.

8          WHAT GOOGLE'S ARGUMENT COMES DOWN TO IS A HIGHLY

9     FORMALISTIC CONTENTION THAT WE HAD A CONSIDER, OKAY, THE

10    PLAINTIFF SAYS WE HAD A CONTRACT.

11         HERE'S WHAT I REMEMBER ABOUT THE CONTRACT AND HERE'S THE

12    THING THAT I THINK THE CONTRACT IS.  AND I BELIEVE THIS IS WHAT

13    I RELIED ON, IT LOOKS FAMILIAR TO ME, GOOGLE, THE OTHER PARTY

14    TO THE CONTRACT COMES FORWARD AND SAYS, SORRY, PLAINTIFF, WE

15    DID HAVE A CONTRACT BUT EVEN THOUGH THE TERMS YOU'VE IDENTIFIED

16    ARE ALSO IN THE CONTRACT WE HAVE, THIS IS THE REAL CONTRACT,

17    IT'S GOT A DIFFERENT DATE, SO YOU LOSE.

18         IT'S A HIGHLY FORMALISTIC ARGUMENT, AND WHAT MATTERS AND

19    I THINK THE JURISPRUDENCE IS CLEAR ON THIS AS WELL, IS THAT THE

20    MATERIAL TERMS OF THE CONTRACT ARE CONTROLLING, OKAY.

21         SO IF YOU HAVE --

22         THE COURT:  LET ME STOP YOU THERE.

23         AND SO I TAKE YOUR POINT THAT THE TERMS ARE AT THE VERY

24    LEAST OVER LAPPING PERHAPS EVEN SUBSTANTIALLY OVERLAPPING, IF I

25    WERE TO BUY EVERYTHING GOOGLE IS SAYING HERE TODAY BUT ALLOW

1    YOU TO AMEND THE COMPLAINT YET AGAIN AND IDENTIFY THE PROPER

2    CONTRACT, THE '09 CONTRACT, WOULD THAT MATERIALLY IMPACT ANY OF

3    YOUR OTHER CLAIMS OR CHANGE -- WHAT WOULD STOP YOU FROM

4    PROCEEDING ON THE CLAIMS?

5             MR. MCGEE:  THAT IS WHY IN OUR OPPOSITION BRIEF WE

6    SAY WE DON'T BELIEVE THAT THE COURT SHOULD CONSIDER THIS

7    DOCUMENT, OKAY, WE HAVEN'T BEEN ABLE TO INDEPENDENTLY VERIFY

8    ITS EXISTENCE AND THAT'S A REAL PROBLEM, OKAY.

9         SO WE SAY THAT WE WILL ENGAGE WITH THE TERMS OF THIS

10   DOCUMENT PURELY ON THE SUP POSITION THAT THE COURT AGREES THAT

11   IT'S --

12            THE COURT:  IT'S PROPERLY BEFORE THE COURT.

13            MR. MCGEE:  IT'S PROPERLY BEFORE THE COURT.  OKAY.

14        SO I'M SAYING AS WE LAY OUT IN OUR OPPOSITION BRIEF IF

15   THE TERMS ARE THE SAME, SUBSTANTIALLY SIMILAR.  IN OTHER WORDS,

16   IF THE SAME CARVE OUTS EXIST, WE STILL STATE A CLAIM, IT

17   DOESN'T MATTER WHAT THE DATE OF THE DOCUMENT IS.

18        SO I THINK IT WOULD BE UNNECESSARY TO GO THROUGH THE, YOU

19   KNOW, ANOTHER PROCESS OF AMENDMENT TO IDENTIFY THE PROPER

20   CONTRACT BECAUSE WE WOULD BE RELYING ENTIRELY ON GOOGLE'S

21   FACTUAL ALLEGATIONS.

22        AND I'M CERTAINLY NOT NECESSARILY COMFORTABLE JUST BUYING

23   WHATEVER THEY'RE OFFERING HERE.

24            THE COURT:  I CAN APPRECIATE THAT.

25        WHAT I'M REALLY GETTING AT IS, IT SEEMS TO ME AS A MATTER

1    OF PLEADING, AT A MINIMUM THE PROPER CONTRACT, THE OPERATIVE

2    CONTRACT HAS TO BE IDENTIFIED FOR ALL SORTS OF PURPOSES DOWN

3    THE ROAD.

4         AND FURTHERMORE, FOR PURPOSES OF STANDING, THERE HAS TO

5    BE AT LEAST SOME ALLEGATION THAT THE PLAINTIFF RELIED UPON THAT

6    WHICH IS THE PROPER CONTRACT.

7         SO WHAT I'M TRYING TO GET AT IS YOUR CLAIM AS CURRENTLY

8    FRAMED, I BELIEVE, SAYS THAT MR. NISENBAUM RELIED UPON THE 08

9    CONTRACT AND REPRESENTATIONS MADE THERE.  AND THESE FIVE

10   CATEGORIES WERE NOT GOING TO BE COMMINGLED IN THE WAY THAT

11   GOOGLE LATER COMMINGLED.

12        MR. MCGEE:  YES, THE ALLEGATION IS THAT HAD GOOGLE

13   ACCURATELY DISCLOSED WHAT IT WAS GOING TO DO WITH THESE FIVE

14   CATEGORIES OF INFORMATION THEN HE WOULD NOT HAVE BOUGHT THE

15   DEVICE.

16        THE COURT:  OKAY.  THAT'S HELPFUL.

17        AND I APOLOGIZE FOR INTERRUPTING, BUT I FIND THIS DYNAMIC

18   USEFUL TO ME WHERE I GET TO INTERRUPT.  THIS IS HOW I GET TO

19   THE HEART OF THE MATTER.

20        MR. MCGEE:  YES.

21        THE COURT:  YOU HAVE SAID I THINK MR. NISENBAUM HAS

22   ALLEGED THAT HE, HAD HE KNOWN ABOUT THIS POSSIBILITY, HE

23   WOULDN'T HAVE BOUGHT THE PHONE, RIGHT.

24        MR. PAGE HAS SUGGESTED THAT BECAUSE YOU HAVE NOT

25   SPECIFICALLY ALLEGED THAT GOOGLE DID SOMETHING WITH EACH OF

1    THESE FIVE CATEGORIES, THERE'S NO INJURY, TELL ME WHY THAT'S

2    WRONG.

3             MR. MCGEE:  OKAY.  ALL RIGHT.

4         I WOULD LOVE TO.  SO IT'S IMPORTANT TO REALIZE THESE FIVE

5    CATEGORIES OF INFORMATION THAT ARE IDENTIFIED IN THE '08 AND

6    THE '09 ANDROID OR MOBILE POLICIES, IT'S IMPORTANT TO

7    APPRECIATE THAT GOOGLE'S MARCH ONE 2012 PRIVACY POLICY WHICH

8    SUPPLANTED WHICH COMPLETELY ERASED ALL THE PRODUCT SPECIFIC

9    POLICIES THAT HAD ANY LIMITATION WHATSOEVER ON GOOGLE'S ABILITY

10   TO COMINGLE INFORMATION, IT ACTUALLY SPECIFICALLY IDENTIFIES

11   THOSE FIVE CATEGORIES AS NOW BEING SUBJECT TO COMMINGLING.

12        SO THE ALLEGATION IS PRIOR TO MARCH 12012, GOOGLE WAS NOT

13   COMMINGLING COMBINING USING THIS INFORMATION TO IDENTIFY THE

14   USER.

15            THE COURT:  AND THEY MADE A SPECIFIC REPRESENTATION

16   TO YOUR CLIENT THAT IT WOULD NOT DO SEE, THAT'S KEY, RIGHT.

17            MR. MCGEE:  OF COURSE, IT'S KEY.

18        IN ADDITION, IT'S AFTER MARCH 1, 2012 THAT GOOGLE SAYS

19   NOW WE ARE DOING THIS.  NOW I MEAN, I'M NOT SURE IF GOOGLE'S

20   REAL POINT IS WE DIDN'T ACTUALLY GO VISIT THE GOOGLE PLEX AND

21   SORT OF FIGURE OUT WHAT'S HAPPENING WITH EACH PLAINTIFF'S DATA,

22   BECAUSE HOW WOULD WE KNOW THAT.

23        BUT WHAT WE CAN SAY IS THAT GOOGLE TELLS ITS USERS AT ONE

24   POINT WE ARE NOT GOING TO TOUCH THIS INFORMATION WE ARE GOING

