DURIE TANGRI LLP
MICHAEL H. PAGE (SBN 154913)
mpage@durietangri.com
JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
SONALI D. MAITRA (SBN 254896)
smaitra@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
GOOGLE INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION | Case No. 5:12-cv-01382-PSG |
| | **CONSOLIDATED CLASS ACTION** |
| | **DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT** |
| | Date:    February 10, 2015<br>Time:    10:00 a.m.<br>Ctrm:    5 - 4th Floor<br>Judge:   Honorable Paul Singh Grewal |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND FACTUAL SUMMARY ............................................................. 1

II. ARGUMENT ......................................................................................................................... 7

    A.  The Motion is Untimely, And Thus the Court Should Apply Rule 16's Standard for Leave to Amend ....................................................................................... 7

        1.  Plaintiffs apply the wrong standard for timeliness ................................... 7

        2.  Plaintiffs cannot satisfy Rule 16 because they have known they needed to amend for nearly two years .................................................................... 10

    B.  Plaintiffs Also Cannot Satisfy Rule 15's Standard for Leave to Amend ........................ 12

        1.  Google will be prejudiced by amendment at this late date .................................... 12

        2.  The proposed amendment would be futile ............................................................. 13

            a.  Plaintiffs apply the wrong standard for futility ........................................ 13

            b.  The new allegations on which the proposed complaint rests are uncontrovertibly false ................................................................................. 14

III. CONCLUSION ................................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
*Acosta-Mestre v. Hilton Int'l of P.R.*,
    156 F.3d 49 (1st Cir. 1998)...............................................................................................9

5

6
*Bricker v. Crane*,
    468 F.2d 1228 (1st Cir. 1972),
    *cert. denied*, 410 U.S. 930, 93 S. Ct. 1368, 35 L. Ed. 2d 592 (1973)................................13

7

8
*Bruton v. Gerber Prods. Co.*,
    No. 12-cv-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..................................5

9
*Financial Holding Corp. v. Garnac Grain Co.*,
    127 F.R.D. 165 (W.D. Mo. 1989)........................................................................................9

10

11
*Foman v. Davis*,
    371 U.S. 178 (1962).............................................................................................................13

12
*Forstmann v. Culp*,
    114 F.R.D. 83 (M.D.N.C. 1987) .....................................................................................9, 10

13

14
*Gabrielson v. Montgomery Ward & Co.*,
    785 F.2d 762 (9th Cir. 1986) .........................................................................................12, 13

15
*Gestetner Corp. v. Case Equip. Co.*,
    108 F.R.D. 138 (D. Me. 1985).............................................................................................12

16

17
*Goodman v. HTC America, Inc.*,
    No. C11-1793MJP, 2012 WL 2412070 (W.D. Wash. June 26, 2012) .................................2

18
*Hernandez v. Path, Inc.*,
    No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012).............................2

19

20
*Human Resource Development Press, Inc. v. Ikon Office Solutions, Inc.*,
    246 F.R.D. 82 (D. Mass. 2007)........................................................................................8, 9

21
*In re Google Android Consumer Privacy Litig.*,
    No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ............................2

22

23
*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    988 F. Supp. 2d 434 (D. Del. Oct. 9, 2013) ......................................................................14

24
*In re Google, Inc. Privacy Policy Litig.*,
    No. 12-cv-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)................................14

25

26
*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................................2

27
*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010)...............................................................................5

28

*Intel Corporation v. Bevintel, LLC*,
    No. C 13-0232 CW, 2013 WL 4111810 (N.D. Cal. Aug. 12, 2013) .................................................7, 8

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ...........................................................................................................9, 10, 12

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir.2012) ........................................................................................................................5

*LaCourt v. Specific Media, Inc.*,
    No. 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............................................................14

*Loehr v. Ventura Cnty. Cmty. Coll. Dist.*,
    743 F.2d 1310 (9th Cir. 1984) ..................................................................................................................12

*Millenium Partners, L.P. v. Colmar Storage, LLC*,
    494 F.3d 1293 (11th Cir. 2007) ..................................................................................................................9

*Miller v. Rykof-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ....................................................................................................................13

*Namvar v. Select Portfolio Servicing, Inc.*,
    No. 3:14-CV-0600-GPC-BGS, 2014 WL 4955707 (S.D. Cal. Oct. 1, 2014).................................13

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)..........................................................................................................................9

*S&W Enterprises, L.L.C. v. South Trust Bank of Ala., NA*,
    315 F.3d 533 (5th Cir. 2003) ....................................................................................................................10

*Sidebotham v. Robison*,
    216 F.2d 816 (9th Cir. 1954) ......................................................................................................................5

*Valerio v. Boise Cascade Corporation*,
    80 F.R.D. 626 (N.D. Cal. 1978),
    *aff'd*, 645 F.2d 699 (9th Cir.) (*per curiam*),
    *cert. denied*, 454 U.S. 1126, 102 S. Ct. 976, 71 L. Ed. 2d 113 (1981)................................................13

**Other Authorities**

6A Charles Alan Wright, et al., Federal Practice & Procedure § 1488 (2003)...........................................9

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1

Fed. R. Civ. P. 15 ..........................................................................................................8, 9, 10, 12

