1  DURIE TANGRI LLP
   MICHAEL H. PAGE (SBN 154913)
2  mpage@durietangri.com
   JOSHUA H. LERNER (SBN 220755)
3  jlerner@durietangri.com
   SONALI D. MAITRA (SBN 254896)
4  smaitra@durietangri.com
   217 Leidesdorff Street
5  San Francisco, CA  94111
   Telephone:    415-362-6666
6  Facsimile:     415-236-6300

7  Attorneys for Defendant
   GOOGLE INC.

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12                                    | Case No. 5:12-cv-01382-PSG

13                                    | **CONSOLIDATED CLASS ACTION**

14  IN RE GOOGLE, INC. PRIVACY POLICY | **DEFENDANT GOOGLE INC.'S NOTICE OF**
    LITIGATION                        | **MOTION AND MOTION TO DISMISS**
15                                    | **PLAINTIFFS' CONSOLIDATED THIRD**
                                      | **AMENDED CLASS ACTION COMPLAINT,**
16                                    | **OR IN THE ALTERNATIVE MOTION FOR**
                                      | **SUMMARY JUDGMENT**
17
                                      | Date:    April 21, 2015
18                                    | Time:    10:00 a.m.
                                      | Ctrm:    5 - 4th Floor
19                                    | Judge:   Honorable Paul Singh Grewal
20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 21, 2015 at 10:00 a.m., in Courtroom 5 of the above-entitled court, located at 280 South 1st Street, San Jose, CA 95113, Defendant Google Inc. ("Google" or "Defendant") by its attorneys Durie Tangri LLP, will move and hereby moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Consolidated Third Amended Class Action Complaint (the "CTAC") against Google with prejudice, or in the alternative for an order of summary judgment.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the Declarations of Michael H. Page and Ficus Kirkpatrick filed herewith, the CTAC and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND FACTUAL SUMMARY ...................................................................1

II.     ARGUMENT .........................................................................................................................6

      A.      No Article III Standing .............................................................................................6

            1.      The CTAC fails to allege battery or bandwidth use caused by any alleged wrongful act ................................................................................6

            2.      Risk of disclosure is not Article III injury-in-fact ......................................9

            3.      This Court has already dismissed Plaintiffs' intrusion upon seclusion claim, and thus Plaintiffs cannot claim injury based on that claim ..................................11

      B.      Plaintiffs Make No Allegation of Disclosure of Anything to Anyone .............................12

      C.      Summary Judgment ................................................................................................13

III.    CONCLUSION ...................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................14

*Birdsong v. Apple, Inc.*,
   590 F. 3d 955 (9th Cir. 2009) ...............................................................10

*California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466 (9th Cir. 1987), *cert. denied*,
   484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988)...................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................14

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .................................................................7

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)..............................................................................5

*Davis v. Chevron U.S.A., Inc.*,
   14 F.3d 1082 (5th Cir. 1994) ................................................................14

*Del Vecchio v. Amazon.com Inc.*,
   No. C11-366-RSL, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011).....11

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (Cal. Ct. App. 2011) ..........................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)...................................................................................7

*Goodman v. HTC America, Inc.*,
   No. C 11-1793, 2012 WL 2412070 (W.D. Wash. June 26, 2012)..........2

*Harper v. Wallingford*,
   877 F.2d 728 (9th Cir. 1989) ................................................................14

*Hernandez v. Hillsides, Inc.*,
   48 Cal. Rptr. 3d 780 (Cal. 2006),
   *rev'd on other grounds*, 47 Cal. 4th 272 (2009) ..................................11

*Hernandez v. Path, Inc.*,
   No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012)............2

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (Cal. 1994)..........................................................................11

*Hopper v. Frank*,
   16 F.3d 92 (5th Cir. 1994) ....................................................................14

*In re Google Android Consumer Privacy Litig.*,
   No. 11-md-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..........................................2, 10

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ...............................................10

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................................10

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................................2, 11

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ...................................................................................................14

*Low v. LinkedIn Corp.*,
   No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)...........................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...................................................................................................................6

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................................14

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)...................................................................................................................5

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) .................................................................................................14

*Opperman v. Path, Inc.*,
   No. 13-cv-00453-JST, 2014 WL 1973378 (N.D. Cal. May 14, 2014) ............................................10

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ....................................................................................................................7

*Warth v. Seldin*,
   422 U.S. 490 (1975)............................................................................................................12, 13

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ...................................................................................................7

*Yunker v. Pandora Media, Inc.*,
   No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...........................................10

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................ passim

Fed. R. Civ. P. 56 ...............................................................................................................13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND FACTUAL SUMMARY

After three years and multiple tries, Plaintiffs have finally finished pleading their way out of their case.  They have again amended their prior complaint to remove the only factual allegations that established Article III standing, because they have finally admitted to themselves, Google, and this Court that those allegations were false.  But in doing so, Plaintiffs have pled their way out of court, removing the only allegation of injury-in-fact (depletion of battery life and bandwidth) that salvaged the two remaining claims of their prior complaint.  Without those now-withdrawn inventions, Plaintiffs have no Article III standing, and this case must be dismissed.[1]

