**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis *(pro hac vice)*
Orin Kurtz *(pro hac vice)*
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

**GRANT & EISENHOFER P.A.**
James J. Sabella *(pro hac vice)*
Diane Zilka *(pro hac vice)*
Kyle McGee *(pro hac vice)*
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel: 646-722-8500
Fax: 646-722-8501

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, California 94596
Tel:  925-300-4455
Fax:  925-407-2700


*Interim Co-Lead Counsel for the Class and Subclasses*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| | CASE NO. 12-CV-01382 PSG |
| IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL** |
| | Date:          June 9, 2015<br>Time:          10:00 a.m.<br>Courtroom: 5 – 4th Floor<br>Judge:        Honorable Paul Singh Grewal |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 9, 2015 at 10:00 a.m. in Courtroom 5 of the above-entitled court, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs Michael Goldberg, Robert DeMars, and Scott McCullough ("Plaintiffs"), by their counsel, will move and hereby move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order (1) certifying this action as a class action on behalf of a class consisting of Android users who purchased paid apps through the Android Market/Google Play Store between February 1, 2009 and May 31, 2014 (the "Class")[1]; (2) appointing Plaintiffs as Class Representatives; and (3) appointing Plaintiffs' counsel as Class Counsel.  Plaintiffs request certification of the following Class: "All persons and entities in the United States who purchased at least one paid Android application through the Android Market and/or Google Play Store between February 1, 2009 and May 31, 2014."

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the Declaration of James J. Sabella filed herewith and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should certify the Class described herein, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' Counsel as Class Counsel.

Dated:  May 12, 2015

**BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, California 94596
Tel:  925-300-4455
Fax:  925-407-2700

---

[1] Excluded from the Class are all claims for wrongful death, survivorship and/or personal injury by Class members.  Also excluded from the Class is Google, any entity in which Google has a controlling interest, and its legal representatives and successors.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...................................................................................................1

FACTUAL SUMMARY ..........................................................................................2

I.      GOOGLE'S ROLE IN THE SALE OF APPS ...........................................2

II.     GOOGLE FALSELY PROMISED THAT IT WOULD NOT SHARE USERS'
        PRIVATE INFORMATION..........................................................................3

III.    PUBLICATION OF USER INFORMATION OCCURS DURING THE PURCHASE
        PROCESS ......................................................................................................5

IV.     THE MEMBERS OF THE CLASS HAVE SUFFERED ECONOMIC INJURY AS A
        RESULT OF GOOGLE'S UNAUTHORIZED DISCLOSURE OF INFORMATION ......7

ARGUMENT ...........................................................................................................8

I.      APPLICABLE LEGAL STANDARDS .......................................................8

II.     THE REQUIREMENTS OF RULE 23(A) ARE READILY MET................10

        A.      THE CLASS SATISFIES THE NUMEROSITY REQUIREMENT .....................10

        B.      COMMONALITY IS SATISFIED .................................................................10

        C.      PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS ..................................11

        D.      PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES.........................12

                1.      Plaintiffs' Counsel Is Adequate ..................................................12

                2.      Plaintiffs Are Adequate Class Representatives...........................13

        E.      THE IMPLIED REQUIREMENT OF ASCERTAINABILITY IS SATISFIED.........13

        F.      THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED .............................14

                1.      Common Issues of Law and Fact Predominate...........................14

                2.      A Class Action Is Superior ..........................................................17

        G.      ALTERNATIVELY, THE COURT SHOULD EMPLOY RULE 23(C)(4) TO RESOLVE
                THE QUESTION WHETHER GOOGLE'S CONDUCT VIOLATES ITS CONTRACTS
                WITH PLAINTIFFS AND OTHER CLASS MEMBERS ...................................18

CONCLUSION.......................................................................................................19

i

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
CASE NO. 12-CV-01382 PSG

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997).............................................................................................2, 14

5

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds,*
    133 S. Ct. 1184 (2013).............................................................................................9

6

7

*Arnott v. U.S. Citizenship & Immigration Servs.,*
    290 F.R.D. 579 (C.D. Cal. 2012).............................................................................8

8

9

*Brown v. Hain Celestial Grp., Inc.,*
    No. C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) .....................11, 12

10

*Cohen v. Trump,*
    303 F.R.D. 376 (S.D. Cal. 2014) ..............................................................9, 10, 16, 17

11

12

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013).............................................................................................9

13

*Dei Rossi v. Whirlpool Corp.,*
    No. 2:12-CV-00125-TLN, 2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) ...................17

14

15

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011).............................................................................................15

16

17

*Ewert v. eBay, Inc.,*
    No. 07-cv-02198, 2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010)............15

18

*Gautier v. Gen. Tel. Co.,*
    234 Cal. App. 2d 302, 44 Cal. Rptr. 404 (Ct. App. 1965) ............................................15

19

20

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982)..................................................................................................13

21

22

*Harris v. comScore, Inc.,*
    292 F.R.D. 579 (N.D. Ill. 2013)..................................................................................11

23

*In re Google, Inc. Privacy Policy Litig.,*
    No. 12-cv-01382, 2014 WL 3707508 (N.D. Cal. July 21, 2014) .................................16

24

25

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ..............................................................................................16

26

*Jimenez v. Allstate Ins. Co.,*
    765 F.3d 1161 (9th Cir. 2014) ....................................................................................18