25   TO TREAT IT DIFFERENTLY.  WE ARE GOING TO CARVE IT OUT, CABIN

1    IT OFF, AND THEN LATER IT SAYS NEVER MIND, NO WE ARE NOT, WE

2    ARE GOING TO COMINGLE THAT AND PUT THAT TOGETHER WITH

3    EVERYTHING ELSE.

4           THE COURT:  WELL, BUT THEY SAY SOMETHING SLIGHTLY

5    DIFFERENT WHICH IS, IT WOULD BE ONE THING I GRANT YOU IF THEY

6    CAME OUT AND SAID, WE ARE GOING TO DO THIS OR WE ARE DOING

7    THIS.

8        I DON'T READ THE POLICY QUITE THAT SAME WAY.  THE POLICY

9    SUGGESTS TO ME WHAT GOOGLE IS SAYING IS WE ARE NOW RESERVING

10   THE RIGHT TO USE THESE FIVE CATEGORIES IN THE SAME WAY WE HAVE

11   HANDLED OTHER PRIVATE DATA.

12       THERE'S A DIFFERENCE THERE, RIGHT, AND THESE ARE TO THE

13   LAYPERSON A TECHNICALITY PERHAPS, BUT IN THE LAW WE CALL THAT

14   RELIANCE, INJURY, FACT, STANDING.

15       SO HELP ME WORK THROUGH THAT PROBLEM.  IF THERE'S NO

16   SPECIFIC ALLEGATION THAT GOOGLE HAS DONE THAT WHICH YOUR CLIENT

17   IS NOW ANXIOUS ABOUT SUFFICIENTLY WORRIED ABOUT CONCERNED ABOUT

18   SO MUCH THAT IF HE HAD KNOWN THIS AT THE BEGINNING HE WOULD

19   NEVER HAVE TOUCHED THIS PLATFORM, NEVER BOUGHT A PHONE, HELP ME

20   WORK THROUGH THAT A LITTLE BIT.

21           MR. MCGEE:  IS YOUR HONOR, JUST SO I'M CLEAR, ASKING

22   FOR FACTUAL ALLEGATIONS THAT A HARDWARE MODEL SOFTWARE VERSION

23   DEVICE LEVEL EVAPORATE REPORTS, LOCATION INFORMATION AND

24   AVERAGE FEATURE USAGE WHICH ARE THE FIVE CATEGORIES, WERE IN

25   FACT TAKEN BY GOOGLE AND USED IN A CERTAIN WAY?

1      THE COURT:  I'M NOT ASKING FOR THE ALLEGATION I'M

2  JUST WONDERING IN THE ABSENCE OF SUCH ALLEGATIONS, DO I HAVE

3  THE AUTHORITY TO PERMIT THIS CLAIM TO MOVE FORWARD WHERE ABSENT

4  THOSE ACTIONS IT WOULD SEEM YOUR CLIENT WOULD NOT HAVE SUFFERED

5  ANYTHING MORE THAN THE TYPE OF SORT OF UNDIFFERENTIATED WORRY

6  AND CONCERN THAT COURTS HAVE BEEN HOSTILE TO FOR --

7      MR. MCGEE:  NO, BECAUSE WE HAVE ALLEGED THAT'S AN

8  AUTOMATIC AND SYSTEMATIC PROCESS.

9      SO WE ALLEGED -- WE CAN ONLY DO THIS ON INFORMATION AND

10  BELIEF --

11      THE COURT:  AND I'M WORKING ON ALLEGATIONS HERE,

12  RIGHT?

13      MR. MCGEE:  WE ARE TALKING ABOUT FACTUAL ALLEGATIONS.

14      SO WE HAVE ALLEGED THAT YES, THIS IS AN AUTOMATIC AND

15  SYSTEMATIC PROCESS THAT GOOGLE IS NOW USING THIS INFORMATION IN

16  A WAY THAT IT PREVIOUSLY SAID IT DIDN'T.

17      I DO GRANT YOU THAT WE HAVEN'T NECESSARILY, TO MY

18  RECOLLECTION, SPECIFIED PRECISELY THE WAY THAT IS THESE FIVE

19  CATEGORIES HAVE BEEN USED IN CONNECTION WITH PLAINTIFF

20  NISENBAUM.

21      THE COURT:  BUT YOU ARE SAYING IF I LOOK AT THIS

22  COMPLAINT, THE CSAC, I WILL SEE THAT GOOGLE HAS ALLEGED TO HAVE

23  DONE WHAT IT PREVIOUSLY HAS PLEDGED NOT TO DO.

24      MR. MCGEE:  IN THE INTRODUCTION THERE'S AN ALLEGATION

25  TO THE EFFECT THAT GOOGLE NOW SYSTEMATICALLY AUTOMATICALLY

1    COMMINGLES ALL THIS INFORMATION AND THE PROBLEM WITH THE PRIOR

2    COMPLAINT WAS THAT YOU KNOW WE DIDN'T SPECIFY PRECISELY WHAT WE

3    ARE TALKING ABOUT.

4        BUT WE HAVE FIVE CATEGORIES NOW AND WE ARE SAYING THAT

5    THOSE ARE NOW PART OF GOOGLE'S EVERY DAY ROUTINE PROCESS.

6        NOW WE AGAIN CAN'T GO BEYOND INFORMATION AND BELIEF

7    BECAUSE WE DON'T HAVE ANY DISCOVERY HERE.  IN DISCOVERY IT'S

8    CERTAINLY SOMETHING THAT WE WOULD TARGET.

9            THE COURT:  DO YOU WANT TO -- I'M CONSUMING A LOT OF

10   YOUR TIME TALKING ABOUT THE ANDROID DEVICE SWITCH CLASS, DO YOU

11   WANT TO TALK A LITTLE BIT ABOUT THE AP DISCLOSURE.

12           MR. MCGEE:  WELL, THERE'S A FEW THINGS I WOULD STILL

13   LIKE TO SAY WITH RESPECT TO THE --

14           THE COURT:  GO AHEAD, THIS IS YOUR TIME.

15           MR. MCGEE:  SO ANOTHER POINT I WANTED TO MAKE WAS

16   THAT GOOGLE ACTUALLY CONCEDES THAT IT'S POSSIBLE THAT THE 08

17   AND '09 POLICIES RUN PARALLEL.

18       THIS IS A POINT WE MAKE IN OUR OPPOSITION.  THEY SAY

19   THAT -- THIS IDEA OF IT SUPERSEDING THE '09 POLICY SUPERSEDING

20   THE 08 POLICY IS GOOGLE'S FACTUAL ALLEGATION.

21       THEY SAY IT'S DEBATABLE WHETHER THE 2008 POLICY CONTINUED

22   TO OPERATE THROUGH FEBRUARY 29 2012.  I THINK THAT'S AN

23   IMPORTANT POINT.  BECAUSE OBVIOUSLY IT SHOW THAT IS THIS REALLY

24   IS A FACT ISSUE, WHICH POLICY WAS OPERATIVE WAS REALLY A FACT

25   ISSUE.

 1          WE DON'T AGREE NECESSARILY THAT GOOGLE'S FACTUAL

 2     ALLEGATIONS ARE CORRECT AND THERE'S NO REASON THAT THE COURT

 3     SHOULD AGREE THAT THEY ARE CORRECT AT THIS STAGE, IT'S JUST

 4     INAPPROPRIATE.

 5          AS I SAID THOUGH THE TERMS ARE MATERIALLY IDENTICAL, THE

 6     DEVICE ID'S ARE A RED HERRING.

 7          I ALSO WANTED TO SAY SOMETHING ABOUT RELIANCE IN RESPONSE

 8     TO WHAT MR. PAGE STATED IN HIS ARGUMENT.

 9          WE ARE TALKING ABOUT AN OMISSIONS CASE, THE CLRA CLAIM IS

10     REALLY AN OMISSIONS BASED CLAIM.  AND WE'VE ALLEGED NOT ONLY AS

11     WE HAVE ALREADY MENTIONED THIS HE WOULDN'T HAVE PURCHASED THE

12     DEVICE AND SO ON, BUT HE ACTIVATED THE DEVICE.  HE REGISTERED

13     AS HE WAS REQUIRED TO DO IN ORDER TO USE THE DEVICE.

14          SO WE HAVE ALLEGED THAT THEREFORE HE WAS EXPOSED TO

15     WHATEVER PRIVACY POLICY WAS IN EFFECT.  THIS IS ANOTHER POINT

16     GOOGLE CONCEDES IN ITS OPENING BRIEF.  IT SAYS BASED ON HIS