Fed. R. Civ. P. 15(a) ..............................................................................................................8, 9, 10

Fed. R. Civ. P. 16 ........................................................................................................7, 9, 10, 12

Fed. R. Civ. P. 16(a) ........................................................................................................................9

1

Fed. R. Civ. P. 16(b) ..................................................................................................................9, 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION AND FACTUAL SUMMARY

Plaintiffs' motion to amend fails on all possible grounds:  it is filed too late in violation of this Court's scheduling order, it applies the wrong standards for both timeliness and futility, and it would severely prejudice Google by forcing us to—yet again—work up a new case based on new allegations, this time after the discovery cutoff has come and gone.  Even were this Court to rule on this motion from the bench at the February 10 hearing, the February 27 discovery cutoff—three years into this endlessly-morphing case—would preclude conducting any fact discovery into either Plaintiffs' theory *du jour* or the newly-added plaintiff.

As this Court is aware, Plaintiffs' most recent and current iteration of their complaint (Consolidated Second Amended Class Action Complaint, or "CSAC") hangs by a single jurisdictional thread.  The sole basis on which that pleading survived Google's motion to dismiss on Article III grounds last summer was Plaintiffs' repeated allegation that Google was and is "secretly disclosing to third-party application developers certain sensitive personal information of users that [sic] download applications through Google Play, without such users' authorization or consent."  CSAC ¶ 18.  Crucially, Plaintiffs also claimed that these alleged disclosures are transmitted from their mobile devices to those third parties every time they download a free or paid app, and thus Plaintiffs are "made to carry the burden of involuntarily transmitting this additional data to third parties, in the form of depleted device battery power and extra bandwidth consumed by the device.  As courts have recognized, device battery power and bandwidth are not free but must be paid for by individual users."  *Id.* ¶ 19.  These allegations are repeated *ad nauseum* throughout the CSAC.[1]

Plaintiffs' allegation of depleted battery life is the *only* allegation of "injury in fact"—an essential element for federal adjudication of either of Plaintiffs' two remaining state law claims—and the *sole* basis on which this Court found it had Article III jurisdiction, finding that "whatever their ultimate merits," for Rule 12(b)(6) purposes the allegations of battery depletion as a result of repeated, systemic transmissions were sufficient to confer jurisdiction.  Order at 14, ECF No. 85.

---

[1] *See*, *e.g.*, CSAC ¶¶ 18, 19, 20, 39(n), 67, 68, 128, 136, 137, 141, 142, 143, 147, 148, 168, 169, 170, 171, 172, 173, 174, 175, 206, 207, 276, 278, 279, and 284.

DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:12-CV-01382-PSG

Moreover, this Court had previously recognized that, even taking the allegations of the Complaint as true, the battery life claim was a close call.  In its December 3, 2013 Order, this Court engaged in a detailed analysis of the existing case law on battery life claims, noting that some cases found isolated instances of battery use too *de minimis* to confer Article III standing, while others found repeated, "systemic" use sufficient.  Based on Plaintiffs' claims such as "Google causes this disclosure to occur automatically . . . **each and every time [Plaintiffs] download and/or purchase an Android application** through Google Play" (CSAC ¶ 18, emphasis added) and "because most Android users – including all Plaintiffs – download and/or purchase multiple apps, these unlawful transmissions and **the consumption of finite resources, like bandwidth and battery power, occur repeatedly**" (*Id.* ¶ 19, emphasis added), this Court distinguished the *de minimis* cases and held:

> Plaintiffs' allegations here are closer to *Goodman*, *iPhone I* and *Android* than *Hernandez*.  Like *Hernandez*, Plaintiffs' alleged unauthorized battery consumption only happened infrequently, when a plaintiff first downloaded an app.  But in *Hernandez* the allegedly unauthorized upload only happened once, when a plaintiff downloaded the Path app.  **Here, it happens each time a user downloads any app.  The plaintiff who downloaded the most apps, according to the amended complaint, did so at least 27 times.**  In addition, like the plaintiffs in *Goodman* and *Android*, Plaintiffs here specifically allege a greater discharge of battery power as a result of unauthorized conduct and as in *iPhone I* **the discharge is systemic rather than episodic.  This is sufficient to establish more than a *de minimis* injury.**[2]

Order Granting Mot. Dismiss at 13, Dec. 3, 2013, ECF No. 67 (emphasis added).

That Order, however, relied (as it was bound to in a Rule 12 context) on allegations of battery use that were flatly and knowingly false.  As set forth in the accompanying declaration of Ficus Kirkpatrick ("Kirkpatrick Decl."), no information is *ever* transmitted from a user's mobile device to any third party in the process of downloading an App.  In the case of free Apps, the developer never receives information about the individual user from anyone.[3]  Kirkpatrick Decl. ¶¶ 4–5.  In the case of *paid* Apps (and note that only two current Plaintiffs claim to have ever purchased an App), the merchant from whom the user

---

[2] *Goodman v. HTC America, Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *5 (W.D. Wash. June 26, 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054–56 (N.D. Cal. 2012); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236 at *2, 4 (N.D. Cal. Mar. 26, 2013); *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *2 (N.D. Cal. Oct. 19, 2012).