As this Court is aware, Plaintiffs' previous iteration of their complaint (the Consolidated Second Amended Class Action Complaint, or "CSAC") hung by a single thread.  The sole basis on which that pleading survived Google's motion to dismiss on Article III grounds was Plaintiffs' repeated allegation that Google was and is "secretly disclosing to third-party application developers certain sensitive personal information of users that [sic] download applications through Google Play, without such users' authorization or consent."  CSAC ¶ 18.  Crucially, Plaintiffs also claim that these alleged disclosures are transmitted *from their mobile devices* to those third parties every time they download a free or paid app, and thus Plaintiffs were "made to carry the burden of involuntarily transmitting this additional data to third parties, in the form of depleted device battery power and extra bandwidth consumed by the device.  As courts have recognized, device battery power and bandwidth are not free but must be paid for by individual users."  *Id.* ¶ 19.  These allegations were repeated *ad nauseum* throughout the CSAC.[2]

---

[1] Google believes that the amendments in the Third Amended Complaint are sufficient to dispose of this case on Rule 12 grounds.  However, Plaintiffs' claims are now carefully couched in obfuscatory terms, for example replacing "transmitted" with "disclosed" to obscure the fact that no transmission or delivery of any information to any third party is actually alleged.  In Plaintiffs' vernacular, the fact that data resided on Google's servers (where it was placed by Plaintiffs), and the possibility that a third-party merchant *could have* accessed that information, constitutes "disclosure," with no allegation, let alone evidence—after the close of discovery—that any disclosure actually occurred.  Accordingly, anticipating that argument, Google in the alternative moves for summary adjudication, which may require extrinsic evidence to rebut that speculation.

[2] *See*, *e.g.*, CSAC ¶¶ 18, 19, 20, 39(n), 67, 68, 128, 136, 137, 141, 142, 143, 147, 148, 168, 169, 170, 171, 172, 173, 174, 175, 206, 207, 276, 278, 279, and 284.

Plaintiffs' allegation of depleted battery life and bandwidth use was the *only* allegation of "injury in fact"—an essential element for federal adjudication of either of Plaintiffs' remaining state law claims. That allegation was thus the *sole* basis on which this Court found it had Article III jurisdiction, finding that "whatever their ultimate merits," for Rule 12(b)(6) purposes the allegations of battery depletion as a result of repeated, systemic transmissions were sufficient to confer jurisdiction.  Order Granting-in-Part Mot. to Dismiss at 14, July 21, 2014, ECF No. 85.[3]

Moreover, this Court had previously recognized that, even taking the allegations of the earlier Complaint as true, the battery life claim was a close call.  In its December 3, 2013 Order, this Court engaged in a detailed analysis of the existing caselaw on battery life claims, noting that some cases found isolated instances of battery use too *de minimis* to confer Article III standing, while others found repeated, "systemic" use sufficient.  Based on Plaintiffs' claims such as "Google causes this disclosure to occur automatically . . . **each and every time [Plaintiffs] download and/or purchase an Android application** through Google Play" (CSAC ¶ 18, emphasis added) and "because most Android users – including all Plaintiffs – download and/or purchase multiple apps, these unlawful transmissions and **the consumption of finite resources, like bandwidth and battery power, occur repeatedly**" (*Id.* ¶ 19, emphasis added), this Court distinguished the *de minimis* cases and held:

> Plaintiffs' allegations here are closer to *Goodman*, *iPhone I* and *Android* than *Hernandez*.  Like *Hernandez*, Plaintiffs' alleged unauthorized battery consumption only happened infrequently, when a plaintiff first downloaded an app.  But in *Hernandez* the allegedly unauthorized upload only happened once, when a plaintiff downloaded the Path app.  **Here, it happens each time a user downloads any app.  The plaintiff who downloaded the most apps, according to the amended complaint, did so at least 27 times.**  In addition, like the plaintiffs in *Goodman* and *Android*, Plaintiffs here specifically allege a greater discharge of battery power as a result of unauthorized conduct and as in *iPhone I* **the discharge is systemic rather than episodic.  This is sufficient to establish more than a *de minimis* injury.**[4]

---

[3] The Court's Order incorrectly stated that "Google concedes that its disclosure of user data causes the phones to send 'a few bytes of name, address, and zip code information.'"  *Id.* (citing Google's Reply). Not so:  Google disputed that claim, pointing out that there was "no competent allegation" that any such transmission takes place at all, but then noted that even taking the allegation as true, such battery use would be *de minimis*.  Def.'s Reply Supp. Mot. to Dismiss at 5, Apr. 11, 2014, ECF No. 78.

[4] *Goodman v. HTC America, Inc.*, No. C 11-1793, 2012 WL 2412070, at *5 (W.D. Wash. June 26, 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054–56 (N.D. Cal. 2012); *In re Google Android Consumer Privacy Litig.*, No. 11-md-02264 JSW, 2013 WL 1283236, at *2, 4 (N.D. Cal. Mar. 26, 2013); *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *2 (N.D. Cal. Oct. 19, 2012).