27

28

ii

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
CASE NO. 12-CV-01382 PSG

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
   No. 11-cv-01781-JCS, 2015 WL 510109 (N.D. Cal. Feb. 3, 2015) ...............................9

*McCrary v. Elations Co., LLC*,
   No. 13-00242, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ......................................13

*Menagerie Prods. v. Citysearch*,
   No. 08-cv-4263, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ....................................15

*Mortimer v. Baca*,
   No. CV00-13002DDPSHX, 2005 WL 1457743 (C.D. Cal. May 25, 2005) ................14

*Rai v. Santa Clara Valley Transp. Auth.*,
   No. 12-cv-004344-PSG, 2015 WL 860761 (N.D. Cal. Feb. 24, 2015) .....................10, 14, 15, 17

*Robertson v. Facebook, Inc.*,
   572 F. App'x 494 (9th Cir. 2014) .............................................................................15

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ..................................................................................10

*Schulken v. Wash. Mut. Bank*,
   No. 09-cv-02708, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012)......................................15

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ..................................................................................16

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
   No. 06-cv-0963, 2012 WL 1110004 (N.D. Cal. April 2, 2012).................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)........................................................................................10, 13

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ....................................................................................9

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 ....................................................................................1

Fed. R. Civ. P. 23 .............................................................................................. passim

1   Plaintiffs Michael Goldberg, Robert DeMars, and Scott McCullough ("Plaintiffs")

2   respectfully submit this Memorandum in Support of Motion for Class Certification, Appointment of

3   Class Representatives, and Appointment of Class Counsel in this action against Defendant Google,

4   Inc. ("Google").[2]

5   ## INTRODUCTION

6          This is a nationwide class action against Google, under California law, for breach of contract

7   and violation of the California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

8   ("UCL"), on behalf of all persons and entities in the United States who purchased at least one paid

9   Android application ("App") through the Android Market and/or Google Play Store between

10  February 1, 2009 and May 31, 2014 (the "Class").

11         In direct violation of the terms of every one of the relevant privacy policies and terms of

12  service, Google shared the personally identifying information – including name, email address, and

13  location information – of Plaintiffs and each member of the Class with third parties.  Through a set

14  of entirely uniform practices, Google deceived Plaintiffs and the Class members by representing,

15  through its various user agreements, that it would only share the personally identifying information it

16  collected from Plaintiffs and the Class members in specific, enumerated, limited circumstances set

17  forth in those documents – none of which is remotely applicable here.  Despite this clear promise,

18  Google admitted during the course of discovery in this litigation that it shared Plaintiffs' and all

19  Class members' personally identifying information with third-party App developers each time

20  Plaintiffs and other Class members purchased an App using its retail platforms, the Android Market

21  and the Google Play Store.  Google shared precisely the same information about each Plaintiff and

22  each Class member, in precisely the same manner, each and every time they purchased an App.  If

23  ever a case were ideal for class certification, it is this.

24         As shown in greater detail below, Plaintiffs have adduced substantial *classwide* evidence

25  supporting their contract claim and their claim under the UCL. For example, Google has admitted,

26

27  ---
    [2] The Consolidated Third Amended Class Action Complaint will be referred to herein as the "CTAC."  Citations in the form "¶ ___" are to paragraphs of the CTAC.

28
    PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
    APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
    CASE NO. 12-CV-01382 PSG

*inter alia*, that (a) for the duration of the Class Period, it caused the names, email addresses, and location information of Android users who purchased at least one App through the Android Market/Google Play Store to be made available to the App developer(s) responsible for listing the App(s) purchased, (b) that purchasers' information was *immediately* made available to developers as part of the App purchase process, (c) that the process of purchasing an App consumes device resources, including battery power and bandwidth, thus supporting a classwide damages assessment, (d) that the only reason Google made any user's personal details available to any App developer during the Class Period is that the user purchased an App listed for sale by that developer, and (e) that such information need not be provided to any third party in order to process the purchase transaction or to maintain any account. These facts do not vary one iota from one Class member to the next.

As the Supreme Court has held, a class must be "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Here, that is precisely the case – and then some: the claims in this action are susceptible to uniform proof, and may be proven solely by reference to Google's conduct, and Class members may be both ascertained and positively identified by reference to Google's records. Accordingly, Plaintiffs' motion for class certification should be granted.

## FACTUAL SUMMARY

## I.  GOOGLE'S ROLE IN THE SALE OF APPS

Google allows third party App developers – persons or businesses generally unaffiliated with Google – to list for sale in its retail environment (known as the Android Market between 2009 and 2012, and since 2012, the Play Store) certain software products that run on Google's Android OS platform. Google processes payments for Apps purchased by users through its proprietary payment platforms (Checkout and Wallet) and extracts a fee of 30% of each transaction for itself, with the remainder going to the App developer that listed the App for sale. On average, over 2 million Apps were purchased through Google's retail platforms during the Class Period each month.