17     HARDWARE THEY IDENTIFIED IT AS AN HTC DROID OF SOME SORT

18     EXACTLY, I DON'T RECALL RIGHT NOW, DROID INCREDIBLE PERHAPS,

19     THAT HE WOULD HAVE BASED ON THIS HARDWARE HE WOULD HAVE BEEN

20     EXPOSED TO 2009 POLICY.

21          AND THERE'S ANOTHER IMPORTANT POINT WITH RESPECT TO

22     RELIANCE.  IN AN OMISSIONS CASE, AS YOUR HONOR IS AWARE, WHAT

23     NEEDS TO BE ALLEGED IS THE PLAINTIFF WAS EXPOSED IN SOME WAY TO

24     THE RELEVANT INFORMATION.  THIS IS A POINT THAT GOOGLE CONCEDES

25     THEREFORE IT SHOULD BE ESTABLISHED.

1          THE COURT:  BUT THERE IS A DIFFERENCE THOUGH BETWEEN

2    EXPOSURE ON THE ONE HAND AND RELIANCE SUCH THAT THE TERMS IN

3    THE AGREEMENT MATERIALLY IMPACT OR SOMEHOW INFLUENCE THE

4    PURCHASE DECISION, CORRECT?

5          MR. MCGEE:  WELL, IN THIS CASE THEY ARE CERTAINLY

6    CONJOINED.  I MEAN BOTH OF THOSE ARE THERE.  I DO APPRECIATE

7    THE DIFFERENCE.  BUT AGAIN THIS IS AN OMISSIONS CASE.

8        WHAT YOU NEED TO ALLEGE IS THAT YOU WOULD HAVE HAD A WAY TO

9    IDENTIFY THE PROPER DISCLOSURE HAD IT BEEN MADE.  THAT'S THE

10   STANDARD.  AND THAT IS SATISFIED.  THAT IS SATISFIED WITH THE

11   COMPLAINT AS ITS ALLEGED.

12         ALSO I HAVE MAYBE IT'S JUST SOMETHING IDIOSYNCRATIC ON MY

13   END, BUT I GET A TREMENDOUS HEADACHE WHEN I HEAR THAT THE CLAIM

14   IS ABOUT SHARING INFORMATION BETWEEN GOOGLE'S FREE APPS.

15   GOOGLE IS A VAST ECO SYSTEM OF DATA.  IT IS A GIANT DATA POOL,

16   OKAY.

17         SO WE ARE NOT TALKING ABOUT JUST SHARING INFORMATION

18   BETWEEN GMAIL AND YOU TUBE OR SOMETHING LIKE THAT.  OF COURSE

19   THAT MAY BE PART OF IT, BUT GOOGLE HAS CONSTRUCTED INDIVIDUAL

20   DOSSIERS ON EVERY INDIVIDUAL WHO IS USING THEIR PRODUCTS.

21         AND I THINK IT'S IMPORTANT TO REALIZE THEY HAVE A VAST

22   DATABASE.  EVERY LITTLE FLECK OF IDENTITY, EVERY LITTLE PIECE

23   OF DATA THEY GET GETS CONSOLIDATED INTO THIS VAST SORT OF DATA

24   POOL.  AND IT SIGNIFIES A LOT MORE THAN IT MIGHT APPEAR TO IN

25   ISOLATION.

1        SO AGAIN, THIS GOES MAYBE TO MATERIALITY.  I DON'T KNOW.

2   BUT THE FIVE CATEGORIES WE ARE TALKING ABOUT IN ISOLATION AND

3   ABSTRACTION, THEY MIGHT NOT SEEM LIKE THEY ARE THE POST

4   IMPORTANT THINGS IN THE WORLD BUT THEY CAN REVEAL TO GOOGLE A

5   WHOLE LOT MORE THAN --

6        THE COURT:  IT'S A MOSAIC THEORY.

7        MR. MCGEE:  TOTAL MOSAIC THEORY.  THAT'S RIGHT.

8        SO THERE'S ALSO UCL CLAIMS THAT THE ANDROID DEVICE SWITCH

9   CLAIMS CLASS MAKES.

10       ONE POINT I WANTED TO MENTION WAS THAT GOOGLE HAS WAIVED

11  ITS CHALLENGE TO THE UNFAIR PRONG CLAIM, AND BECAUSE GOOGLE HAS

12  DECIDED TO LEAVE SIX BLANK PAGES IN ITS OPENING BRIEF.  I

13  CERTAINLY DON'T FEEL, PLAINTIFF'S RESPECTIVELY SUBMIT THAT THE

14  COURT SHOULD NOT FURNISH ARGUMENTS TO GOOGLE THAT GOOGLE DID

15  NOT MAKE.

16       BUT I THINK IT'S ALSO IMPORTANT TO RECOGNIZE THAT ALL OF

17  GOOGLE'S ARGUMENTS WITH RESPECT TO THE CLRA AND THE UCL, ON THE

18  DEVICE SWITCH SUBCLASS CLAIMS, MAKES A MOCKERY OF THE

19  FUNDAMENTAL CANON OF CONSTRUCTION THAT EVERY TERM HAS TO BE

20  GIVEN EFFECT.

21       SO IF GOOGLE'S GENERAL POLICY SAYS WE MIGHT COMBINE

22  INFORMATION WITH OTHER INFORMATION THAT YOU GIVE US OR IF THE

23  ANDROID POLICY SAYS WE MIGHT COMBINE THE DEVICE ID'S WITH YOUR

24  ACCOUNT, AGAIN RED HERRING, BUT THE IDEA THAT GOOGLE HAS NO WAY

25  OF GIVING EFFECT TO THESE OTHER FIVE CATEGORIES.

1       SO THE BIG BLANKET STATEMENT THAT THE COURT EARLIER FOUND

2   COMPELLING WE MAY COMBINE INFORMATION ACROSS PLATFORMS, OKAY.

3   BUT HOW DO YOU THEN GIVE EFFECT TO THE FACT THAT YOU SAID WE

4   ARE NOT GOING TO TOUCH THESE SAME FIVE CATEGORIES IN THAT

5   PARTICULAR WAY.

6       THE COURT:  WELL, ISN'T THAT A MATTER OF TIMING?

7       IT WOULD SEEM TO ME THAT TO THE EXTENT THOSE LATER

8   REPRESENTATIONS WERE MADE IN ADVANCE OF A PURCHASE DECISION, IN

9   THIS CASE FOR EXAMPLE, THAT'S A PRETTY STRAIGHTFORWARD WAY TO

10  RECONCILE THEM.

11      THAT IS, WHATEVER WAS SAID TO A PARTY, A YEAR AGO, TWO

12  YEARS AGO, FIVE YEARS AGO, WHAT YOU ARE TELLING THE PARTY NOW

13  BEFORE ANY ECONOMIC ACTION IS TAKEN THAT WE WILL COMINGLE WE

14  WILL DISCLOSE, WHATEVER THE CASE MAY BE, THAT'S A PRETTY EASY

15  SOLUTION.

16      I TAKE IT YOUR POINT, THOUGH, AS BEING WHAT EFFECT CAN

17  THOSE TYPES OF BLANKET REPRESENTATIONS HAVE AFTER THE FACT.

18      MR. MCGEE:  WELL, AT ALL RELATIVE TIMES HERE,

19  GOOGLE'S GENERAL POLICY, WE ARE TALKING BEFORE MARCH 1, 2012

20  SAYS WE MAY COMBINE INFORMATION, ESSENTIALLY ACROSS PLATFORMS.

21  THAT'S NOT THE PRECISE LANGUAGE, BUT THAT'S THE GIST.

22      CONTEMPORANEOUSLY WHILE THAT IS IN EFFECT, IT'S MAKING

23  THESE ARE OTHER STATEMENTS IN THE ANDROID OR THE MOBILE POLICY

24  DOCUMENTS TO ANDROID USERS.

25      SO HOW DO YOU RECONCILE THESE TWO?  OKAY.  BLANKET

1    AUTHORIZATION.  WE MAY COMBINE INFORMATION.  DOESN'T SAY WE MAY

2    COMBINE ALL INFORMATION, BUT WE MAY COMBINE YOUR INFORMATION

3    ACROSS THE PLATFORMS.  FINE.  BUT THERE'S FIVE DISCREET

4    CATEGORIES OF INFORMATION WHICH WE ARE GOING TO TREAT

5    DIFFERENTLY.

6         I MEAN, YOU HAVE TO GIVE EFFECT TO THE PROVISIONS, THE

7    ONLY WAY YOU CAN POSSIBLY DO THAT IS BY RECOGNIZING THAT THESE