[3] Unless, of course, the user herself subsequently chooses to give that information directly to the App Developer, such as in the process of registering to use or using that particular App.

purchases the App could if it chooses look up certain basic information about its customer:  at the time the SCAC was filed, for example, the user's username, name (which may or may not be real), country, and zip/postal code.  Currently, the "personal information" available to merchants consists only of zip code, state, and country.  But more importantly, *at no time did that information come from the user's mobile device.*  Instead, it is from the user's Google account information, previously provided by the user to Google in the process of creating that account, and stored on Google's servers.[4]  *Id.* ¶¶ 6–7.  When a merchant looks up information concerning its customer (in order to provide service or updates, or to calculate taxes, for example) it does so by logging into its Google Merchant account and querying the data on Google's servers.  The process never involves the user's mobile device at all, *id.*, and *a fortiori* cannot possibly cause even *de minimis* depletion of battery life.

Plaintiffs' allegations to the contrary were made up out of whole cloth, and Plaintiffs have known this for close to two years.  As early as May 14, 2013, Google discussed and explained the actual operation of Google Wallet, the Australian blog post from which Plaintiffs lifted their claim, and Plaintiffs' misunderstanding of that post, in detail in our motion to dismiss the First Amended Complaint.  ECF No. 53 at 3–4.  We repeated that discussion before the Court at oral argument.  By that time at least, Plaintiffs were at a minimum on notice that there were problems with their allegations.  Yet despite that notice, they neither adduced any evidence in support of that claim nor sought to correct their pleading, instead repeating the same false allegations, which provide the only tentpole for this Court's Article III jurisdiction, in their January 16, 2014 CSAC.

Over the past year, counsel met and conferred repeatedly, and Google repeatedly explained that Plaintiffs' allegations are just wrong.  We explained the actual workings of the system in detail, both orally and in writing, including via two sworn declarations.  We invited Plaintiffs to present any evidence

---

[4] The information contained in a user's Google Wallet account records, and the information available to merchants from those records, varies based on many factors, and has also varied over time.  For example, a user does not have to provide a street address in order to open a Google Wallet account, but may have to provide a billing address if she chooses to use a credit card to pay for purchases.  Similarly, Google Wallet's precursor at one time could be used to purchase physical goods as well as Apps:  in such cases, if the user's records did not already include a shipping address, one would have to be provided.  Wallet is no longer used for physical sales, so shipping addresses are no longer included.  On the merchant side, in the past sellers of physical goods could look up shipping addresses, while sellers of Apps could not.  This summary is by no means exhaustive, and is offered solely as background.

they have that supports their allegations of secret transmissions from their devices to any third party, and they responded with nothing.  And yet Plaintiffs continued to stand on their complaint.  Finally, on September 5, 2014, we wrote to Plaintiffs' counsel, again detailing the defects in their complaint on a paragraph-by-paragraph basis and demanding they withdraw or amend it.  Declaration of Michael H. Page ("Page Decl."), Exh. A.  In response, on September 9, 2014 Plaintiffs' counsel stated that, if Google would provide confirmation that user information regarding free (but not paid) Apps is not transmitted to merchants, they would "consider withdrawing the claims."  *Id.* Exh. B.  Further discussions ensued, in which Plaintiffs' counsel offered to dismiss their allegations regarding users who downloaded free Apps, if Google would provide a sworn declaration supporting its position.  *Id.* ¶ 7.  On October 1, 2014, we provided that declaration.  *Id.* Exh. C.  Rather than dismiss those allegations, however, Plaintiffs responded 9 days later that they were "still considering whether to amend their Complaint."  *Id.* Exh. D.  When Plaintiffs continued to stand on their allegations, we again wrote to them, on October 17, 2014, explaining yet again that the defects in their complaint applied equally to paid Apps, pointing out that we had provided voluntary technical discovery showing the falsity of their claims, and providing a more detailed declaration that discussed the process for downloading both free and paid Apps.  *Id.* Exh. E.

After another month, Plaintiffs wrote to state that they were under no obligation to amend their complaint, but that they would be willing to do so only as regards to free Apps, and only if Google would agree to forego any Rule 12 attack on previously-pled claims in that amended pleading—a proposal that Google rejected out of hand, because any amendment by the Plaintiffs that removed the false allegation of transmissions from users' devices would also remove the sole Article III basis for jurisdiction.  *Id.* Exhs. F, G.

Plaintiffs have no legal basis for the proposition that they can amend their complaint to remove multiple knowingly false allegations of fact, and at the same time insulate this Court's prior rulings, which relied solely on those now-withdrawn allegations, from reexamination in the light of those changes.  To the contrary, it is established law that the filing of a new complaint "wipes the slate clean" and permits a renewed Rule 12 challenge to the entire complaint, including causes of action carried over from the prior complaint:

> "[A]n amended complaint supersedes the original complaint and renders it
> without legal effect," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th
> Cir.2012) (en banc), such that a defendant may challenge an amended
> complaint in its entirety, *see Sidebotham v. Robison*, 216 F.2d 816, 823 (9th
> Cir. 1954) ("[O]n filing a third amended complaint which carried over the
> causes of action of the second amended complaint, the appellees were free
> to challenge the entire new complaint."); *see also In re Sony Grand Wega
> KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.
> Supp. 2d 1077, 1098 (S.D. Cal. 2010) (holding that defendant was free to
> move for dismissal of entire amended complaint, including claim that had
> already withstood a previous motion to dismiss).

*Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *7 n.2 (N.D. Cal. Jan. 15, 2014).

Finally, nearly two years after Google first told Plaintiffs and this Court that the central allegations of Plaintiffs' amended pleadings were false, and six months after this Court stated that "[i]t is time for this case to move forward," Plaintiffs have moved for leave to amend yet again.[5]  But that motion fails for multiple reasons.  *First*, because this motion was not filed until the last day on which an amended complaint could be filed pursuant to this Court's scheduling order, it is too late:  in order to meet that deadline, Plaintiffs would have to have sought leave to file it at least 35 days earlier.  Plaintiffs suggest that a recent case from Judge Wilken constitutes authority to the contrary, but as set forth below, they are wrong.  *Second*, Plaintiffs can offer no excuse for their lack of diligence in attempting to amend.  They have been on notice of the falsity of their claims for nearly two years, and have persistently stuck by those claims without the slightest basis to do so.  By waiting beyond the eleventh hour, they now put Google and this Court to the Hobson's choice of either (a) proceeding without discovery on the new variant of their theory and their new Plaintiff, or (b) again tearing up the case schedule in a case that has already dragged on so long that trial is set nearly four years after filing.  Plaintiffs suggest that their persistent lack of diligence can be excused based entirely on the fact that a family emergency required the postponement of Mr. Kirkpatrick's deposition from December 19 to January 21.  But they omit to mention that—in a three year-old case—they never bothered to notice *any* depositions until the close of discovery loomed.  The deposition they refer to is the *first* deposition they have noticed in the entire case,

---

[5] It is worth noting that the allegations Plaintiffs now seek to expunge from their complaint were not in this case to begin with, but instead were themselves a belated addition, added to the First Amended Complaint based on a blog posting that appeared shortly before that amendment was filed.

and December 19, 2014 was the initial date Plaintiffs chose for that deposition:  six days before Christmas, a mere two holiday weeks before the deadline to amend, and only a month before the close of discovery.  Had Mr. Kirkpatrick's deposition proceeded as initially noticed, it would have been taken too late to bear on a timely motion for leave to amend.  Plaintiffs have been anything but diligent.

And *third* and most fundamentally, the proposed amendment is demonstrably futile.  Plaintiffs have finally abandoned their claim of battery life depletion "each and every time [Plaintiffs] download and/or purchase an Android application through Google Play."  CSAC ¶ 18.  But in doing so, Plaintiffs seek to replace that discredited invention with a new theory that is just as false.  Abandoning claims based on free Apps, Plaintiffs' Proposed Consolidated Third Amended Complaint ("PCTAC") now seeks to cobble together a new theory:  that every time an Android user purchases an App from Google Play, some sort of secret transmission from a user's device "triggers" an automatic transmission of  user data to the merchant from whom the App is purchased.  In particular, Plaintiffs allege that, every time a Google Play user purchases an App, a signal is transmitted from their Android device to "trigger the disclosure to third party developers of their personal information," (PCTAC ¶ 147, ECF No. 97-2), and that Google "causes this disclosure to occur automatically . . . each and every time they purchase an Android application through Google Play."  *Id.* ¶ 17.  As a result, Plaintiffs allege, "Android device users that purchase paid applications are made to carry the burden of involuntarily transmitting this additional data to third parties, in the form of depleted device battery power and extra bandwidth consumed by the device."  *Id.* ¶ 18.

This is categorically false.  As set forth in Mr. Kirkpatrick's declaration, there is no such trigger, and no transmission of personal information to *anyone* from either the user's device or Google in the process of purchasing an App from Google Play.  Kirkpatrick Decl. ¶¶ 8–9.  Merchants can log onto their Google accounts after the fact and see certain information about their customers (currently only the user's "coarse address"[6]), but any such query is initiated by the merchant, takes place between the merchant and Google's servers, and does not involve the user's device at all.  *Id.* ¶ 10.  *A fortiori*, that process does not, and cannot, have any retroactive impact on the user's battery or bandwidth.

---

[6] A "coarse address" is typically a zip code, state, and country, or the local equivalent.

To illustrate, imagine two users, who each purchase an App from Google Play. The process for each is identical, and in neither instance does that purchase process involve either a transmission to the merchant of any sort or a "trigger" signal causing Google to make any transmission to the merchant. It of course involves battery and bandwidth use, as each user is purchasing and downloading a piece of software.

Imagine, moreover, that a month later, the merchant in question logs onto its Google Merchant account and looks up the zip code of the first user, but not the second. Again, no communication with either user's device occurs, and no battery life or bandwidth is consumed. But under Plaintiffs' newest theory, the first user has retroactively been harmed by an act that had no contact with her device whatsoever, while the second user—whose device performed precisely the same functions and engaged in precisely the same communications—has not.

Once again, Plaintiffs attempt a purported claim based on imagined facts, and falsely allege depletion of battery life "repeatedly and systemically" without the slightest factual basis. But this time, this Court does not have to simply assume the truth of Plaintiffs' invention, and is not required to rely on that presumption to exercise jurisdiction. This time, the Court may assess the *facts* and conclude that Plaintiffs' proposed amendment, even if timely, would be futile.