1   Order Granting Mot. to Dismiss at 13, Dec. 3, 2013, ECF No. 67 (emphasis added).

2        That Order, however, relied (as it had to in a Rule 12 context) on allegations of battery use that

3   were flatly and knowingly false.  As set forth in the accompanying declaration of Ficus Kirkpatrick

4   ("Kirkpatrick Decl."), no information is ever transmitted from a user's mobile device to any third party in

5   the process of downloading an App.  Ever.  In the case of free Apps, the developer never receives

6   information about the individual user from anyone.[5]  Kirkpatrick Decl. ¶¶ 4–5.  In the case of *paid* Apps,

7   the merchant from whom the user purchases the App could, if it chose, look up certain basic information

8   about its own customer:  for example the user's username, name (which may or may not be real),

9   country, and zip/postal code.  But that information *did not come from the user's mobile device*.  Instead,

10  it came from the user's Google Wallet account information, provided by the user to Google in the

11  process of creating that account, and stored on Google's servers.[6]  *Id.* ¶¶ 6–8.  If a merchant looks up

12  information concerning its customer (in order to provide service or updates, or to calculate taxes, for

13  example) it does so by logging into its Google Merchant account and querying the data on Google's

14  servers.  The process never involves the user's mobile device at all, *id.*, and *a fortiori* cannot possibly

15  cause even *de minimis* depletion of battery life.

16       Plaintiffs' allegations to the contrary were made up out of whole cloth.  Accordingly, at the

17  eleventh hour and after 20 months of urging from Google, Plaintiffs have amended their Complaint yet

18  again.  The Consolidated Third Amended Complaint ("CTAC") was described to the Court as merely

19  "trimming" and cleaning up the prior version.  It does some of that, but it does far more.  On the

20  trimming side, it deletes all allegations based on the downloading of free Apps, and thus eliminates five

21

22

23  [5] Unless, of course, the user herself subsequently chooses to give that information directly to the App
    Developer, such as in the process of registering to use that particular App.

24
    [6] The information contained in a user's Google Wallet account records, and the information available
25  merchants from those records, varies based on many factors, and has also varied over time.  For example,
    a user does not have to provide a street address in order to open a Google Wallet account, but may have
26  to provide a billing address if she chooses to use a credit card to pay for purchases.  Similarly, Google
    Wallet at one time could be used to purchase physical goods as well as Apps:  in such cases, if the user's
27  records did not already include a shipping address, one will have to be provided.  On the merchant side,
    sellers of physical goods could look up shipping addresses, while sellers of Apps could not.  This
28  summary is by no means exhaustive, and is offered solely as background.

named plaintiffs,[7] leaving Plaintiffs DeMars and McCullough.  It also adds a new plaintiff, Mr. Goldberg.

But the CTAC does more than simply "trim" the free App plaintiffs and their claims.  It advances an entirely new theory of the case:  one that utterly fails to state a claim of Article III injury-in-fact.  The prior iterations of this case alleged unauthorized[8] transmissions of personal information from the user's own device directly to third-party merchants, thus depleting the user's batteries and consuming his bandwidth.  That theory has been abandoned.  In its place, Plaintiffs new theory of harm is as follows:

When a user purchases and downloads an App from the Google Play store, that process (like any other use of a smartphone or tablet) consumes battery life and bandwidth.[9]  When that user makes that purchase, the fact of the purchase is of course recorded in the user's Google Wallet account records:  otherwise, Google could not charge the user for the App, distribute the appropriate proceeds to the seller, the payment processor, and the like, and authorize delivery of the App.  And then (and here is where the rabbit dives into the hat), once the transaction is complete, the merchant who sold the App could look up the records of its own sales and (for some periods) see its own customer's email address, name, and coarse address.[10]  In Plaintiffs' view, the fact that a merchant *could have* looked up that information after the fact, by connecting directly to Google servers without any involvement of the user's device, constitutes "disclosure" of information to a third party.

There are all sorts of problems with this theory on both a pleading and factual level, but for purposes of this motion we need only consider one:  Plaintiffs have eliminated *any* causal link between

---

[7] Plaintiffs Marti, Barrios, Anderson, and Villani.  Plaintiff Nisenbaum's claims were dismissed in this Court's prior Rule 12 Order.

[8] To be clear, Google disputes that allowing the seller of an App to know the email address or rough location of its own customer breaches any contractual provision or is unlawful or unfair in any other way.  But the Court need not reach that issue here.

[9] We note, however, that no Plaintiff alleges he had to *pay* for any additional bandwidth at any time: virtually all data plans are based on a flat monthly rate for a certain amount of data use, and no Plaintiff alleges he exceeded that use, much less as a result of any alleged transactional data associated with an App purchase.

[10] "Coarse address" refers to a regional address on the level of country, state, and zip code (or foreign equivalents), which is sufficient to provide necessary tax calculation information without disclosing street addresses.