## II.   GOOGLE FALSELY PROMISED THAT IT WOULD NOT SHARE USERS' PRIVATE INFORMATION

Throughout the Class Period, Google falsely promised Android users, including Plaintiffs, that it **would not** "**share**" their personally identifying information with third parties, except in the following limited circumstances: (a) "as necessary to process your transaction and maintain your account";[3] (b) "[t]o detect, prevent, or otherwise address fraud, security or technical issues";[4] (c) "[w]e have your consent";[5] (d) to "process[] personal information on [Google's] behalf" (only with respect to "subsidiaries, affiliated companies or other trusted businesses or persons");[6] (e) as "reasonably necessary" to comply with laws or regulations;[7] or (f) as otherwise required under the general Google privacy policy.[8]

None of these circumstances is remotely applicable to the purchase of Apps, yet Google uniformly, systematically, and arbitrarily shared the exact information it promised to keep private with App developers each time a Class member purchased an App.  Plaintiff Goldberg purchased at least forty-five Apps during the Class Period, and so his personal information was shared by Google with third parties on forty-five occasions.[9]  Plaintiff DeMars purchased one App during the Class Period, and so his personal information was shared by Google with third parties on one occasion.[10]  Plaintiff McCullough purchased two Apps during the Class Period, and so his personal information was shared by Google with third parties on two occasions.[11]

Clearly, Google has no need to share users' personally identifying information in order to

---

[3] Ex. A (December 9, 2009 Google Checkout Privacy Policy) at 2; *see also* Ex. B (November 16, 2011 Google Wallet Privacy Policy) at 4; Ex. C (August 1, 2012 Google Wallet Privacy Notice) at 2.
[4] Ex. A (December 9, 2009 Google Checkout Privacy Policy) at 2; *see also* Ex. B (November 16, 2011 Google Wallet Privacy Policy) at 4.
[5] Ex. A (December 9, 2009 Google Checkout Privacy Policy) at 2; *see also* Ex. B (November 16, 2011 Google Wallet Privacy Policy) at 4; Ex. D (March 1, 2012 Google Privacy Policy) at 5-6.
[6] Ex. A (December 9, 2009 Google Checkout Privacy Policy) at 3; *see also* Ex. B (November 16, 2011 Google Wallet Privacy Policy) at 4; Ex. D (March 1, 2012 Google Privacy Policy) at 6.
[7] Ex. A (December 9, 2009 Google Checkout Privacy Policy) at 3; *see also* Ex. B (November 16, 2011 Google Wallet Privacy Policy) at 4; Ex. D (March 1, 2012 Google Privacy Policy) at 6-7.
[8] Ex. C (August 1, 2012 Google Wallet Privacy Notice) at 2.
[9] Ex. E (GOLDBERG-0000003).
[10] Ex. F (DEMARS-000029).
[11] Ex. G (MCCULLOUGH-0000001).

3

1  process transactions or maintain accounts, as evidenced by Google's own conduct: Google ceased

2  providing purchaser details (including name and email address) to App developers in May 2014,[12]

3  yet it has continued to process App purchase transactions, to maintain user accounts, and otherwise

4  operate normally since that time.

5      Google's Product Manager responsible for payment processing, Mark Thomas, has admitted

6  that the sharing of personally identifying information is not required to "process" the purchase

7  transaction.[13]   Similarly, after reviewing all the evidence in this case, Plaintiffs' expert Matthew

8  Curtin concluded that this practice "is not a technical requirement to completing a purchase

9  transaction nor for the delivery of content to the user."[14]   Nor is the information required for

10  "account maintenance": although (as Mr. Thomas testified) certain Apps may require the creation of

11  an account,[15] Google did not limit its practice of disclosing purchaser details to such cases.

12      The remaining rationales provide no support for Google's practice of sharing users' personal

13  information with App developers.  On their face, the fraud-detection, external data-processing, and

14  legal compliance rationales have no applicability to the practice of disclosing personal information

15  about Android users to third party App developers.  Whether App developers have access to the

16  names and email addresses of purchasers of their Apps does not further in any way Google's anti-

17  fraud efforts (as, indeed, the May 2014 cessation of the practice reveals).  Further, App developers

18  simply do not process data on Google's behalf – that provision is clearly designed to refer to vendors

19  used by Google to manage data, not App developers, as the reference to "subsidiaries, affiliated

20  companies, and other trusted businesses or persons" shows.  Finally, there is no law requiring

---

[12] Ex. H (excerpts of deposition transcript of Ficus Kirkpatrick ("Kirkpatrick Tr.") at 81:13-19.
[13] As Google's witness Mark Thomas testified:

    A.    Is it necessary to process those transactions [*i.e.*, App purchases] – is the sharing of e-mail and name necessary to process those transactions.  No, there [are] probably other ways of doing it.

              *       *       *       *

    Q.    But it's not necessary to process [the transaction].
    A.    No, there [are] other ways of doing it.

Ex. I (excerpts of deposition transcript of Mark Thomas ("Thomas Tr.")) at 113:13-114:1.
[14] Ex. J (expert report of C. Matthew Curtin) ("Curtin Rep.") at 3.
[15] Thomas Tr. at 82:17-19.

---

4

disclosure of purchasers' personal information to App developers each time an app is purchased.[16]

That leaves "consent."  Google has not presented throughout this litigation, and cannot present, any evidence even tending to show that Android users, including Plaintiffs, consented to the disclosure of their personally identifying information to App developers each time they purchase an App.  For example, such users were not asked to agree to this disclosure, and no policy or term of service operative during the Class Period indicated, or even hinted, that it would occur.