8    ARE HOLES OR EXCEPTIONS OR LIMITATIONS OR CONTRADICTIONS.

9              THE COURT:  CARVE OUTS I THINK IS THE TERM.

10             MR. MCGEE:  CARVE OUTS IS THE TERM.

11        SO IF YOU DON'T APPRECIATE THIS FUNDAMENTAL CANON OF

12   STATUTORY CONSTRUCTION, I SUBMIT THAT YOU CAN NOT UNDERSTAND

13   THE DOCUMENTS IN THE FIRST PLACE, AND THAT'S WHY I THINK

14   GOOGLE'S ARGUMENT ULTIMATELY FAILS.

15        I WILL MOVE ON TO THE ANDROID AP DISCLOSURE SUBCLASS.

16   JUST TO REMIND THE COURT THAT THIS SUBCLASS'S CLAIMS HAVE A

17   SLIGHTLY DIFFERENT OR DIFFERENT FACTUAL PREDICATE WHICH IS THAT

18   WE ARE NOW TALKING ABOUT GOOGLE'S PRACTICE OF SURREPTITIOUSLY

19   TRANSMITTING ANDROID PERSONAL IDENTIFYING INFORMATION OF

20   ANDROID USERS TO THIRD PARTY AP DEVELOPERS OKAY, OUTSIDE OF

21   GOOGLE.

22        GOOGLE SAYS A BREACH OF CONTRACT CLAIM SHOULD BE

23   STRAIGHTFORWARD IN ITS REPLY BRIEF, AND THIS IS SOMETHING THAT

24   PLAINTIFFS WHOLEHEARTEDLY AGREE WITH AND THAT WE EASILY SATISFY

25   OKAY.

1          PARAGRAPH 135 OF THE COMPLAINT SAYS, THE GENERAL PRIVACY

2     POLICY HAS TWO STATEMENTS, AFFIRMATIVE PROMISES THAT GOOGLE

3     ONE, TAKES APPROPRIATE SECURITY MEASURES TO PROTECT AGAINST

4     UNAUTHORIZED DISCLOSURE OF YOUR PERSONAL INFORMATION.

5          TWO, GOOGLE RESTRICTS ACCESS TO EMPLOYEES, AGENTS AND

6     CONTRACTORS, YOUR PERSONAL INFORMATION, OKAY.

7          THOSE ARE PROMISES, THERE'S NO LIMITS, THERE'S NO

8     EXCEPTIONS TO THAT.  I MEAN --

9          THE COURT:  YOU READ THOSE TWO PROVISIONS THAT YOU

10    DESCRIBE IN PARAGRAPH 135 AS SETTING FORTH COVENANT BY WHICH

11    GOOGLE COMMITS NOT TO DISCLOSE CERTAIN PII, PERSONAL

12    IDENTIFIABLE INFORMATION, TO THIRD PARTIES.

13          MR. MCGEE:  THERE'S NO OTHER WAY TO READ IT, IT'S

14    UNDER A HEADING CALLED GENERAL INFORMATION SECURITY IN THE

15    PRIVACY POLICY.

16          SO HERE'S WHAT WE DID, WE THOUGHT YOU KNOW, GOOGLE IS

17    GOING TO COME BACK AND SAY, WELL, PLAINTIFFS THAT'S NOT REALLY

18    WHAT IT SAID, IT SAID SOMETHING DIFFERENT ENTIRELY.  WHAT YOU

19    ACTUALLY HAVE TO DO IS CONSTRUE THAT IN CONTEXT AND INTERPRET

20    THAT AGAINST PRODUCT-SPECIFIC POLICIES AND SORT OF TAKE OUR

21    APPROACH AND USE IT AGAINST US WHICH WOULD BE VERY CLEVER.

22          BUT WE HEAD THEM OFF AT THE PASS BECAUSE WE SAY LOOK, WE

23    LOOKED AT EVERYTHING, WE LOOKED AT THE GOOGLE PLAY TERMS WHICH

24    WOULD BE ADMITTEDLY OBVIOUS HERE BECAUSE WE ARE TALKING ABOUT

25    ANDROID AP USERS, OKAY.

1          THE GOOGLE PLAY TERMS SAY NOTHING THAT'S DIRECTLY ON

2     POINT BUT THEY DIRECT THE READER TO GOOGLE WALLET POLICY,

3     GOOGLE WALLET BEING THE PAYMENT MECHANISM THAT GOOGLE USES AND

4     THAT WAS FORMERLY CALLED CHECK OUT.  THESE ARE ALL IN REQUEST

5     FOR OUR JUDICIAL NOTICE AS WELL.

6          THE GOOGLE WALLET POLICY SAYS, WE MAY DISCLOSE PERSONAL

7     INFORMATION AS NECESSARY TO PROCESS TRANSACTIONS OR TO MAINTAIN

8     YOUR ACCOUNT.  OUR ALLEGATION IS THAT THESE DISCLOSURES ARE

9     ARBITRARY AND THEY ARE NOT --

10          THE COURT:  THEY HAVE NOTHING TO DO WITH THE ACCOUNT

11     PROCESSING OF TRANSACTIONS.

12          MR. MCGEE:  THERE'S NO ACCOUNT TO MAINTAIN AND

13     THERE'S NO NEED TO PROCESS IN INFORMATION FOR TRANSACTIONS,

14     OKAY.

15          GOOGLE MIGHT WANT TO FIGHT THE FACTS AND SAY, WELL, IT'S

16     NECESSARY FOR VALUE OUT OF TAX.

17          FIRST OFF, WHY IS AN E-MAIL ADDRESS GOING TO SERVE VALUE

18     OUT OF TEXT AND I HAVE NO IDEA AND THEY DON'T EITHER.  BUT

19     THAT'S IRRELEVANT.  IT'S A FACT QUESTION.  AND THE PROBLEM ALSO

20     IS THAT WE HAVE ALLEGED THAT'S AN ARBITRARY AND UNIVERSAL

21     DISCLOSURE.  THIS IS HAPPENING EVERY TIME THERE'S AN AP

22     DOWNLOAD OR PURCHASE.

23          SO THE VAT ARGUMENT IS REALLY MISPLACED.

24          SO WE ALSO LOOKED TO THE OTHER RELEVANT POSSIBLY RELEVANT

25     POLICY DOCUMENTS AND THAT'S THE GOOGLE CHECKOUT POLICY WHICH

1    ACTUALLY SAYS YOU MAY DETERMINE, YOU THE USER MAY DETERMINE ON

2    A SELLER-BY-SELLER BASIS WHO GETS YOUR E-MAIL ADDRESS AND IF

3    YOU LIKE YOU CAN KEEP IT ENTIRELY CONFIDENTIAL.

4         THERE'S ABSOLUTELY NOTHING IN THOSE PROVISIONS THAT WOULD

5    ALLOW GOOGLE TO ARBITRARILY DISCLOSE THE INFORMATION WE ARE

6    ALLEGING.

7         THE COURT:  SO ON THIS ISSUE THEN YOUR BEEF WITH

8    GOOGLE ISN'T SO MUCH THEY ARE LOOKING TO THESE OTHER AGREEMENTS

9    IN FACT YOU URGE THE COURT TO DO THAT IN THE EARLIER CONTEXT,

10   IT'S THAT THE AGREEMENTS THEMSELVES DON'T SAY WHAT GOOGLE SAY

11   THEY SAY.

12        MR. MCGEE:  GOOGLE ACTUALLY DOESN'T HAVE A COHERENT

13   ARTICULATION OF WHAT THE AGREEMENTS SAY, THEY COMPLETELY SIDE

14   STEP THE ISSUE.

15        SO WE ARE TALKING ABOUT THE GENERAL PRIVACY POLICY WHICH

16   HAS TWO AFFIRMATIVE PROMISES.  THAT CAN BE CONSTRUED AS THE

17   BASIS, THE CONTRACTURAL BASIS FOR THE BREACH OF CONTRACT CLAIM.

18        THE OTHER TERMS THAT WE LOOK AT THE PLAY THE WALLET THE

19   CHECK OUT AND THE 2008 ANDROID POLICY WHICH SAYS WE MAY

20   DISCLOSE INFORMATION FOR BILLING REPORTED PURPOSES, AGAIN

21   IRRELEVANT TO THIS, OR THE MOBILE POLICY THEY SUBMITTED WHICH

22   SAYS THE SAME THING BECAUSE IT'S THE SAME DOCUMENT.