## II.   ARGUMENT

### A.   The Motion is Untimely, And Thus the Court Should Apply Rule 16's Standard for Leave to Amend

#### 1.   Plaintiffs apply the wrong standard for timeliness

As a threshold matter, the Court can and should deny Plaintiffs' motion as untimely. In meet-and-confer discussions, Google took the position that this Court's September 12, 2014 scheduling order (ECF No. 92) meant precisely what it said: that "the deadline for joinder of any additional parties, or other amendments to the pleadings, is January 6, 2015," and thus that if Plaintiffs intended to amend they would have to seek leave to do so either at least 35 days earlier or on shortened time.

Plaintiffs disagreed, and in both correspondence and their briefing take the position that Judge Wilken's opinion in *Intel Corporation v. Bevintel, LLC*, No. C 13-0232 CW, 2013 WL 4111810, at *1 (N.D. Cal. Aug. 12, 2013), authorizes filing a motion for leave to amend "on [the] deadline set for

1    amending the pleadings."  Plaintiffs misread that case.  It is true that Judge Wilken allowed the filing of a

2    motion for leave to amend on the date in her case management order, but Plaintiffs either didn't look at

3    or ignored that order.  Unlike the order in *this* case, which set the deadline for *filing* an amended

4    complaint (for which leave must first be sought), the order in *Bevintel* set the "[d]eadline **to file motion**

5    **for leave to add additional parties or claims**" on July 11, 2013, the date that motion was in fact filed.

6    A copy of that case management order is attached to the Page Declaration as Exhibit H.

7            The difference is crucial for two reasons.  The *first* is practical:  an amended complaint *filed* by

8    January 6 would have given Google the opportunity to conduct at least brief discovery concerning the

9    new theory and new plaintiff before the fact discovery cutoff of February 27.  But a motion for leave to

10   amend filed the same day does not:  any discovery under the Court's current scheduling order must be

11   served no later than 30 days before the discovery cutoff, by January 28.  Because Plaintiffs have noticed

12   the hearing for this motion on February 10, Google will thus be precluded from conducting any discovery

13   based on the new theories and party in the proposed complaint.[7]

14           The *second* reason is legal.  Plaintiffs' motion repeatedly urges the lenient standard for

15   amendment set forth under Federal Rule of Civil Procedure 15.  But that standard only applies to an

16   amendment that would be timely under a Court's case management schedule, and would not require also

17   amending that schedule.  And even that lenient standard has its limits, as the court in *Human Resource*

18   *Development Press, Inc. v. Ikon Office Solutions, Inc. ("HRD")*, 246 F.R.D. 82 (D. Mass. 2007),

19   explained in rejecting a strikingly similar motion to amend brought within the time limits of the case

20   management order:

21              First, there is little question that a significant amount of time passed between the
                date HRD first amended its complaint (November 28, 2005)—let alone the date
22              of the original complaint (March 15, 2005)—and the date of HRD's latest
                motion to amend (July 10, 2007).  Although Rule 15(a) does not prescribe a
23              particular time limit for a motion to amend, it is well established that such a
                motion "should be made as soon as the necessity for altering the pleading
24              becomes apparent."  6A CHARLES ALAN WRIGHT, ET AL., FEDERAL

25   _____
     [7] In fact, Plaintiffs have refused even the most basic request for informal discovery concerning the
26   proposed new Plaintiff.  Because there are myriad Michael Goldbergs in the world, in order to both
     preserve evidence concerning the putative plaintiff and conduct any investigation into the facts of his
27   interactions with Google Play, Google needs and asked Plaintiffs for his username.  Plaintiffs refused,
     saying they would only provide that information if this motion is granted and he becomes a party.  Page
28   Decl. Exh. I.

PRACTICE & PROCEDURE § 1488 (2003).  *See Acosta-Mestre v. Hilton Int'l of P.R.*, 156 F.3d 49, 52 (1st Cir. 1998) (motion to amend denied when filed fifteen months after initial complaint and over a year after the first amendment); *Palmer v. Champion Mortg.*, 465 F.3d 24, 31 (1st Cir. 2006) (affirming denial of motion to amend that was filed over fifteen months after commencement of the action and more than nine months after initial amendment).  Perhaps more to the point, where "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay." *Acosta-Mestre*, 156 F.3d at 52.  Here, HRD offers virtually no explanation as to why it seeks amendments approximately twenty-eight months after the initial complaint and twenty months after the first amendment.  More particularly, HRD does not indicate why it could not seek to make the proposed changes much earlier in the litigation.

*HRD*, 246 F.R.D. at 86.

The *HRD* court goes on to explain that compliance with a case management deadline does not trump the obligation to avoid undue delay:  The Court acknowledged that "the court itself 'established' July 10, 2007, 'as the date for parties to file motions to amend the pleadings'" but held that "the establishment of a date by which a motion for leave to further amend the complaint . . . cannot be understood as approving the appropriateness, let alone the timeliness, of the motion." *Id.* at 86–87.  Even under Rule 15's lenient standard, Plaintiffs' motion fails.