1  the alleged breach of contract (and dependent UCL claim) and the alleged injury.  "To establish Article

2  III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the

3  challenged action; and redressable by a favorable ruling.'"  *Clapper v. Amnesty Int'l USA*, 133 S. Ct.

4  1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

5  Plaintiffs' theory *du jour* fails every prong of this rule.

6          To begin with, any alleged injury cannot be "fairly traceable" to the challenged conduct because

7  that causal link would be backwards in time:  if and when a merchant looks up records of past

8  transactions, those downloads have by definition already occurred.  Nothing in the act of a merchant

9  looking up any information could possibly reach back in time and change the amount of power it takes to

10  download the App.  Put another way, it takes the same amount of power to purchase and download an

11  App regardless of whether the merchant later looks up the records of that transaction.

12          *Second*, there is no allegation of any connection between the transmissions to and from the user's

13  device and the allegedly improper disclosure to merchants.  Plaintiffs' claim of breach is that Google for

14  a time allowed merchants to look up users' email addresses and names.  But regardless of the merits of

15  that claim, it has nothing to do with any communication to or from the user's device.  There is no

16  allegation that this information is sent (even indirectly) from the user's device in the process of buying

17  and downloading an App, because it is not:  the user's name, email address, and other information are

18  already part of the user's Google Wallet account records, and there is neither reason nor allegation that

19  the user's device would transmit that information anew in the process of purchasing an App.  There is

20  simply no nexus between the claimed injury and the claimed offense.

21          And finally, because there is no causal nexus, ceasing the allegedly offensive conduct could not

22  possibly affect the alleged injury.  Indeed, Google has already stopped displaying names and email

23  addresses to merchants,[11] and there is (and can be) no allegation that this change altered the alleged

24

_____

25  [11] Note that, although Google has discontinued the challenged practice, that decision is not without its
    own critics, and Google cannot agree (contractually or by injunction) to maintain the current status quo.
26  For example, many merchants and users are inconvenienced by the inability of a merchant to know its
    users' email addresses:  as a result, when a buyer contacts a merchant for a refund, the merchant cannot
27  simply check its records to see if the user in fact bought the App, and at what price.  Instead, the user
    must provide the unique 28-digit transaction code associated with the transaction.  Similarly, merchants
28  no longer have an easy way to alert all their customers to security issues, unless of course (as is common)

injury—the amount of battery life consumed in purchasing an App—one wit.  Accordingly, Plaintiffs fail the third prong of Article III standing as well.  If this Court were to order Google to cease allowing merchants to access *any* information about their customers at all, to shut down merchant access to Google Wallet and Google Play records entirely, and to just send them a check at the end of each month, the process of purchasing and downloading an App would be entirely unchanged, as would the alleged injury-in-fact.  As a result, Plaintiffs' alleged injury is not "redressable by a favorable ruling," and fails Article III scrutiny on that basis as well.

Accordingly, Google brings this motion to dismiss, or in the alternative for summary judgment, based on one simple fact:  no personal information is *ever* transmitted from any user's device to any third party in the process of purchasing or downloading Apps, either directly or otherwise.

Google firmly believes that its interactions with Google Play merchants, and the limited data those merchants were permitted to obtain concerning their own customers, are both entirely appropriate and expressly permitted by the Google Wallet Privacy Notice and Terms of Service.  But for purposes of this motion, the Court need not reach those questions.  As this Court previously ruled, the *only* hook on which this Court's Article III jurisdiction hung was the claim of harm in the form of depleted battery life and bandwidth.  That hook was an illusion:  it was based on pure falsehood, for which Plaintiffs could show no evidence or basis and which they have now abandoned.  Plaintiffs cannot meet their burden of establishing any cognizable injury-in-fact, and thus their claims fail as a matter of law.

## II.    ARGUMENT

### A.    No Article III Standing

#### 1.    The CTAC fails to allege battery or bandwidth use caused by any alleged wrongful act

As this Court held in dismissing the last three iterations of this case, a complaint must be dismissed for lack of subject matter jurisdiction where the plaintiff lacks Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

---

those users give them those same email addresses in the course of registration, thereby mooting Plaintiffs' objection entirely.

6

GOOGLE'S NOM & MOT. TO DISMISS PLS.' CONSOLIDATED THIRD AM. CLASS ACTION COMPL.,
OR IN THE ALTERNATIVE MOT. FOR SUMMARY JUDGMENT / CASE NO. 5:12-CV-01382-PSG

1   109–10 (1998); *White v. Lee*, 227 F.3d 1214, 1242–43 (9th Cir. 2000).  The plaintiff bears the burden of

2   establishing standing.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

3   To do so, a plaintiff "must show (1) it has suffered an 'injury in fact' that is (a) concrete and

4   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable

5   to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

6   injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

7   *(TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

8            The latest iteration of Plaintiffs' Complaint fails all three prongs of this test.  As set forth above,

9   Plaintiffs' prior complaints falsely alleged that the process of downloading Apps caused the repeated,

10  systemic transmission of their personal information (their email address and name) from their Android

11  devices to third party developers, that those imagined transmissions breached Google's Wallet privacy

12  policy, and that those transmissions depleted Plaintiffs' batteries, which they then had to pay to recharge.