Accordingly, no provision in the relevant contracts permits Google's sharing, disclosure, or publication to third party App developers of Android users' personal information each time they purchase an app through the Android Market/Google Play Store.  Google attempts to avoid the inevitable finding that it violated its agreements not to share App purchasers' personal information with third parties solely on the implausible ground that its conduct is something short of "sharing." As shown herein, and as explained in Plaintiffs' opposition to Google's hybrid Rule 12(b)(1) and Rule 56 motion (Dkt. No. 109) and at oral argument on Google's motion, this argument is meritless because the question whether Google's offensive provision of Plaintiffs' and other Class members' information to third parties without their consent constitutes a breach of its agreements has nothing to do with whether the third party App developers do anything with the information that has been gratuitously and arbitrarily disclosed to them.

## III.   PUBLICATION OF USER INFORMATION OCCURS DURING THE PURCHASE PROCESS

Between February 1, 2009 and May 31, 2014, Google published on its developer-specific portals (the Checkout Merchant Center, operative from February 2009 to early 2013, and the Play Developer Console, operative from 2012 to May 2014) the name, email address, and location data of each individual Android user that purchased Apps listed for sale by App developers, including Plaintiffs.[17]  Users who purchased Apps through Google Play "were not provided a mechanism by

---

[16] With the exception of the "consent" rationale, the foregoing addresses all rationales set forth in the general Google Privacy Policy.  *See* Ex. D (March 1, 2012 Google Privacy Policy) at 5-7.

[17] Curtin Rep. at 3 ("The purchase process includes publication of buyers' information to developers. The business logic implemented by user interfaces such as *Google Play Developer Console* and

*(Cont'd)*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

1   which to opt-out or otherwise prevent their information from being made available" to App

2   developers.[18]  Notably, "99 percent or more" of the Apps sold by Google are developed by outside

3   parties and not Google itself.[19]

4          In order to purchase an App through the Android Market/Google Play Store, a user must

5   have a Google account.[20]  Similarly, to purchase a paid App through the Google Play Store, a user

6   must have a Google Wallet account; to obtain that account the user must provide billing information

7   such as a credit card number, a billing address, and a name.[21]

8          During the Class Period, every purchase of a paid application through the Android

9   Market/Google Play Store resulted in the immediate disclosure to (or "sharing" with) the App

10  developer of the purchaser's name, email address, and location.[22]  The process of purchasing an App

11  is "an integrated operation with multiple components that work together to form [a] cohesive,

12  tightly-coupled process."[23]  Google admitted that, "*as part of the process of making that purchase*,

13  we create a record of that purchase [which is] available for the Developer Console to read."[24]

14  Specifically, one of the API calls or messages transmitted from Android user devices during the

15  purchase process, "/commitPurchase," includes user- and device-specific data and is directly

16  responsible for the creation of that immediately-disclosed record.[25]  As an "integrated operation" that

17  _____

18  *Google Checkout Merchant Center* causes a user's name, email address, and location to be published
     once a purchase is made by the user in *Google Play*."); *see also* CTAC ¶136.

19  [18] Curtin Rep. at 4.

     [19] Kirkpatrick Tr. at 44:24-45:7.

20  [20] Kirkpatrick Tr. at 53:25-54:10.

     [21] Kirkpatrick Tr. at 56:21-57:10.

21  [22] Kirkpatrick Tr. at 85:8-13; 86:12-13.

     [23] Curtin Rep. at 5.

22  [24] Kirkpatrick Tr. at 86:23-87:2 (emphasis added).

23  [25] Ex. K (GOOG-00000008-21) at GOOG-00000011 ("The device calls the DFE [Device Frontend]
     CommitPurchaseAction.  The DFE sends a DeliveryInfoRequest to the Mixer, which sends it via the

24  VCA to IMAS, which returns the AndroidAppDeliveryData including the secure URL for the actual
     download.  In parallel the DFE sends a CompletePurchaseRequest to the Blixer.  This inserts an

25  Order into Checkout and then waits for its status to indicate that the purchase has succeeded (or
     failed).  It then sends a PNR [PurchaseNotificationRequest] via the VCA to IMAS, which updates

26  the purchase record in the user profile."); *id.* at GOOG-00000013 (/commitPurchase also "[c]opies
     purchase context data (the details of the order to be created) into a CompletePurchaseRequest and

27  sends it to the Blixer, with skip delivery set true.  The data sent includes the 'risk hashed device

28                                                                                        *(Cont'd)*

includes exposing the purchase record to developers, the purchase process consumes "measured or limited resources" including "[e]lectric power," "CPU cycles," "[m]ain memory," and "[n]etwork capacity" or bandwidth.[26]   Accordingly, the consumption of these resources is necessary for, and so causally related to, the unauthorized disclosure of App purchasers' personal information to app developers.   Plaintiffs and the other Class members did not authorize the use of *any* device resources for that purpose.[27]

## IV.   THE MEMBERS OF THE CLASS HAVE SUFFERED ECONOMIC INJURY AS A RESULT OF GOOGLE'S UNAUTHORIZED DISCLOSURE OF INFORMATION

Although pecuniary injury is not required to establish Plaintiffs' breach of contract claim, Plaintiffs' economics expert, Fernando Torres, has placed a definitive value on the privacy and data lost by Class members as a result of Google's deception and breach of contract.  This valuation does not vary from Class member to Class member.