23        THESE POLICY DOCUMENTS DON'T GIVE THEM AN OUT, IN OTHER

24   WORDS.  WE INCLUDE THOSE ALLEGATIONS IN THE DETAIL IN THE

25   COMPLAINT BECAUSE WE WANT IT TO BE COMPREHENSIVE.  THE ACTUAL

1    CONTRACTURAL TERM THAT'S VIOLATED IS IN THE GENERAL PRIVACY

2    POLICY, AND THERE'S NOTHING TO AUTHORIZE THIS.

3         EARLIER I HEARD MR. PAGE SAY THAT SOMEHOW COMMINGLING

4    INFORMATION BETWEEN GOOGLE'S -- WITHIN THE GOOGLE ECO SYSTEM

5    WOULD BE RELEVANT TO THIS, AND IT'S JUST COMPLETELY NOT.  I

6    MEAN, IT COMPLETELY MISCONSTRUES THE ALLEGATIONS WHICH ARE IN

7    MY OPINION ILLUMINOUSLY SET FORTH IN THE COMPLAINT.  IT'S CLEAR

8    THAT IS NOT WHAT'S ALLEGED.

9         SO THE ARGUMENT THAT THEY MAKE IS AGAIN COMPLETELY OFF

10   POINT.

11        THE HARM ASSOCIATED WITH THE BREACH OF CONTRACT IS THE

12   CONSUMPTION OF FINITE RESOURCES PAID FOR BY THE PLAINTIFFS FOR

13   THEIR OWN USE AND NOT FOR GOOGLE'S USE.

14        WE'VE ALLEGED QUITE CLEARLY THAT THIS PROCESS BEGINS WITH

15   THE DEVICE, IT TRANSMITS INFORMATION THAT ENDS UP WITH THE

16   THIRD-PARTY AP DEVELOPER WHO BY THE WAY IS NOT AN AGENT NOT AN

17   EMPLOYER NOT A CONTRACTOR OF GOOGLE.

18        AND THIS IS SOMETHING THAT THE PLAINTIFFS AND THE ANDROID

19   USERS BECAUSE THERE'S OVER 50 BILLION DOWN LOADS, THIS SHOULD

20   NOT BE BORN BY THE USER IT SHOULD BE BORN BY GOOGLE.  IT'S DONE

21   FOR GOOGLE'S OWN PURPOSES.

22             THE COURT:  HOW DOES THE USER BEAR THAT TRANSMISSION

23   FROM THE GOOGLE TO THE THIRD PARTY AP DEVELOPER?

24             MR. MCGEE:  OUR UNDERSTANDING IS WHEN THE AP IS

25   DOWNLOADED THERE'S A SIGNAL SENT FROM THE DEVICE TO THE THIRD

1    PARTY AP DEVELOPER WHICH DISCLOSES CERTAIN FORMATTED

2    INFORMATION THAT GOOGLE IS RESPONSIBLE FOR --

3              THE COURT:  SO YOUR ALLEGATION IS THAT THERE IS IN

4    FACT A TRANSMISSION FROM THE DEVICE ITSELF TO A THIRD PARTY.

5              MR. MCGEE:  OF COURSE.

6         THAT HAS NOT CHANGED SINCE THE LAST ROUND.

7         WHAT'S DIFFERENT IS THAT THE ALLEGATIONS WITH RESPECT TO

8    THE AP DISCLOSURE SUBCLASS WE HAVE BECOME A LOT MORE PRECISE

9    WITH THE TERMS AND WE'RE SHOWING WHY IT'S A BREACH OF CONTRACT

10   A LOT MORE CLEARLY.  BUT THIS HAS NEVER BEEN ABOUT COMMINGLING,

11   AND THE WAY I READ THE COURT'S DECEMBER 3RD OPINION, THAT SORT

12   OF SUGGESTS THAT MAYBE THAT WAS THE THOUGHT, THAT MAYBE THAT

13   WAS PART OF THIS CLAIM AND IT'S NOT.

14        AND THAT'S GOOGLE'S LINE AND IT JUST DOESN'T MAKE ANY

15   SENSE.

16        THERE'S ALSO UCL CLAIMS.  HERE WE DON'T HAVE AN UNLAWFUL

17   PRONG CLAIM.  WE HAVE THE FRAUDULENT PRONG AND THE UNFAIR

18   PRONG.

19        AGAIN, THE UNFAIR PRONG, GOOGLE DECIDED IN ITS WISDOM TO

20   WAIVE THE CHALLENGE TO THIS CLAIM AND WE BELIEVE AGAIN THE

21   COURT SHOULD NOT BE SUPPLYING AN ARGUMENT GOOGLE DIDN'T MAKE.

22        BUT ON THE MERITS AGAIN IT'S THE SAME POINT.  THERE'S NO

23   BENEFIT TO THE USERS OF THIS ARBITRARY DISCLOSURE.

24        IT'S CONFLATING APPLES AND ORANGES A BIT TO SAY WELL,

25   THEY WANTED TO DOWNLOAD THE AP AND THAT'S THE BENEFIT THEY GOT.

1      NO, NO, NO.  THEY WANTED TO DOWNLOAD THE AP, MAYBE THEY

2   PAID MONEY FOR THAT.  MAYBE THEY PAID A $1.99 FOR THAT OR

3   SOMETHING.

4      THE BENEFIT TO USERS WOULD HAVE TO BE TIED TO THIS

5   DISCLOSURE.  IT WOULD HAVE TO BE -- WHY DO WE HAVE TO ENGAGE IN

6   THIS PRACTICE.  WELL, IT'S BECAUSE OTHERWISE WE COULDN'T

7   PROVIDE YOU WITH WHATEVER SERVICE YOU ARE TRYING TO GET.

8      THAT'S NEITHER --

9      THE COURT:  YOU ARE SAYING IT'S NOT A NECESSARY

10   CONDITION OR PROVISION OF THE SERVICE.

11      MR. MCGEE:  ABSOLUTELY NOT.

12      AND THAT'S A REAL PROBLEM FOR GOOGLE'S ARGUMENT.  IT SORT

13   OF DOESN'T MAKE ANY SENSE TO ALL THAT WELL, IT'S UNFAIR.  IT'S

14   NOT UNFAIR BECAUSE YOU GET AN AP YOU WANTED.  YOU GET THE

15   FLASHLIGHT AP YOU WANTED, BUT WE MADE THIS DISCLOSURE IS LET'S

16   COMPARE THOSE TWO.  THAT'S NOT THE WAY THAT IT'S SET UP.

17   THAT'S NOT THE WAY THE ANALYTICAL FRAMEWORK WAS SET UP.  WE ARE

18   TALKING ABOUT THE SPECIFIC PRACTICE COMPLAINED OF WHICH IS

19   DISCLOSURE.

20      AND AGAIN, THE COST HERE THE LOST MONEY OR PROPERTY UNDER

21   THE UCL WOULD BE BOTH DIMINISHED PRIVACY BECAUSE EVEN THOUGH

22   PLAINTIFF, I SHOULD ALSO SAY IT'S THE COST OF THE RESOURCES BUT

23   IT'S ALSO DIMINISHED PRIVACY BECAUSE YOU HAVE TO TAKE ACCOUNT

24   OF THE CONTEXT HERE.

25      AND THIS IS GOING TO SORT OF BLEED INTO MY INTRUSION UPON

1    SECLUSION ARGUMENT.  WE ARE NOT TALKING ABOUT SOMEBODY SENDING

2    A POSTCARD TO SOMEONE INTENTIONALLY THAT INCLUDES THE NAME AND

3    THE PHYSICAL ADDRESS OR SOMETHING LIKE THAT.  WE ARE TALKING

4    ABOUT THE FACT THAT YOU HAVE CHOSEN TO DOWNLOAD SOMETHING FROM

5    THE AP, THE PLAY MARKET, AND YOU ARE TELLING THAT PERSON THAT

6    YOU ARE THEIR CUSTOMER, HERE'S MY NAME, HERE'S MY E-MAIL

7    ADDRESS AND HERE'S MY LOCATION INFORMATION IN ADDITION TO THE

8    FACT THAT I'M A CUSTOMER OF YOURS.

9            THE COURT:  RIGHT.

10    I TAKE YOUR POINT TO BE IT'S NOT THE INFORMATION ITSELF IN

11    WHICH YOU ARE CLAIMING CERTAIN EXPECTATIONS IT'S THE

12    ASSOCIATION OF THAT INFORMATION.  IT'S THE I IN PII, THE MIDDLE

13    I, THAT IDENTIFIES YOU AS THAT MIDDLE PERSON.