But Plaintiffs urge the wrong standard:  amendments that are *not* timely or that require amendment of the court's Rule 16 case management schedule must satisfy the far stricter requirements of Rule 16(a).  As the Ninth Circuit explained in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir. 1992):

> Rule 15 does not provide the standards by which we consider Johnson's motion to amend to add Mammoth Mountain Ski Area, Inc. as a defendant. Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled.
>
> . . .
>
> Thus, Johnson's ability to amend his complaint was governed by Rule 16(b), not Rule 15(a).  *See Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (party seeking to amend pleading after date specified in scheduling order must first show "good cause" for amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that amendment was proper under Rule 15); *see also Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D. Mo. 1989) (same).

*See also Millenium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (since Colmar "filed its motion for leave to amend after the District Court's scheduling order deadline had passed . . . Colmar had to demonstrate proper cause under Rule 16(b) . . . ."); *S&W Enterprises, L.L.C. v.*

9

DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:12-CV-01382-PSG

1    *South Trust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003) ("Rule 16(b) governs amendment of

2    pleadings after a scheduling order deadline has expired.  Only upon the movant's demonstration of good

3    cause to modify the scheduling order will the more liberal standard of Rule 15(a) [be applied] . . . .").

4         Because Plaintiffs have delayed until after the deadline, and because Plaintiffs' delay will

5    inevitably require modification of the Court's scheduling order (as the fact discovery cutoff will

6    otherwise come and go without Google having the opportunity to conduct discovery, and the subsequent

7    deadlines will fall in turn like dominoes), Plaintiffs—not Google—bear the burden of establishing good

8    cause to grant this motion.  "A court's evaluation of good cause is not coextensive with an inquiry into

9    the propriety of the amendment under . . . Rule 15."  *Forstmann*, 114 F.R.D. at 85.  "Unlike Rule 15(a)'s

10   liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment

11   and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the

12   diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  Only if Plaintiffs satisfy their

13   burden of establishing good cause under Rule 16 does the Court need to proceed to apply Rule 15(a)'s

14   standard and assess prejudice and futility.  Plaintiffs, however, can satisfy neither Rule 16 nor Rule 15

15   here.

16   
17            **2.    Plaintiffs cannot satisfy Rule 16 because they have known they needed to amend for nearly two years**

18        Plaintiffs have been the antithesis of diligent.  As long ago as May 2013—**twenty months ago**—

19   Google explained the factual error of Plaintiffs' allegation of disclosure of personal information to

20   merchants, and the fallacy of their battery-use allegations:

21            Although entirely unrelated to their original claims, Plaintiffs have seized
             upon a brief flurry of news reports around the time they filed the FAC,
22            alleging that "American and international news media reported that . . .
             each time an Android user accessed Google Play and downloaded and/or
23            purchased an application" the user's name, email address, and/or physical
             address or geographical information was transmitted to the seller of the
24            app.

25   Def.'s Mot. Dismiss at 3–4, ECF No. 53 (citations omitted).  Google went on to explain that Plaintiffs

26   had simply misread the blog post in question, incorrectly alleging a transmission from the user's

27   device—not Google's servers—and basing their battery use claim on that misreading:

28            As noted above, Plaintiffs' allegations regarding Google Play are
             admittedly simply lifted from a flurry of press reports sparked by an

                                                    10

1                 Australian blogger:
                http://phetdreams.tumblr.com/post/42959902001/massive-google-play-
2                 privacy-issue.  Plaintiffs then proceed to misunderstand even that
                secondhand discussion, mistakenly describing the claim as one of
3                 transmissions from their phones, not from Google Play's own systems.
                But mere conclusory statements, particularly ones that are directly contrary
4                 to their claimed source, cannot suffice under Rule 12.

5 *Id.* at 9 n.7 (citations omitted).[8]

6       Undeterred, Plaintiffs not only stuck with their unsubstantiated claims, they expanded them,

7 repeating them more than a score of times in the CSAC.  Google again moved to dismiss, and this Court

8 granted the lion's share of that motion on July 21, 2014.  Realizing after that order that the *only*

9 remaining Article III "hook" precluding complete dismissal was the false allegation of transmissions of

10 personal information from users' devices, thus consuming battery life, and that this Court had been

11 constrained to so rule by Rule 12's presumption of the truth of those allegations, Google's counsel

12 contacted Plaintiffs' counsel within three days to schedule a meet-and-confer.  That conversation took

13 place on July 29, 2014.  We explained in detail that the allegations in Plaintiffs' CSAC were simply false,

14 and urged Plaintiffs to consider dismissing their complaint.  Page Decl. ¶ 4.

15       More than a month later, Plaintiffs had done nothing.  On September 5, 2014, Google wrote to

16 Plaintiffs, reiterating and laying out in detail, paragraph by paragraph, the false statements in the CSAC.

17 Page Decl. Exh. A.  The dialogue continued as described above, with Google providing both sworn

18 declarations and technical documents, and Plaintiffs first refusing to amend and then seeking an

19 agreement that Google would give up the right to challenge any amendment.  *Id.* Exhs. B–E.  It was not

20 until November 18 that Plaintiffs first requested a deposition, which they did not notice until December

21 5, and scheduled for December 19.  *Id.* Exh. F.  Finally, on December 8, Google advised Plaintiffs that it

22 would proceed to summary judgment on the allegations of the CSAC.  *Id.* Exh. G.