13  That was the *only* alleged Article III injury that survived dismissal.

14           Those allegations have been withdrawn.  The new theory is as follows:  Each time a user

15  purchases an App from Google Play, there are transmissions back and forth between the user's device

16  and Google's servers.  Those transmissions may include the process of browsing the Play catalog to

17  select an App, sending a request to purchase an App, and downloading the App once purchased.  Notably

18  absent from Plaintiffs' CTAC, however, is any allegation that those transmissions contain *any* personal

19  information, because they do not.  CTAC ¶ 136; *see also* Kirkpatrick Decl. ¶ 10.  Neither is there any

20  allegation that the process includes any transmission of any information to or from third party

21  developers:  the App purchase process involves transmissions only to or from Google.  *Id.*  Of course,

22  transmitting *any* data to or from any mobile device uses battery power.[12]  But the CTAC has removed

23  any causal nexus between the alleged wrong and the alleged harm.

24

25

---

26  [12] And perhaps cellular bandwidth, if the download is done via cell service rather than over a WiFi
    network.  But no Plaintiff alleges either that any of his downloads was via cellular, or that he ever
27  exceeded the limits of whatever data plan he was on and thus had to pay for additional bandwidth, much
    less that any such overage is traceable to downloading Apps.
28

1    That is because the new theory is that, as a result of purchasing an App, the record of that

2    purchase is (of course) included in the user's Google Wallet records.  It must be:  in order to process a

3    Google Play sale, the Wallet system must know about it, calculate applicable taxes, charge the user's

4    credit card or other payment method, remit the developer's share of the price, and generally keep track of

5    the transaction (so that, among other reasons, the transaction can be unwound if either the payment

6    method fails or the user cancels the purchase).  But the CTAC makes no allegation that the purchase

7    process involves any transmission or disclosure of personal information even to Google:  it does not,

8    because the information at issue here (the user's name, email address, and coarse address) is already part

9    of the user's Wallet account profile, having been provided by the user in the process of opening the

10   Wallet account.  In other words, the battery consumption alleged has no connection even to Google's

11   acquisition of the user's information.

12   The final step of Plaintiffs' new theory is a masterpiece of semantic gymnastics.  Where they

13   once alleged an "automatic transmission" (from the user's phone to developers) they have now attempted

14   a "search and replace" exercise, replacing the word "transmission" with the word "disclosure."  But the

15   "disclosure" they allege is nothing of the sort.  Rather, it is nothing more than the *possibility* that a

16   developer could, if it chose, look up on Google's servers the record of a particular transaction (for

17   example, to respond to a service request or refund request).  For a period of time, that possibility included

18   access to the user's email address and name.  But there is no allegation, anywhere in the CTAC, that any

19   Plaintiffs' information was ever *actually* accessed by any developer, and the prior false allegation that

20   such information is automatically transmitted to developers has been withdrawn.[13]  Neither can Plaintiffs

21   claim, at this stage of the case, that only Google could know that:  discovery has closed, and Plaintiffs

22   never sought that information from either Google or third parties.  Instead, Plaintiffs simply redefine

23   "disclosure" as a synonym for "availability," and posit that the purchase of an App "triggers" that

24

---

25   [13]  As noted above, Plaintiffs have attempted to cleanse the CTAC of allegations of automatic

26   transmissions, replacing the phrases "transmission" and "automatic transmission" with "disclosure"
     throughout.  *Compare*, *e.g.* CSAC and CTAC at ¶¶ 136, 141, 144, 166, 168, & 172 (ECF No. 97-3,
     redlining the two versions).  That effort, however, was imperfect:  the CTAC contains vestiges of the

27   "automatic transmission" language (for example at ¶ 137).  We do not understand that allegation to be
     intended, but rather a scrivener's error:  should Plaintiffs stand on that claim in opposition, it is easily

28   disposed of on summary judgment, as it is flatly false.

"disclosure" in the trivial sense that, until the user makes a purchase, the record of that purchase does not exist, and thus that there was previously no purchase record for a developer to query if it chose.

As a result, Plaintiffs fail all three prongs of the Article III test. *First*, they can offer no evidence, and make no competent allegation, that they ever suffered any pecuniary injury at all. *Second*, to the extent they vaguely allege a general cost of battery life, that cost is in no sense "fairly traceable to the challenged action," as under Plaintiffs' new theory the downloading of a paid App occurs *before* the hypothesized "disclosure," and is the same regardless whether the developer later looks up the transaction or not. And *third*, any battery-use injury cannot possibly be "redressable by a favorable ruling." To begin with, Google no longer makes names and email addresses visible in response to Wallet or Play merchant queries, and there neither is nor could be any claim that the amount of battery power used in purchasing an App changed one iota as a result. More to the point, if tomorrow this Court ordered Google to cease making *any* transaction data whatsoever available to the developers from whom users purchase Apps, it might cause havoc, but it would not change the battery and bandwidth use of the purchase process at all.