*First*, according to Mr. Torres, from an economic perspective, the contracts entered into between Google and the Class members form "one side of the two-sided" Google platform: Google provides services that attract consumers, and then sells access to these consumers to advertisers and mobile App developers.   The other "side" of Google's platform is the sale of the users' information.[28]

Mr. Torres opines that the "general context" of the bargain between Google and Android users is that Google provides the platform in exchange for access to users' information "under the terms of the privacy provisions . . . namely, that *no personally identifiable* information will be shared with or sold to third parties except in [inapplicable] limited circumstances" set out in the Google's

---

info,' an obfuscated device identifier (e.g. IMEI) sent by the device, and information about any challenges the user has passed (e.g., providing their Gaia password)."

[26] Curtin Rep. at 5-6; *see also* Curtin Rep. at 3 ("The process of completing a purchase in the store now branded as *Google Play* consumes limited resources local to or used by the purchaser's device.").

[27] CTAC ¶¶168 ("Each such disclosure required the consumption of [Plaintiffs'] device battery power because each such disclosure was triggered or initiated by a transmission from the Android device used to purchase the application, *though they never consented or authorized Google to cause those transmissions for the purpose of making such disclosures*.") (emphasis added); 169 (same, with respect to bandwidth consumption).

[28] Ex. L (expert report of Fernando Torres) ("Torres Rep.") at 4.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

user agreements.[29]  Class members' information has value because users "value the privacy of their information, [Google] and the [App] developers value the information because it can be leveraged to obtain advertising or other types of revenue."[30]  As a result of Google's sharing of Plaintiffs' and Class members' information, Plaintiffs and the Class members have lost the opportunity to sell that same personal information, the "monetary value of which is at least as much as the value that [the App developers] place on the information."[31]  Additionally, once the Class members' information is disclosed to third parties such as App developers, and is out of the Class members' and Google's control, the increased risk of theft of that information increases.[32]  Ultimately, Mr. Torres values the Class members' information in four distinct, yet complimentary ways:

1. The value of Plaintiffs' and the other Class members' personally identifiable information, including name, email and location is estimated at $0.18 per user;

2. Plaintiffs' and the other Class members' interests in keeping the disclosed information private and secure was damaged irretrievably and its valuation for unauthorized dissemination to third parties can be estimated to range between $19.31 to $28.26 per Class member;

3. Plaintiffs' and other Class members' economic interests have been damaged by their loss of control over their own information, and the disclosure of that information to third parties who do not have privacy obligations to the Class Members, may be valued at no less than $6.00 per Class member; and

4. Plaintiffs and other Class members have been harmed by the unauthorized use of their battery life and bandwidth in the estimated amount of $0.068 per Megabyte, on average, for the Class Period.[33]

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARDS

A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 583 (C.D. Cal. 2012) (citing

---

[29] Torres Rep. at 5 (emphasis in original).
[30] Torres Rep. at 6.
[31] Torres Rep. at 6.
[32] Torres Rep. at 6.
[33] Torres Rep. at 14-15.

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiff asks the Court to certify a class under Rule 23(b)(3), which permits class actions for damages where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating that it has satisfied all four Rule 23(a) prerequisites and that their class lawsuit falls within one of the three types of actions permitted under Rule 23(b).   *Zinser*, 253 F.3d at 1186.   The district court must conduct a rigorous analysis to determine whether plaintiffs met their burden to pursue their claims as a class action. *Id.* Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

Finally, under the Supreme Court's recent decision in *Comcast v. Behrend*, Plaintiffs' "proposed damages model must 'measure only those damages attributable to [the plaintiff's] theory [of liability].'"   *Cohen v. Trump*, 303 F.R.D. 376, 389 (S.D. Cal. 2014) (citing and quoting *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433, (2013)).   Plaintiffs' damages "[c]alculations need not be exact," but "must be consistent with [Plaintiffs'] liability case." *Id.* (quotation marks omitted).

Alternatively, Plaintiffs can seek a liability-only class under Rule 23(c)(4), in which case the *Comcast* analysis is unnecessary.   *Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-cv-01781-JCS, 2015 WL 510109, at *24 (N.D. Cal. Feb. 3, 2015) ("The rule of *Comcast* is largely irrelevant where determinations on liability and damages have been bifurcated in accordance with Rule 23(c)(4) and the district court has reserved all issues concerning damages for individual determination.") (citation, quotation marks and brackets omitted).

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

## II.     THE REQUIREMENTS OF RULE 23(A) ARE READILY MET

### A.     THE CLASS SATISFIES THE NUMEROSITY REQUIREMENT

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, numerosity cannot be disputed: as shown by Google's interrogatory responses, millions of paid Apps have been purchased by Android users in the United States.[34]   *See Rai v. Santa Clara Valley Transp. Auth.*, No. 5:12-cv-004344-PSG, 2015 WL 860761, at *5 (N.D. Cal. Feb. 24, 2015) (Grewal, J.) (A class of forty or more members "raises a presumption of impracticability of joinder based on numbers alone.").

### B.     COMMONALITY IS SATISFIED

With regard to commonality, Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." *Cohen,* 303 F.R.D. at 382. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation and quotation marks omitted). The "claims must depend upon a common contention" that is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. All questions of fact and law need not be common to satisfy the rule. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). "What matters to class certification is … the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores*, 131 S. Ct. at 2551 (emphasis in original).