14            MR. MCGEE:  THAT'S CORRECT.

15    AND THIS HELPS GET INTO THE INTRUSION CLAIM BECAUSE WE

16    HAVE TO TALK ABOUT WHY IT'S HIGHLY OFFENSIVE TO A REASONABLE

17    PERSON.  OKAY.

18    I JUST WANTED TO FLAG, THIS IS TOO LATE, IT HAPPENED TO

19    LATE FOR US TO BRIEF IT, BUT A RECENT DEVELOPMENT IS VERY

20    RELEVANT HERE WHICH IS THAT GOOGLE'S LATEST ANDROID FIX IS TO

21    CAUSE A MANDATORY SCAN WITHIN EACH DEVICE TO DETECT MALWARE

22    THAT'S REQUIRED FROM PLAY.  THIS I REGARD AS AN ADMISSION THAT

23    THE PLAY MARKET IS IN FACT LOADED UP WITH MALWARE, OKAY.

24            IN OUR COMPLAINT WE ALLEGE PRETTY STRAIGHTFORWARDLY THAT

25    WE COULD HAVE MALICIOUS CODERS HERE, IT MAY BE TRUE AS GOOGLE

1    ASSUMES, THAT THESE ARE LEGITIMATE SOFTWARE COMPANIES WHO ARE

2    PUTTING THESE APPS UP THERE, MAY BE TRUE.  BUT IT'S EQUALLY

3    TRUE THAT THERE ARE PEOPLE WHO HAVE MALICIOUS INTENT.  AND THE

4    FLASHLIGHT EXAMPLE IS A GOOD EXAMPLE BECAUSE THAT WAS A

5    MALICIOUS PROGRAM THAT WAS AVAILABLE ON PLAY.

6         AND GOOGLE DOESN'T REALLY HAVE A WAY TO SCREEN THEM.

7    THEY CHARGE A 25 DOLLAR FEE IT'S A LOW BARRIER TO ENTRY.  THAT

8    CONSTITUTES A GRAVE SECURITY RISK BECAUSE YOUR INFORMATION IS

9    GOING TO PEOPLE WHO ARE ESSENTIALLY MALICIOUS.

10         THE COURT:  NONE OF THESE ALLEGATIONS ARE IN THE

11   OPERATIVE COMPLAINT.

12         MR. MCGEE:  YES, THEY ARE.

13      I'M SORRY, I'M SORRY, THE 25 DOLLAR FEE IS ABSOLUTELY IN

14   THE COMPLAINT.  THE RECENT FLASHLIGHT STUFF AND THE RECENT --

15         THE COURT:  I JUST WANT TO MAKE SURE I DIDN'T MISS

16   IT.  I DIDN'T SEE IT.

17         MR. MCGEE:  NO, NO, THIS IS SOMETHING I WANTED TO

18   FLAG JUST BECAUSE IT SHOWS THIS IS REAL A HIGHLY OFFENSIVE

19   PRACTICE.

20         THE COURT:  I UNDERSTAND THE POINT YOU ARE MAKING.

21         MR. MCGEE:  THANK YOU.

22      AND THE LAST CLAIM IS, AGAIN, AN INTRUSION UPON SECLUSION

23   CLAIM AND THAT'S ON BEHALF OF THE CLASS.  IT'S A LITTLE BIT

24   DIFFERENT.  YOU HAVE TO LOOK AT THE CHANGE DEFINITION.  WE ARE

25   TALKING ABOUT ANY USER OF ANY GOOGLE SERVICE OR PRODUCT THAT

1    CONTAINED ANY LIMITATION ON GOOGLE'S ABILITY TO COMBINE

2    INFORMATION ACROSS PLATFORMS, AND OF COURSE ANDROID IS BEING

3    DEALT WITH BY THE ANDROID DEVICE SWITCH CLASS, BUT THE OTHER

4    PRODUCTS ARE GMAIL, VOICE AND CORRELATE.  THESE ARE THREE

5    PRODUCTS THAT GOOGLE HAS SAID WE WILL NOT USE ANY OF YOUR

6    CONTENT FOR ANY PURPOSE BUT TO PROVIDE YOU WITH THE SERVICE.

7         AND WE ALLEGED THAT GOOGLE IS USING USER CONTENT WHICH

8    WOULD INCLUDE GMAIL COMMUNICATIONS AND CONTACTS LIST.  VOICE

9    ACTIVITY OR ACTIVITY ON GOOGLE CORRELATE WHICH IS BEING USED TO

10   COP PLATE AND CROSS POLLINATE THESE DIFFERENT PRODUCTS TO FILL

11   IN THE GAPS OF KNOWLEDGE THAT GOOGLE HAS ABOUT EACH INDIVIDUAL

12   USER.

13        AND WE ALLEGE THAT IS IN FACT A USE THAT IS DISTINCT FROM

14   ANY PURPOSE ASSOCIATED WITH PROVIDING THE SERVICE ITSELF.

15   SHARING THE INFORMATION WITH A DIFFERENT PROGRAM.

16        SO WHY IS THAT -- I SHOULD MENTION THIS IS NOT A BREACH

17   OF CONTRACT CLAIM, WE ARE NOT ASKING THE COURT TO ENGAGE IN

18   THAT ANALYSIS IS SAY WELL DOES THE GENERAL BLANKET

19   AUTHORIZATION SOMEHOW OUT WEIGH OR OVERRIDE THIS OTHER

20   STATEMENT, WE ARE SAYING IS THIS A REASONABLE EXPECTATION.

21        WE THINK THAT IT'S CLEAR THAT BECAUSE GOOGLE SAYS WE ARE

22   NOT GOING TO USE ANY OF YOUR CONTENT FOR ANY PURPOSE OTHER THAN

23   PROVIDING YOU WITH THE SERVICE, THAT'S WHAT GOOGLE WOULD HAVE

24   MEANT AND USERS WOULD BELIEVE THAT'S SOMETHING THEY CAN RELY

25   UPON.  SO THAT'S A REASONABLE EXPECTATION OF PRIVACY.

```
 1          AND IT'S OFFENSIVE BECAUSE WE HAVE SUPPORTED THE

 2     ALLEGATION THAT IT'S OFFENSIVE BECAUSE WE HAVE RESEARCH FROM

 3     CONSUMER STUDIES AND POLLS AND SURVEYS THAT INDICATE GOOGLE OR

 4     USERS OR CONSUMERS DO NOT WANT GOOGLE DOING PRECISELY WHAT THEY

 5     ARE DOING, AND THAT'S COMBINING THE INFORMATION IN WAYS THAT

 6     WERE NEVER INTENDED, AS A RESULT OF THE NEW POLICY.

 7          GOVERNMENTAL STUDIES OR GOVERNMENTAL PROCEEDINGS, I'M

 8     SORRY, AS WELL, YOU KNOW, WITH THE EUROPEAN UNION PROCEEDINGS

 9     AND ALL OF THAT IS RELEVANT TO SHOW THAT THE PUBLIC SECTOR ALSO

10     AGREES THAT THIS IS SOMETHING THAT SHOULD NOT BE DONE AND IS

11     HIGH OFFENSIVE AND REASONABLE CONSUMERS AGREE.

12          THE COURT:  ANY LAST POINTS, COUNSEL?

13          I THINK I HAVE YOUR ARGUMENT IN HAND.  ANY LAST POINTS YOU

14     WOULD LIKE TO MAKE?

15          MR. MCGEE:  YOUR HONOR, THERE'S A LOT OF POINTS TO

16     MAKE BUT I WILL JUST TRY TO MAKE ONE MORE.

17          GOOGLE SAID IT'S NOT IN THE STREAM OF COMMERCE.  I WANTED

18     TO DIRECT THE COURT TO PARAGRAPH 63 IN THE COMPLAINT WHERE WE

19     SAY, AND THIS IS SOMETHING THAT DIDN'T COME UP IN THE BRIEF

20     BECAUSE WE FELT IT WAS A LITTLE BIT SUPERFLUOUS.  WE FELT LIKE

21     THIS IS NOT SOMETHING THAT NEEDS TO BE BELABORED.  IT'S PRETTY

22     CLEAR GOOGLE IS A PROPER DEFENDANT HERE BECAUSE THEY ACTED IN

23     VIOLATION OF THE CLRA, AS WE ALLEGED, THE INJURY IS TRACEABLE

24     TO THEM.

25          BUT THE ADDITIONAL POINT IS THAT GOOGLE HAS A PRACTICE OF
```