23       Plaintiffs thus have had 20 months in which to fix their complaint since they were first put on

24 notice of its falsity in May 2013.  And yet it was not until January 6, 2015, on the eve of the fact

25 discovery cutoff, that Plaintiffs moved to amend, and only when faced with an impending summary

26 judgment motion.  Plaintiff cannot lay 20 months of neglect at Google's feet, based solely on the

27

28 [8] A copy of that original blog post is attached to the Page Declaration as Exhibit J.

1  unfortunate need to reschedule a single deposition from six days before Christmas to shortly after New

2  Year's due to a family emergency.  Discovery opened in July 2012.  And yet Plaintiffs noticed their first

3  deposition to be taken two and a half years later, two months from the close of fact discovery.

4  **B.    Plaintiffs Also Cannot Satisfy Rule 15's Standard for Leave to Amend**

5  Even were the Court to find that Plaintiffs have carried their burden of showing good cause to

6  seek amendment under Rule 16, it should still deny leave to amend under Rule 15 because amendment at

7  this late date would be both prejudicial and futile.

8  Under Rule 15, "Several factors govern the propriety of a motion to amend: (1) undue delay, (2)

9  bad faith, (3) prejudice to the opponent, and (4) futility of amendment."  *Gabrielson v. Montgomery*

10  *Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986); *see also Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 743

11  F.2d 1310, 1319 (9th Cir. 1984).  Here, the proposed amendment suffers from the same failings as its

12  predecessor:  as discussed above, Plaintiffs' delay has been extreme.  Plaintiffs' motion fails the

13  prejudice and futility prongs of Rule 15 as well.

14  **1.    Google will be prejudiced by amendment at this late date**

15  Google has already been severely prejudiced by Plaintiffs' lack of diligence.  Shortly after Google

16  announced its intent to file a summary judgment motion, Plaintiffs filed this motion.  Thus Google's

17  preparation for that motion is either wasted or on hold, pending determination of which version of the

18  complaint (and which Plaintiffs) we must address.  As a result, a single-issue summary judgment motion

19  that could have been resolved before either side spent any time or money on expert reports and discovery

20  will instead not be heard until this motion, and perhaps a following Rule 12 motion, can be decided.  And

21  because Plaintiffs have waited until the eleventh (or twelfth) hour, the case schedule set by the Court will

22  have to be extended by some number of months, with the attendant cost of litigating it.  Plaintiffs, by

23  contrast, can point to no prejudice they have not brought upon themselves.  And it is Plaintiffs' own lack

24  of diligence that is the deciding factor here.  As the *Johnson* court held:  "Although the existence or

25  degree of prejudice to the party opposing the modification might supply additional reasons to deny a

26  motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson*,

27  975 F.2d at 609; *see also Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985).  "**If**

28  **that party was not diligent, the inquiry should end.**"  *Johnson*, 975 F.3d at 609 (emphasis added).

1

### 2.    The proposed amendment would be futile

2

Finally, and most fundamentally, amendment would be futile.

3

#### a.    Plaintiffs apply the wrong standard for futility

4

To begin with, Plaintiffs are simply wrong when they say that futility must be assessed on the

5

same record as a Rule 12 motion (i.e., that the Court must assume the truth of the allegations of the

6

proposed amended complaint, without reference to extrinsic evidence).  Not so.  In support of that

7

proposition, Plaintiffs cite *Namvar v. Select Portfolio Servicing, Inc.*, No. 3:14-CV-0600-GPC-BGS,

8

2014 WL 4955707, at *6 (S.D. Cal. Oct. 1, 2014).  In that case, the court stated that even taking all of the

9

allegations as true, amendment would be futile, but it certainly didn't say it was *required* to make that

10

assumption.  Rather, courts routinely rely on evidence beyond the pleadings in determining futility.  For

11

example, in *Miller v. Rykof-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), a case relied upon by

12

Plaintiffs, the Ninth Circuit noted that the District Court relied on factual allegations in the parties' briefs

13

in deciding to allow amendment, noting that "[q]uestions of fact" needed to be decided to determine

14

futility.[9]  Similarly, in *Gabrielson*, the Ninth Circuit upheld denial of leave to amend expressly because

15

"adding a cause of action . . . would be futile . . . because any such cause of action could be disposed of

16

by summary judgment."  *Gabrielson*, 785 F.2d at 766.  And in *Valerio v. Boise Cascade Corporation*, 80

17

F.R.D. 626, 658 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir.) (*per curiam*), *cert. denied*, 454 U.S.

18

1126, 102 S. Ct. 976, 71 L. Ed. 2d 113 (1981) (Peckham, J.), the court denied leave to amend as futile

19

"where, as here, the amended complaint is as vulnerable to motions to dismiss and for summary

20

judgment as the original."  *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bricker v. Crane*, 468

21

F.2d 1228, 1233 (1st Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S. Ct. 1368, 35 L. Ed. 2d 592 (1973).

22

In short, there is no authority for the proposition that, at this late date, this Court must ignore

23

extrinsic evidence and treat every word of the PCTAC as true.  To the contrary, controlling authority

24

allows the determination of futility to rest on extrinsic, incontrovertible evidence.  As set forth below, the

25

26

---

27

[9] Plaintiffs correctly cite *Miller* for the proposition that the standard on a motion to amend is the same as under Rule 12:  whether any set of facts could be proved that could constitute a cause of action.  But Plaintiffs confuse the *standard* to be applied with the *evidence* that may be relied on in applying that standard.  On a motion to amend, the Court is not required to assume the truth of the new allegations.