On all three prongs, therefore, Plaintiffs' sole claim of Article III injury-in-fact fails.

### 2.      Risk of disclosure is not Article III injury-in-fact

Perhaps recognizing the impending death of their battery life argument, Plaintiffs appear to be attempting to repurpose two other allegations of harm, originally tied to now-dismissed claims, as alternate theories of injury-in-fact: the alleged risk of disclosure of personal information, and damages based on alleged invasion of privacy. Both theories fail.

The CTAC, at ¶ 172, alleges that the "disclosure" of Plaintiffs' email addresses and names causes them "to become subjected to a heightened, unreasonable risk of security breaches, including identity theft." But the CTAC contains no allegation *either* that any developer has ever accessed any Plaintiff's information at all, or that—having done so—any security breach or identity theft ensued.

It is established law, in this Circuit and elsewhere, that the actual disclosure or use of personal information, much less the risk of such disclosure, fails to meet Article III standards. As this Court held previously, an allegation of misuse of one's personal information, without more, cannot satisfy Article III:

> [I]njury-in-fact in this context requires more than an allegation that a defendant profited from a plaintiff's personal identification information. Rather, a plaintiff must allege how the defendant's use of the information deprived the plaintiff of the information's economic value. Put another way, a plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own.

*In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013). As this Court has already held, "nothing in the precedent of the Ninth Circuit or other appellate courts confers standing on a party that has brought statutory or common law claims based on nothing more than the unauthorized disclosure of personal information . . . ." *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2012 WL 6738343, at *5 (N.D. Cal. Dec. 28, 2012). Here, there is not even an allegation that *anyone* either improperly received any information or profited from any alleged disclosure, let alone that Plaintiffs suffered any loss. This Court is hardly alone in so holding. In *In re Google Android Consumer Privacy Litig.*, the court found no Article III standing, notwithstanding allegations of improper access to and use of personal information, where plaintiffs "do not allege they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed from entering into a value for value transaction relating to their PII, as a result of the Google Defendants' conduct." 2013 WL 1283236, at *4. And in *LinkedIn*, the court found no Article III standing despite allegations of systematic dissemination of personal browsing histories to third parties. *Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011). The *LinkedIn* court also rejected allegations of the risk of *future* disclosures, such as Plaintiffs suggest here, as "insufficient to establish an injury-in-fact that is concrete and particularized, as well as actual and imminent." *Id.* (citing *Birdsong v. Apple, Inc.*, 590 F. 3d 955, 960–61 (9th Cir. 2009)) (finding lack of standing because of the "conjectural and hypothetical nature" of the alleged injury).

The *Opperman* court reached the same result with regard to allegations of wholesale copying of users' address books, holding that "copying [electronically stored private information] without any meaningful economic injury to consumers is insufficient to establish standing . . . ." *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378, at *23 n.22 (N.D. Cal. May 14, 2014); *see also Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at *4–5 (N.D. Cal. Mar. 26, 2013) (no Article III standing absent economic harm); *Del Vecchio v. Amazon.com Inc.*, No. C11-366-RSL, 2011

WL 6325910, at *3 (W.D. Wash. Dec. 1, 2011) ("While it may be theoretically possible that Plaintiffs'

information could lose value as a result of its collection and use by Defendant, Plaintiffs do not plead any

facts from which the Court can reasonably infer that such devaluation occurred in this case.").

In short, even claims of *actual* misappropriation of personal information by third parties, absent

an allegation of financial loss flowing from that disclosure, cannot confer Article III standing.  Plaintiffs'

triply-speculative theory that a developer *might* have accessed their email addresses, and then *might* have

disclosed that information to others, who then *might* have engaged in identity theft, falls much farther

short.

### 3. This Court has already dismissed Plaintiffs' intrusion upon seclusion claim, and thus Plaintiffs cannot claim injury based on that claim

Finally, Plaintiffs may be attempting to revive their twice-dismissed invasion of privacy claim.  It

is unclear whether they do so purely in order to preserve that claim for appeal, or whether they seek to

plead tort damages for invasion of privacy as an element of damage in their contract claim, as they have

edited the claim to conform to their new theory and added a new Plaintiff to it.  CTAC ¶¶ 173–75.

Regardless, this Court has already twice dismissed that claim, noting that "This district 'set[s] a high bar'

for the requisite 'intrusion [that is] highly offensive to a reasonable person.'"  Order Granting-in-Part

Mot. to Dismiss at 26, July 21, 2014, ECF No. 85 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d

at 1054).

This Court was correct to dismiss this claim the last two times, and should do so again.  Intrusion

upon seclusion, just like any other invasion of privacy tort, requires conduct that would be "highly

offensive to a reasonable person."  *Hernandez v. Hillsides, Inc.*, 48 Cal. Rptr. 3d 780, 786 (Cal. 2006),

*rev'd on other grounds*, 47 Cal. 4th 272 (2009); *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th

1, 36–37 (Cal. 1994) (invasion of privacy rights must be "sufficiently serious in their nature, scope, and

actual or potential impact to constitute an egregious breach of the social norms underlying the privacy

right.").