Here, each Plaintiff and Class member agreed to the terms set forth in various form contracts, including Google's general privacy policy (governing all Google products), the Checkout and Wallet privacy policies and terms of service, and the other privacy notices identified in the CTAC and appended hereto. Whether Google's practice of sharing Plaintiffs' and other Class members' personally identifying information with third party App developers each time they purchased Apps during the Class Period violates the terms of these agreements is a common

---

[34]     *See* Ex. M (Google's Responses and Objections to Plaintiffs' Third Set of Interrogatories) at 2-4.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

question susceptible to classwide proof. *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) ("Here, the plaintiffs raise a variety of common questions that can be resolved on a classwide basis. Most obviously, each Class member agreed to a form contract."). Those form contracts all uniformly promised that Google would only share users' personal information for specific, enumerated, limited reasons. Google breached all of those contracts by sharing for the duration of the Class Period each Plaintiff's and each Class member's personally identifying information each and every time they purchased an App between February 2009 and May 2014. The factual proof of that breach will not vary from Class member to Class member because Google utilized a uniform process for sharing this information (*i.e.*, by making the Class member information available to the relevant App developers in the Checkout Merchant Center between February 1, 2009 and early 2013, and the Play Developer Console between 2012 and May 2014). *Harris*, 292 F.R.D. at 585 ("It is well established that claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (citation and quotation marks omitted).

Still further, the issue of how, and whether, Class members have been damaged as a result of Google's uniform practice may be answered by common proof. As more fully explained below in the discussion of predominance, Plaintiffs' expert, Mr. Torres, has set forth an objective, reliable method to value the harm to Plaintiffs and other Class members resulting from Google's unauthorized disclosure of their personally identifying information to App developers.

### C.   PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS

Rule 23(a)(3) requires that "the claims or defenses of the class representatives [be] typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014) (citation and quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation omitted). "Class certification is inappropriate

when a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.*

Here, Plaintiffs and the Class have been injured in identical ways by an identical course of conduct: Google represented in its user agreements that it would not share the personal information of Plaintiffs and other Class members with third parties, with the exception of five expressly stated circumstances. Despite this promise, Google shared precisely that information for reasons other than those set forth in the user agreements, thus violating those agreements. Google's acts were identical with regard to Plaintiffs and all members of the Class. Plaintiffs are aware of no unique defenses available to Google, against Plaintiffs, which would threaten to become the focus of the litigation, and Google has thus far raised no such individualized defenses in the course of this litigation.

### D. PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES

Rule 23(a)(4) requires Plaintiffs to prove that they "will fairly and adequately protect the interests of the class." "This requirement applies to the class representative and class counsel and poses two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Brown,* 2014 WL 6483216, at *14 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)).

#### 1. Plaintiffs' Counsel Is Adequate

To evaluate the adequacy of counsel, the Court "must" consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiffs' counsel satisfies all of the requirements: Counsel has invested a substantial amount of time over a course of three years to identify and investigate, and litigate, the claims in this

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

action, has taken substantial factual and expert discovery, and has retained and worked closely with competent, knowledgeable expert consultants.   Counsel is experienced and knowledgeable concerning complex litigation, and has the resources to commit to adequately and vigorously advancing the Class's interests, as shown by counsel's conduct thus far and by the resumes of Plaintiffs' Counsel, which are attached as Exhibits N, O, and P to the Sabella Declaration.

### 2.   Plaintiffs Are Adequate Class Representatives

As to the named plaintiffs, Rule 23(a)(4)'s adequacy requirement evaluates whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 158 n.13 (1982). The adequacy, commonality, and typicality prerequisites "tend to merge." *Dukes,* 131 S. Ct. at 2550–51 n.5.

As shown above, Plaintiffs' claims are strictly identical to those of the other Class members. During the Class Period, each Plaintiff purchased at least one App through the Android Market/Google Play Store, and consequently had his personally identifying information shared, without his consent or authorization, with third party App developers by Google.  *See* Ex. E, F, and G.  Plaintiffs have no conflicts with the Class.

### E.   THE IMPLIED REQUIREMENT OF ASCERTAINABILITY IS SATISFIED

A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member using objective criteria."  *McCrary v. Elations Co., LLC*, No. 13-00242, 2014 WL 1779243, at *7 (C.D. Cal. Jan. 13, 2014) (internal quotation omitted). Ascertainability does not require positive identification of class members, but only a class definition that is "sufficiently definite ... to determine whether a particular person is a class member." *Id.*  The gold standard for ascertainability in consumer class actions is the defendant's maintenance of records reflecting information about affected persons sufficient to enable an objective determination of class membership.  This is the rare case in which the defendant maintains precisely such records.

The class definition includes "all persons and entities in the United States who purchased at least one paid Android application through the Android Market and/or Google Play Store between

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

February 1, 2009 and May 31, 2014."  Google maintains records of all App purchases made during the Class Period through its Android Market/Play Store.[35]  Indeed, Google produced a document itemizing Plaintiff Goldberg's App purchases made using the Android Market/Play Store during the Class Period, which includes the date and exact time that the purchases were made.[36]  There is nothing special about Plaintiff Goldberg or his Class Period App purchases: Google obviously has access to the complete purchase histories of each and every Class member.  This far exceeds the requirements of even the most exacting ascertainability standard.  Accordingly, the implied requirement of ascertainability is amply satisfied.

## F.   THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED

In addition to the requirements of Rule 23(a), Plaintiffs must show that "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, each of these requirements is met: the sole focus of the litigation will be on Google's conduct; thus common issues of law and fact will predominate.  There can be no question that a single class action, as brought here, is superior to millions of App purchasers bringing individual claims against Google.