1    REVIEWING ANDROID DEVICES BEFORE THEY HIT THE MARKET TO ENSURE

2    IT'S IN COMPLIANCE WITH ITS STANDARDS.  SO GOOGLE HAS AN

3    INTERNAL CODE IT USES TO EXAMINE DEVICES.  AND THAT'S IN

4    PARAGRAPH 63 OF THE COMPLAINT.  THAT PUTS GOOGLE SQUARELY IN

5    THE CHAIN OF COMMERCE AND IT'S SOMETHING GOOGLE IGNORES.

6            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

7            MR. MCGEE:  THANK YOU, YOUR HONOR.

8            THE COURT:  YOU ARE MOST WELCOME.

9        MR. PAGE.

10           MR. PAGE:  I WILL TRY TO BE BRIEF IN RESPONSE TO A

11   FEW OF THE POINTS THERE.

12       FIRST, PLAINTIFFS MISUNDERSTAND AND MISCONSTRUE THE NOTE

13   TO THE 2008 POLICY, IT BEING QUESTIONABLE WHETHER IT WAS STILL

14   IN EFFECT.

15       THE POINT THERE WAS THAT IF YOU HAD A PLAINTIFF WHO HAD

16   BOUGHT A DEVICE BACK WHEN THAT WAS IN PLACE, IT'S STILL

17   QUESTIONABLE AS TO WHETHER THAT POLICY WOULD BIND EVEN THEM ALL

18   RIGHT.  BUT THAT'S IRRELEVANT HERE BECAUSE THEY DON'T HAVE IT.

19       THAT WASN'T SAYING THE 2008 POLICY AFFECTS PEOPLE WHO

20   BOUGHT THINGS IN 2010.  THE POINT WE ARE TAKE MAKING THERE IS

21   IT'S DEBATABLE OF WHETHER SOMEONE WHO WOULD HAVE BEEN IN THAT

22   CLASS WOULD STILL HAVE THE BENEFIT OF THAT AGREEMENT.

23       MORE PROBLEMATICALLY IS THE CLAIM WE KEEP HEARING OVER

24   AND OVER AGAIN THAT THE 2008 AND 2009 POLICIES CONTAIN

25   SUBSTANTIALLY IDENTICAL PROVISIONS.

1    I'VE JUST READ WHILE WE WERE SITTING HERE WORD FOR WORD

2    THE ENTIRE 2009 AGREEMENT AGAIN.  IT CONTAINS NOT A SINGLE ONE

3    OF THE PROMISES THEY CLAIM IT HAS.

4    IN FACT, TO THE CONTRARY, OVER AND OVER AGAIN DISCLOSES

5    PRECISELY WHAT GOOGLE COLLECTS FROM ANDROID PHONES.

6    FIRST IT SAYS AS TO OTHER APPS, GO SEE OUR PRIVACY

7    POLICIES INCORPORATED BY REFERENCE.  IT THEN SAYS THINGS LIKE,

8    SOMETIMES WE RECORD YOUR PHONE NUMBER, WE RECORD YOUR PHONE

9    NUMBER WHEN YOU SEND IT TO US, ASK US TO REMEMBER IT OR MAKE A

10   CALL OR SEND A TEXT MESSAGE SMS TO OR FROM GOOGLE.  IF YOU ASK

11   US TO REMEMBER IT, WE WILL ASSOCIATE YOUR PHONE NUMBER WITH

12   GOOGLE ACCOUNT, OR IF YOU DO NOT HAVE A GOOGLE ACCOUNT WITH

13   SOME OTHER SIMILAR ACCOUNT ID.  WE OFTEN GENERATE THIS ACCOUNT

14   ID BASED ON YOUR DEVICE AND HARDWARE ID'S.  SO IF YOU CHANGE

15   YOUR DEVICE OR HARDWARE, WE WILL HAVE TO REASSOCIATE THIS NEW

16   DEVICE OR HARDWARE WITH YOUR ACCOUNT BEFORE WE CAN AUTHENTICATE

17   IT.  WE COLLECT SOME INFORMATION ON DEVICE LEVEL EVENTS SUCH AS

18   CRASHES AND ASSOCIATE THAT WITH YOUR GOOGLE ACCOUNT IN ORDER TO

19   PROVIDE CUSTOMER SERVICE.

20   MOST OF THE OTHER INFORMATION WE SELECT FROM THE MOBILE

21   SUCH AS YOUR DIVIDE HARDWARE ID'S, THE DEVICE TYPE, THE REQUEST

22   TYPE, YOUR CARRIER, YOUR CARRIER USER ID, THE CONTENT OF YOUR

23   ANY AND BASIC USAGE STATS ABOUT YOUR DEVICE AND USE OF GOOGLE'S

24   PRODUCTS AND SERVICES DO NOT BY ITSELF IDENTIFY YOU TO GOOGLE,

25   THOUGH IT MAY BE UNIQUE OR CONSISTENT OF OR CONTAIN INFORMATION

1    THAT YOU CONSIDER PERSONAL.

2         HOWEVER, IF YOU USE AN ANDROID POWERED DEVICE, GOOGLE

3    WILL ASSOCIATE YOUR DEVICE ID, WHICH IT EXPLAINED EARLIER WAS

4    BUILT UP OF THOSE OTHER ITEMS, WITH YOUR GOOGLE ACCOUNT IN

5    ORDER TO PROVIDE SERVICES SUCH AS SYNC FUNCTIONALITY FOR YOUR

6    GOOGLE E-MAIL AND CONTACTS.

7         IT CONTAINS NOWHERE ANY REPRESENTATION OF ANY SORT THAT

8    GOOGLE WILL NOT DO ANYTHING WITH ANY OF THAT INFORMATION.

9         SO IF THE QUESTION IS, CAN THEY AMEND THEIR COMPLAINT TO

10   ALLEGE THAT THE SAME PROMISES THEY SAY WERE IN THE 2008

11   AGREEMENT, AND AS AN ASIDE THEY WEREN'T ACTUALLY IN THAT ONE

12   EITHER, IT WILL BE FEW TILL.  THE DOCUMENT DOESN'T SAY WHAT

13   THEY SAY IT DOES.  IT CONTAINS NONE OF THE PROMISES THEY CLAIM

14   WERE MADE.

15        ON THE BATTERY TRANSMISSION ISSUE, THEY NOW STAND HERE

16   AND TELL YOU THAT WHEN YOU DOWNLOAD AN AP, THIS INFORMATION OF

17   YOUR NAME AND YOUR E-MAIL ADDRESS AND YOUR ZIP CODE IS

18   AUTOMATICALLY SENT FROM YOUR PHONE TO THE MERCHANT, THERE'S NO

19   BASIS FOR THAT, THERE'S NO FACTUAL ALLEGATION IN THE COMPLAINT