28

1    uncontradicted record establishes that the proposed amendment would be futile.

2             **b.      The new allegations on which the proposed complaint rests are**
3                       **uncontrovertibly false**

4             As set forth above, Plaintiffs' sole remaining basis for Article III jurisdiction is their repeated—

5    and entirely invented—claim that every time a user downloads an App from Google Play, that user's

6    device surreptitiously transmits personal information to third party developers.  In doing so, Plaintiffs

7    claim, Google causes pecuniary harm in the form of depleted battery life and reduced bandwidth.

8    Without that claim of systematic battery depletion, Plaintiffs' case ends, as it is established law that the

9    mere disclosure of information does not state a cause of action.  As this Court and others have found,

10   collection of personal information, without pecuniary harm flowing from that collection, is not

11   actionable.  *In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382-PSG, 2013 WL 6248499, at *5

12   (N.D. Cal. Dec. 3, 2013); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 988 F.

13   Supp. 2d 434, 442 (D. Del. Oct. 9, 2013) (holding that plaintiffs who alleged that Google had wrongfully

14   collected their personally identifiable information lacked Article III standing because "plaintiffs [had] not

15   sufficiently alleged that the ability to monetize their PII has been diminished or lost by virtue of Google's

16   previous collection of it"); *LaCourt v. Specific Media, Inc.*, No. 10-1256, 2011 WL 1661532, at *5 (C.D.

17   Cal. Apr. 28, 2011) (finding that plaintiffs did not "explain how they were 'deprived' of the economic

18   value of their personal information simply because their unspecified personal information was

19   purportedly collected by a third party" and, therefore, did not have standing).

20            Now Plaintiffs, seek—albeit belatedly—to pare back (or as they put it, "clarify") some of their

21   knowingly false claims, abandoning claims based on free Apps and seeking to keep only those based on

22   paid Apps.  However, as set forth in Mr. Kirkpatrick's declaration and above, the only difference

23   between the two is wholly irrelevant to Plaintiffs' claims:  while free App developers don't receive

24   information about their users at all as a result of the download, paid App developers can access limited

25   information.  But they don't get that information from the users' devices:  It comes directly from Google

26   servers, if the developers choose to access it.  *Nothing* is transmitted from a user's device to a third party

27   in the course of purchasing an App, and thus no battery life or bandwidth is consumed.

28

1    Plaintiffs struggle to avoid this fatal fact by inventing a new, baroque theory of "indirect"

2  transmission, under which they speculate that there is some secret "trigger" buried in the App purchase

3  process that—once received by Google—causes Google to "automatically" transmit personal information

4  to merchants.  But again, this is pure invention, without a shred of evidence to support it, and

5  uncontroverted sworn testimony to rebut it.  There is no secret transmission.  There is no trigger.  There

6  is nothing in the process of purchasing and downloading an App that differs in any way depending on

7  whether the merchant subsequently looks up customer information on Google's servers.  And there is

8  never any communication from a user's device to anyone in the course of buying or downloading a paid

9  App that has any causal nexus to a merchant's ability to see user information.

10    Plaintiffs have known this for months.  Google has repeatedly asked them, in serial meet-and-

11  confer sessions, to present any evidence that contradicts these facts, or that supports their allegations to

12  the contrary.  Page Decl. Exh. A at 2 ("We are also open to considering any evidence you have that

13  would contradict the information we have provided . . . ."); *id.* Exh. G ("Although we have already

14  discussed this issue repeatedly, if you would like to meet and confer further, please let me know.").  They

15  have failed to do so despite repeated opportunities, and again fail to do so in support of this motion to

16  amend.  On the uncontradicted record, Plaintiffs can demonstrate no impact on either battery life or

17  bandwidth connected to any of their remaining allegations, and thus no injury-in-fact that could confer

18  Article III standing.  Amendment would be futile.

19  **III.    CONCLUSION**

20    This case is now three years old, and in those three years Plaintiffs have tossed up, and then

21  abandoned, one theory after another.  What they have not done, however, is make any effort to develop a

22  factual record in support of any of those theories, instead standing pat on factual allegations they know to

23  be false, without a shred of evidence of any injury.

24    Now they ask this Court, at the close of discovery, to allow them to start over yet again, with a

25  new theory with no more factual basis than its predecessors.  Enough is enough.  Plaintiffs cannot bear

26  their burden to show "good cause" to tear up the Court's schedule and let them start over, and in any

27  event their belated proposed amendment should be denied as futile.  The motion should be denied.

28

DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:12-CV-01382-PSG

Dated:  January 20, 2015                    DURIE TANGRI LLP


                                By:  _____/s/ Michael H. Page_____
                                              MICHAEL H. PAGE

                                     Attorneys for Defendant
                                     GOOGLE INC.

DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:12-CV-01382-PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I certify that all counsel of record is being served on January 20, 2015 with a copy of this document via the Court's CM/ECF system.  .  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Michael H. Page*
MICHAEL H. PAGE

DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:12-CV-01382-PSG