Plaintiffs have pled no such conduct, and cannot:  their claims are based on the allegedly

improper sharing of basic address information that each of them freely shared with Google in the first

place (putting aside the fact that they do not actually plead that sharing ever occurred at all, only that it

1   might have).  As explained by the California Court of Appeal, information collected from consumers for

2   purposes of delivering advertising, even "without [consumers'] knowledge or permission," "is not an

3   egregious breach of social norms, but routine commercial behavior."  *Folgelstrom v. Lamps Plus, Inc.*,

4   195 Cal. App. 4th 986, 992 (Cal. Ct. App. 2011).  Knowledge of such basic information as one's email

5   address or zip code can hardly be described as an intrusion "highly offensive to the reasonable person."

6   It is simply the modern analogue to the information we used to put on the *outside* of every letter, and

7   which was printed in the phone books given away to every home.  Indeed, it is less invasive, as the

8   former allowed anyone to locate one's home.  Simply put, it is not information of such a personal nature

9   that its disclosure would shock the conscience.

10          **B.      Plaintiffs Make No Allegation of Disclosure of Anything to Anyone**

11          Separate and apart from the CTAC's fatal Article III claims, the CTAC fails Rule 12 review for a

12   separate and simple reason:  despite Plaintiffs' careful obfuscation, the CTAC does not actually allege

13   that any information concerning any of the three remaining Plaintiffs has ever been disclosed to any third

14   party at all.  Although Plaintiffs use the word "disclosure" over and over, in the words of Andre the

15   Giant: "I do not think that word means what you think it means."  What Plaintiffs describe as

16   "disclosure" is nothing of the sort:  it is merely the theoretical *possibility* of disclosure.  As Plaintiffs are

17   well aware,[14] records of their purchases are included in their Wallet account records.  As they are also

18   aware, that information is never "automatically transmitted" to developers, or disclosed to them at all

19   unless a developer chooses to search those records for some reason.

20          What is missing from the CTAC, however, is any claim that any developer has in fact *ever* done

21   so as regards any Plaintiff (and we again note that the original two of the three Plaintiffs only purchased

22   one and two Apps, respectively).  It is hornbook law that no matter what the cause of action, the plaintiff

23   "must allege specific, concrete facts demonstrating that the challenged practices harm him[.]"  *Warth v.*

24   *Seldin*, 422 U.S. 490, 508 (1975).  In a putative class action, the named plaintiffs "must allege and show

25

---

26   [14] *See*, *e.g.*, ECF No. 98-01 (Declaration of Ficus Kirkpatrick opposing leave to amend); ECF Nos. 99
     and 99-1 (Plaintiffs' Reply and excerpts from Mr. Kirkpatrick's deposition, misdescribing Mr.
27   Kirkpatrick's testimony that information was "available" to a developer who searched for it as testimony
     that it was "disclosed.").
28

that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id*. at 502.  Plaintiffs do not do so.

Neither can Plaintiffs urge a presumption that their names and emails have been obtained by any third party:  they make no allegation, and can adduce no evidence, that such merchant queries are commonplace.  Rather, they are the sort of inquiry that would be made only if the merchant was dealing with a user support issue or refund request.  And finally, at this stage of the case Plaintiffs cannot be heard to complain that proof of such disclosures is uniquely in the hands of either Google or third parties: discovery has closed, and Plaintiffs never sought any evidence on this question from anyone.

Thus for this independent reason, Plaintiffs' claims must be dismissed, for failure to actually allege any disclosure of their own information to any third party.

## C.    Summary Judgment

This case is in a decidedly odd procedural posture.  Because Plaintiffs waited until the eleventh hour to amend their complaint yet again, we are in the unique position of bringing a Rule 12 motion to dismiss after the close of discovery, and thus we have a sort of hybrid between a Rule 12 motion and a summary judgment motion.  Clearly Rule 56(d) is not in play:  the factual record is closed, and thus Plaintiffs cannot be heard to urge delay pending discovery.  Google believes the CTAC fails on its face, and that the Court can and should dismiss it on Rule 12 grounds for want of Article III standing.  But we recognize that the language of the CTAC is sufficiently inexact (both in its deliberate misuse of the word "disclosure" and its apparently inadvertent vestigial references to "automatic transmissions") that Plaintiffs may argue in opposition that there are factual disputes to resolve.