### 1.   Common Issues of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem,* 521 U.S. at 623.  "This inquiry is more searching than the Rule 23(a)(2) 'commonality' inquiry."  *Mortimer v. Baca*, No. CV00-13002DDPSHX, 2005 WL 1457743, at *2 (C.D. Cal. May 25, 2005).  "Where common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than

---

[35] *See, e.g.*, Ex. M at 2-4 (identifying number of Apps sold on month-by-month basis during Class Period through Android Market/Play Store, and identifying number of Apps purchased by Plaintiffs during Class Period through Android Market/Play Store), and Ex. M, "Goldberg Purchases" addendum (itemizing, with timestamp data, each App and other media purchased by Plaintiff Goldberg during Class Period through Android Market/Play Store).

[36] *See* Ex. M, "Goldberg Purchases" supplement.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

1    on an individual basis." *Rai,* 2015 WL 860761, at *13.

2         Considering whether questions of law or fact common to class members predominate begins,

3    of course, with the elements of the underlying cause of action.  *Erica P. John Fund, Inc. v.*

4    *Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) (citation and quotation marks omitted).  Here,

5    analysis of the elements of each of Plaintiffs' claims—breach of contract and violation of the UCL's

6    fraud prong—shows that common questions of law and fact will predominate over individual

7    questions.

8         *First*, Plaintiffs bring a claim for breach of contract.  The elements of a breach of contract

9    claim are a "contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach,

10   and damage to plaintiff therefrom."  *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305, 44 Cal.

11   Rptr. 404, 406 (Ct. App. 1965).  As the Ninth Circuit has recently made clear, contract damages may

12   be established without a showing of pecuniary harm.  *Robertson v. Facebook, Inc.*, 572 F. App'x 494

13   (9th Cir. 2014).  Here, the relevant contracts are the user agreements (including privacy policies)

14   between Google and the Plaintiffs and other Class members, which are attached as Exhibits A, B, C

15   and D to the Sabella Declaration.  Plaintiffs and the Class members "performed" under the contracts

16   by using Google's Android Market/Play Store retail services to purchase Apps.  *See id.*  Google

17   breached the contracts by sharing Plaintiffs' and other Class members' personal information with

18   third-party App developers, although that sharing was completely unnecessary and not justified by

19   any of the reasons stated in the contracts that purport to permit Google to share the information.

20   Plaintiffs address damages below.  "When viewed in light of Rule 23, claims arising from

21   interpretations of a form contract appear to present the classic case for treatment as a class action,

22   and breach of contract cases are routinely certified as such."  *Schulken v. Wash. Mut. Bank*, No. 09-

23   cv-02708, 2012 WL 28099, at *13 (N.D. Cal. Jan. 5, 2012) (internal quotation marks omitted);

24   *accord Menagerie Prods. v. Citysearch*, No. 08-cv-4263, 2009 WL 3770668, at *10 (C.D. Cal. Nov.

25   9, 2009) (same); *Ewert v. eBay, Inc.*, No. 07-cv-02198, 2010 U.S. Dist. LEXIS 108838, at *21 (N.D.

26   Cal. Sept. 30, 2010) (same); *see also Vedachalam v. Tata Consultancy Servs., Ltd.,* No. 06-cv-0963,

27   2012 WL 1110004, at *15 (N.D. Cal. April 2, 2012).

28

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
CASE NO. 12-CV-01382 PSG

1    Plaintiffs' UCL fraud prong claim requires a showing that Google's conduct is likely to

2    mislead the public, as well as that Plaintiffs relied on that conduct and were harmed by it.  *In re*

3    *Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382, 2014 WL 3707508, at *13 (N.D. Cal. July 21,

4    2014).  Because Google's disclosure of app purchaser details (name, email address, location) was

5    done without securing the consent of, or even notifying, the millions of affected Android App

6    purchasers, including Plaintiffs, and was done in violation of Google's privacy policies and terms of

7    service, as shown above, its conduct was extremely likely to mislead the public – and did, in fact,

8    mislead the public, as the outcry among privacy-sensitive App developers (*see* CTAC ¶__) shows.

9    Indeed, the sole focus of Plaintiffs' UCL claims will be Google's conduct and not the state of

10   mind of individual Class members.  Under the UCL, "relief . . . is available without individualized

11   proof of deception, reliance and injury."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009);

12   *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (remanding to district court

13   where district court denied class certification due to concerns about reliance).

14   Finally, damages can be shown on a class-wide basis through, among other things, the

15   objective standards for assessment of damages set out by Plaintiffs' expert, Mr. Torres.  He values

16   Plaintiffs' and the Class members' information in four separate, yet complimentary ways:

17   1.   The value of Plaintiffs' and the other Class members' personally identifying
18        information, including name, email and location is estimated at $0.18 per user;

19   2.   Plaintiffs' and the other Class members' interests in keeping the disclosed
          information private and secure was damaged irretrievably and its valuation for
20        unauthorized dissemination to third parties can be estimated to range between $19.31
          to $28.26 per Class member;

21   3.   Plaintiffs' and other Class members' economic interests have been damaged by their
22        loss of control over their own information, and the disclosure of that information to
          third parties who do not have privacy obligations to the Class Members, may be
23        valued at no less than $6.00 per Class member; and

24   4.   Plaintiffs and other Class members have been harmed by the unauthorized use of their
          battery life and bandwidth in the estimated amount of $0.068 per Megabyte, on
25        average, for the Class Period.[37]

26

27   _____
     [37] Torres Rep. at 14-15.