20   THAT SUPPORTS IT.

21        WHAT THE COMPLAINT SAYS IS THAT SOME PRESS REPORTS SAY

22   THAT THIS HAPPENS.  AND WHEN YOU GO AND LOOK AT THE SOME PRESS

23   REPORTS, THEY ARE CRYSTAL CLEAR THAT WHAT HAPPENS IS GOOGLE

24   PLAY MERCHANTS CAN ACCESS GOOGLE PLAY SERVERS AND GET CERTAIN

25   INFORMATION ABOUT PEOPLE WHO HAVE BOUGHT THEIR PRODUCTS.

1        MERCHANTS FAIRLY OFTEN WANT E-MAIL ADDRESS AND NEED THE

2   E-MAIL ADDRESS OF PEOPLE TO BUY THEIR PRODUCTS TO SEND THEM

3   UPDATES TO OFFER THEM DIFFERENT VERSIONS.

4        THE COURT:  YOUR POINT IS THERE'S NO ALLEGATION IN

5   THE COMPLAINT THAT SAYS IT'S COMING FROM THE DEVICE CAUSES

6   BATTERY DRAIN.

7        MR. PAGE:  THAT'S CORRECT.

8      THE CLOSEST THEY COME IS TO SAY, WELL, THE TRANSACTION SORT

9   OF IS INITIATED WHEN YOU DOWNLOAD THE AP IN THE SENSE THAT

10   THAT'S WHAT PUTS THIS IN MOTION.

11      BUT THE ALLEGED TRANSMISSION FROM THE FROM GOOGLE PLAY TO

12   THE THIRD PARTY AP DEVELOPER, THE ONLY THING THEY SAY IS, THERE

13   ARE PRESS REPORT THAT IS SAY THIS, AND YOU CAN'T JUST SORT OF

14   FUZZ THINGS UP ENOUGH AND LEAVE OUT THE REFERENCES TO THE PRESS

15   REPORTS TO LEAVE OUT THE FACT THAT THE PRESS REPORTS ARE IN

16   FACT THAT MERCHANTS ARE ACCESSING THEIR ACCOUNTS AT GOOGLE PLAY

17   TO FIND OUT CERTAIN LIMITED PIECES OF INFORMATION ABOUT THEIR

18   CUSTOMERS.

19        FINALLY, ALTHOUGH THEY KEEP REFERRING TO PARAGRAPH 135 AS

20   THE PROMISE IN THE PRIVACY POLICY THAT WE WON'T PROVIDE

21   INFORMATION TO THIRD PARTIES.

22        ONE, THEY DON'T IDENTIFY WHICH OF THE POLICIES THEY ARE

23   QUOTING WHICH AGAIN IS PROBLEMATIC.  BUT IF YOU GO BACK TO ANY

24   OF THEM, INCLUDING THE ONE THEY PUT IN AS EXHIBIT A FOR REQUEST

25   FOR JUDICIAL NOTICE, AND YOU READ FURTHER IN THE DOCUMENT,

1    FURTHER DOWN IN THE DOCUMENT IS A SECTION ABOUT WHAT

2    INFORMATION THEY WILL GIVE TO THIRD PARTIES SUCH AS MERCHANTS

3    AND PEOPLE WHO WE ASSOCIATE WITH.

4         IT'S IN THE RECORD.  IT'S THERE.  WE TELL THEM WHAT WE

5    DO.  WE HAVE DONE NOTHING TO BREACH IT.

6         THE COURT:  ALL RIGHT.

7       THANK YOU VERY MUCH, MR. PAGE.

8       YOU WOULD LIKE TO HAVE A FINAL WORD?

9         MR. MCGEE:  JUST VERY BRIEFLY, YOUR HONOR.

10        THE COURT:  GO AHEAD.

11        MR. MCGEE:  I JUST WANTED TO POINT OUT FOR THE RECORD

12   THAT THAT WAS NOT AN ACCURATE REVIEW OF THE LANGUAGE OF THE

13   2009 MOBILE POLICY.  I BELIEVE THAT THE COURT IS MORE THAN

14   CAPABLE OF LOOKING AT THE WORDS THAT ARE ON THE PAPER AND NOT

15   OMITTING THEM AND MAKE ITS OWN CONCLUSION WITH RESPECT TO

16   WHETHER, AS WE EXPLAINED IN OUR OPPOSITION BRIEF THE TERMS ARE

17   MATERIALLY IDENTICAL OR NOT.

18        BUT I THINK IT'S IMPORTANT TO BE CLEAR THAT THE TERMS ARE

19   DIFFERENT THAN WHAT MR. PAGE JUST READ, IN FACT THE DEVICE

20   EVENT REPORTS IN PARTICULAR WAS A WORD THAT HE OMITTED -- THE

21   STATEMENT IS IDENTICAL IN THE '08 AND '09 DOCUMENTS, OKAY.  AND

22   THAT IS THE GOOGLE WILL ASSOCIATE DEVICE LEVEL EVENTS

23   TEMPORARILY WITH YOUR ACCOUNT IN ORDER TO PROVIDE CUSTOMER

24   SERVICE.

25        THE IDEA IS IT'S NOT GOING TO USE THAT TO COMBINE

1     INFORMATION, IT'S NOT GOING TO IDENTIFY YOU IN ANY WAY,

2     ESSENTIALLY, PERMANENTLY.  IT'S NOT GOING TO BE PART OF YOUR

3     PERMANENT REPORT.  BUT IF YOU LOOK AT THE MARCH 1, 2012 POLICY

4     IT ACTUALLY SPECIFIES DEVICE LEVEL EVENT REPORTS WILL BE USED

5     IN PRECISELY THE OPPOSITE WAY.

6          I BELIEVE THAT I'VE ADDRESSED THE OTHER POINTS MADE AND I

7     DON'T THINK IT'S NECESSARY TO GO THROUGH AGAIN.

8          I THINK OUR OPPOSITION BRIEF AGAIN MAKES IT VERY CLEAR,

9     TACKLES EVERY POINT THAT GOOGLE RAISES HEAD ON, AND GOOGLE ONLY

10    PLAYS SLEIGHT-OF-HAND IN ITS REPLY.

11               THE COURT:  ALL RIGHT.

12         I APPRECIATE THE ARGUMENTS THIS MORNING.  I REALLY DID

13    BENEFIT GREATLY FROM THEM.

14         THE MATTER IS SUBMITTED.  YOU WILL GET AN ORDER FROM ME AS

15    QUICKLY AS I CAN GET THEM OUT.

16         (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 6/13/14