Accordingly, Google moves in the alternative for summary judgment.  That motion is based on only three sources:  the CTAC itself; the accompanying Declaration of Ficus Kirkpatrick, which sets forth in slightly more detail than previously the actual workings of the relevant Google Play and Google Wallet features; and the absence of any evidence adduced by Plaintiffs in discovery to support key

1   elements of their claims.[15]

2           As Mr. Kirkpatrick's declaration explains—and semantics aside, the CTAC finally accepts—the

3   process of purchasing Apps from Google Play, the information exchanged in that process, the operation

4   of the Google Play and Google Wallet dashboards, and the way in which developers could access

5   information about their customers, are all precisely as described above.  Mr. Kirkpatrick is the Head of

6   Engineering for Google Play, is the person most knowledgeable on these subjects, and has been deposed

7   by Plaintiffs on these points *after* Plaintiffs were provided his earlier declaration.  To repeat, no

8   information is ever transmitted to third parties in the process of purchasing and downloading Apps, no

9   personal information is transmitted from the user's device to Google in that process, and no personal

10  information was or is automatically transmitted to developers by either the user's device or Google.  The

11  only situation in which a developer would have accessed Plaintiffs' name or email address is if the

12  developer affirmatively queried Google's servers for that information after the fact:  a process that has

13  nothing to do with the user's battery, bandwidth, or Android device.  On that basis alone, summary

14

15

16  ---

    [15] On summary judgment the moving party bears the initial burden of identifying those portions of the
17  pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *See
    Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210
18  F.3d 1099, 1102 (9th Cir. 2000).  On an issue for which the opposing party will have the burden of proof
    at trial, the moving party may "either produce evidence negating an essential element of the nonmoving
19  party's claim or defense or show that the nonmoving party does not have enough evidence of an essential
    element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine*, 210 F.3d at 1102.

20  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as
    otherwise provided in Rule 56 "specific facts showing that there is a genuine issue for trial."  *Anderson v.
21  Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "This burden to demonstrate a genuine issue of fact
    increases where the factual context makes the non-moving party's claim implausible."  *Harper v.
22  Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) (citing *Matsushita Electric Industrial Co., Ltd. v. Zenith
    Radio Corp.*, 475 U.S. 574, 587 (1986)).  The "mere disagreement or the bald assertion that a genuine
23  issue of material fact exists" does not preclude summary judgment.  *Harper*, 877 F.2d at 731 (citing
    *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th
24  Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988)).

25  The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by
    'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some
26  alleged factual dispute, or "by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,
    1075 (5th Cir. 1994) (quoting *Matsushita*, 475 U.S. at 586, *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994),
27  and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994)).  "Where the record taken as a whole
    could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for
28  trial.'"  *Matsushita*, 475 U.S. at 587.

---

14

1  judgment is mandated:  there is no causal link between the alleged breach of contract and the alleged

2  injury, and thus no Article III injury-in-fact.

3          Moreover, Plaintiffs have neither produced nor adduced any evidence supporting many of their

4  factual claims.  They have no evidence of payments for either bandwidth or electricity.  They have no

5  evidence that any developer has ever obtained any of their personal information.  At least one of them

6  doesn't even have the Android devices he thinks he may have used (having apparently never been asked

7  to preserve them and having thrown them away), and admits that the only App he ever bought was

8  purchased not on an Android device but a Sony Playstation, which uses neither batteries nor cellular

9  bandwidth.[16]  Google asked for that evidence, by way of interrogatories, requests for documents, requests

10  for admission, and depositions, and Plaintiffs came up empty.  *See* Declaration of Michael H. Page

11  ("Page Decl.") ¶¶ 2–10 and Exs. A–H (plaintiffs' discovery responses and deposition excerpts).

12  Accordingly, should the Court find it necessary to resolve factual disputes beyond the scope of the

13  pleadings, Plaintiffs have no evidence from which to create a material dispute of fact, and summary

14  judgment is warranted.

15  **III.    CONCLUSION**

16          For the foregoing reasons, this Court should finally dismiss this case, either under Rule 12 for

17  failure to allege facts establishing Article III standing, or in the alternative by summary judgment, based

18  on the absence of any material issue of fact on that question.

19

20  Dated:  March 13, 2015                                    DURIE TANGRI LLP

21

22                                                  By:  _____*/s/ Michael H. Page*_____

23                                                          MICHAEL H. PAGE

                                                    Attorneys for Defendant
24                                                  GOOGLE INC.

25

_____

26  [16] At the time of filing, Google had taken the depositions of Mr. DeMars and Mr. Goldberg, both of
whom conceded that they have no evidence that any of their personal information was ever disclosed to
27  any App merchant at any time. Page Decl. ¶ 10 & Ex. H.  Mr. McCullough did not appear for deposition
as noticed, but has agreed to sit for deposition in North Carolina on April 3.

28

15

GOOGLE'S NOM & MOT. TO DISMISS PLS.' CONSOLIDATED THIRD AM. CLASS ACTION COMPL.,
OR IN THE ALTERNATIVE MOT. FOR SUMMARY JUDGMENT / CASE NO. 5:12-CV-01382-PSG

1

**CERTIFICATE OF SERVICE**

2     I certify that all counsel of record is being served on March 13, 2015 with a copy of this

3  document via the Court's CM/ECF system.

4

5                                        */s/ Michael H. Page*
                                         MICHAEL H. PAGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28