28
                                                    16
     PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
     APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
     CASE NO. 12-CV-01382 PSG

1    Each of these damages calculations arises directly from the breaches of contract and

2    deceptive conduct by Google, and thus Plaintiffs' damages model "measure[s] only those damages

3    attributable to [the plaintiff's] theory [of liability]."   *Cohen*, 303 F.R.D. at 389 (citing and quoting

4    *Comcast*, 133 S. Ct. at 1433.)

5              **2.     A Class Action Is Superior**

6          To determine whether a class action is superior individual actions, the "matters pertinent"

7    under Rule 23(b)(3) include "(A) the class members' interests in individually controlling the

8    prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the

9    controversy already begun by or against class members; (C) the desirability or undesirability of

10   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

11   managing a class action."

12         Here, each factor weighs decidedly in favor of class action treatment.  As of this time, one

13   similar class action has been filed, but no other Class member has shown interest in *individually*

14   controlling a separate action for the small amounts available to Class members.  Indeed, given "the

15   small size of each class member's claims in this situation, class treatment is not merely the superior,

16   but the only manner in which to ensure fair and efficient adjudication of the present action."  *Dei*

17   *Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL 1932484, at *11 (E.D. Cal. Apr. 28,

18   2015).

19         Concentrating the litigation in this forum creates maximum efficiency, and avoids the specter

20   of millions of Class members bringing claims in courts throughout the State of California.  *Id.* ("each

21   member of the class pursuing a claim individually would burden the judiciary, which is contrary to

22   the goals of efficiency and judicial economy advanced by Rule 23").

23         Finally, Plaintiffs are aware of no difficulties inherent in managing this class action.  Indeed,

24   "[g]iven that common questions predominate  . . . , certification will not generate any complexities

25   from a case management perspective."  *Rai*, 2015 WL 860761, at *16.

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
CASE NO. 12-CV-01382 PSG

**G.    ALTERNATIVELY, THE COURT SHOULD EMPLOY RULE 23(C)(4) TO RESOLVE THE QUESTION WHETHER GOOGLE'S CONDUCT VIOLATES ITS CONTRACTS WITH PLAINTIFFS AND OTHER CLASS MEMBERS**

Although certification under Rule 23(b)(3) is merited, in the event this Court finds that either claim fails to satisfy the requirements of that rule, Plaintiffs request certification of an issue class under Rule 23(c)(4).   When such certification is sought, there is no need to engage in the predominance inquiry as to the action as a whole.   Instead, the Court must simply be satisfied that common issues predominate as to the issue(s) the plaintiff seeks to certify.   *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (finding Fifth, Sixth, and Seventh Circuit precedent on this question "compelling" and "consistent with our circuit precedent") (citing *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013)).

Here, Plaintiffs seek, in the alternative to their request for a Rule 23(b)(3) class, certification of a Rule 23(c)(4) class so that the common, predominant issue of whether Google's practice of sharing the personally identifying information of every App purchaser, including Plaintiffs, with third party App developers violates the terms of its contracts with each such App purchaser. Resolution of this question is an essential element of both claims on which Plaintiffs seek certification.   Determining whether Google's conduct violates its agreements with Class members is a question that can be answered in a single stroke and proven with class-wide evidence, as explained above.   An answer to that question would significantly ease the burden on consumers seeking to establish Google's ultimate liability, making later individual damages actions against Google exponentially more efficient.   This is precisely the type of common issue for which Rule 23(c)(4) was designed.

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted. Plaintiffs should be appointed as Class Representatives and Plaintiffs' Counsel should be appointed as Class Counsel.

Dated: May 12, 2015

**BURSOR & FISHER, P.A.**

By:   _/s/ L. Timothy Fisher_

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, California 94596
Tel:  925-300-4455
Fax:  925-407-2700

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis *(pro hac vice)*
Orin Kurtz *(pro hac vice)*
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax: 201-567-7337

**GRANT & EISENHOFER P.A.**
James J. Sabella *(pro hac vice)*
Diane Zilka *(pro hac vice)*
Kyle McGee *(pro hac vice)*
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel: 646-722-8500
Fax: 646-722-8501

*Interim Co-Lead Counsel for the Class and Subclasses*

**CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO**
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: 973-994-1700
Fax: 973-994-1744

**LAW OFFICES OF
RICHARD S. SCHIFFRIN LLC**
Richard S. Schiffrin
P.O. Box 2258
West Chester, Pennsylvania 19380
Tel: 610-203-7154

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 12-CV-01382 PSG

**JAMES SCHWARTZ & ASSOCIATES PC**
Michael Schwartz
1500 Walnut Street, 21st Floor
Philadelphia, Pennsylvania 19102
Tel:  215-751-9865
Fax: 215-751-0658

**LAW OFFICES OF MARTIN S. BAKST**
Martin S. Bakst (65112)
15760 Ventura Boulevard, Sixteenth Floor
Encino, California 91436
Tel: 818-981-1400
Fax: 818-981-5550

*Of Counsel for the Class and Subclasses*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVE, AND APPOINTMENT OF CLASS COUNSEL /
CASE NO. 12-CV-01382 PSG