DURIE TANGRI LLP
MICHAEL H. PAGE (SBN 154913)
mpage@durietangri.com
JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
SONALI D. MAITRA (SBN 254896)
smaitra@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:      415-236-6300

Attorneys for Defendant
GOOGLE INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION | Case No. 5:12-cv-01382-PSG <br><br> **<u>CONSOLIDATED CLASS ACTION</u>** <br><br> **DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL** <br><br> Date:     June 9, 2015 <br> Time:     10:00 a.m. <br> Ctrm:    5 - 4th Floor <br> Judge:   Honorable Paul Singh Grewal |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................1

II.    ARGUMENT ....................................................................................................................5

    A.    Plaintiffs Cannot Establish The Existence of A Class ........................................5

        1.    Plaintiffs cannot establish either breach or damage to anyone, let alone a sufficiently large group to justify class treatment .....................................5

        2.    Mr. Torres' testimony does not establish any damages ...........................7

        3.    Unrealized past risk of damage is not damage.......................................10

    B.    The Plaintiffs Cannot Meet Rule 23(a)'s Remaining Requirements .................11

        1.    Commonality...........................................................................................11

        2.    Typicality ................................................................................................13

        3.    Adequacy ................................................................................................13

        4.    Ascertainability ......................................................................................14

    C.    Common Issues Do Not Predominate, and a Class Action is Thus Not Superior ............14

    D.    An "Issue Class" is Inappropriate ....................................................................15

III.    CONCLUSION..............................................................................................................16

i

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Aguilera v. Pirelli Armstrong Tire Corp.*,
    223 F.3d 1010 (9th Cir. 2000) .......................................................................6

*Ala. State Fed'n of Labor v. McAdory*,
    325 U.S. 450 (1945) ....................................................................................16

*Am. Diversified Prods., Inc. v. RE/EX Valencia, Inc.*,
    No. B246501, 2014 WL 3696704 (Cal. Ct. App. July 25, 2014) .......................6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................3, 14

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ...............................................................................14

*Daniel F. v. Blue Shield of Cal.*,
    305 F.R.D. 115 (N.D. Cal. Aug. 11, 2014) .....................................................14

*Gautier v. General Tel. Co.*,
    234 Cal. App. 2d 302, 44 Cal. Rptr. 404 (1965) ...............................................6

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................14

*In re Joint E. & S. Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992)..........................................................................15

*In re One Canandaigua Props., Inc.*,
    140 B.R. 616 (W.D.N.Y. 1992) .....................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) .............................................................16

*In the Matter of Rhone-Poulenc Rorer Inc.*,
    51 F.3d 1293 (7th Cir. 1995) .....................................................................4, 15

*Kamakahi v. Am. Society for Reproductive Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015).....................................................................2

*Krehl v. Baskin-Robbins Ice Cream Co.*,
    78 F.R.D. 108 (C.D. Cal. 1978) .....................................................................14

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ........................................................................14

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................6

*Low v. LinkedIn Corp.*,
    No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)..............11

ii

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................................2

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) .....................................................................................6

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal. App. 2d 506, 64 Cal. Rptr. 187 (1967)...........................................................6

*Robertson v. Facebook, Inc.*,
    572 F. App'x 494 (9th Cir. 2014) .................................................................................6

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ..........................................................................6

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009) .....................................................................................6

*Sweet v. Johnson*,
    169 Cal. App. 2d 630 (1959) ........................................................................................6

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ........................................................................................2

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................1, 2, 11, 13

*Windham v. Am. Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ........................................................................................14

**Rules**

Fed. R. Civ. P. 12 ......................................................................................................................5

Fed. R. Civ. P. 23 ...............................................................................................1, 2, 11, 16

Fed. R. Civ. P. 23(a) ........................................................................................................ passim

Fed. R. Civ. P. 23(b) .......................................................................................1, 3, 12, 14

Fed. R. Civ. P. 23(c) .......................................................................................4, 5, 11, 15

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

1    Defendant Google Inc. ("Defendant") respectfully submits this Opposition to Michael Goldberg,

2    Robert DeMars, and Scott McCullough ("Plaintiffs") Motion for Class Certification, Appointment of

3    Class Representatives, and Appointment of Class Counsel.

4    **I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

5    Plaintiffs' motion to certify a class fails for the same reason their individual claims fail, as set

6    forth in Google's pending motion to dismiss, or in the alternative for summary judgment:  Plaintiffs have

7    not a shred of evidence that either they or any other putative class member has suffered any damage at

8    all.  Specifically, there is no evidence that anyone's email address, name, or location has ever been

9    obtained by any Android application ("App") developer at all, much less that any such developer has

10   subsequently misused that information to either its benefit or Plaintiffs' detriment.  As a result, there is

11   simply no common issue of liability to be tried, much less on a class-wide basis.  This is a breach of

12   contract case,[1] and damages are an element of a breach of contract claim.  While Plaintiffs state (without

13   citation) that "pecuniary injury is not required to establish Plaintiffs' breach of contract claim," (Motion

14   at 7), *some* form of injury[2] is, and Plaintiffs and the class cannot establish that element of their claim.

15   In resolving a motion for class certification, this Court's overarching task "is to determine how

16   the case will be tried."  Fed. R. Civ. P. 23, Advisory Committee Note to 2003 Amendments.  In other

17   words, the Court must persuade itself that it could practically manage and try the case using class-wide,

18   as opposed to individualized, proof, and that doing so would be more effective (i.e., "preferable") than

19   individual treatment.  That core issue should guide the Court's analysis of whether the proposed class

20   meets the four requirements of Rule 23(a), and any of the three separate bases under Rule 23(b), for

21   certifying a class.  Because this is a practical inquiry and not a theoretical one, the Court must make its

22   determination based on the actual facts—not on the pleadings.  "The class action is an exception to the

23   usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart*

24   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted).  "In

25   order to justify a departure from that rule, a class representative must be part of the class and possess the

26

27   ---
     [1] Plaintiffs' other remaining claim, under Section 17200, is derivative of the contract claim, and is
     effectively moot, as it sought only injunctive relief barring a practice that was discontinued over a year
     ago.

28   [2] Or, in injunctive or specific performance claims not at issue here, the threat of injury.

1

same interest and suffer the same injury as the class members." *Id.* "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (emphasis in original). "Rule 23 does not set forth a mere pleading standard." *Id.*; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.") (citation omitted); *Kamakahi v. Am. Society for Reproductive Med.*, 305 F.R.D. 164, 175 (N.D. Cal. 2015) (same); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (when aspects of the Rule 23 inquiry, "such as 'the difficulties likely to be encountered in the management of a class action,' overlap the merits . . . then the judge must make a preliminary inquiry into the merits.").

Plaintiffs cannot survive that inquiry. They fail on numerosity, because they cannot establish damages to anyone, much less both themselves and a sufficiently large class to make class treatment preferable. Although they rely on the expert opinion of Mr. Torres as their sole evidence of damage, it is nothing of the sort. As discussed below, Mr. Torres relied entirely on the since-withdrawn allegations of the complaint, was provided no relevant evidence beyond those allegations, and as a result incorrectly assumed that information was actually transmitted to each and every App developer. When questioned, he admitted that he was aware of no evidence that any such transmission ever occurred, and thus that he could not offer any opinion of actual damage to anyone, but was merely describing his view of potential, unrealized risks.

On typicality, Plaintiffs' individual claims are typical to the putative class only in the sense that, on the now-closed record, no class member has suffered damages, thus no class member can state a breach of contract claim, and thus on that trivial level Plaintiffs are typical. If, on the other hand, Plaintiffs could establish a class of persons who have actually suffered some cognizable injury, and could thus state a claim for breach of contract, Plaintiffs are atypical.

On commonality, Plaintiffs elide the near-impossible task of determining whether—and how— each class member has allegedly been injured by resorting to their well-worn mantra equating the past, unrealized *possibility* of damages to actual damages. The thesaurus is ever expanding:  the speculation

1   that, in the past, an unscrupulous app developer might have looked up one or more putative class

2   members' email addresses, and then somehow misused that information, is variously described as

3   "disclosure," "publication," "sharing," leveraging," "sale," "making available," "provision," or "use."

4   But in order to establish the alleged damage to each class member, and thus to establish liability,

5   Plaintiffs will have to prove more than that they *might* have been harmed.  They must prove that harm

6   occurred, and there is no common issue of fact that goes to that proof.  Rather, the trier of fact would

7   have to consider separately whether each of the tens of thousands of app developers who have used

8   Google Play or its predecessor (1) accessed users' name, email, or location, and (2) thereafter did

9   anything with that information that either damaged the users or enriched themselves.  That particularized

10  inquiry overwhelms the handful of facts common to the putative class.  Indeed, there are no common

11  issues to try, as any common issues—the text of Google's Terms of Service and the facts of what

12  information could have been accessed, and how, by developers—are undisputed.  The absence of triable

13  common issues of fact is separately fatal to a class claim.

14        Finally, Plaintiffs fail the fourth prong of certification:  adequacy of representation.  It may be

15  that there are individuals who zealously guard the privacy of their own email addresses, would not

16  disclose them to an app developer, and thus would have grounds to object if an app developer obtained

17  that information.  There may be a subset of *those* individuals whose information was in fact obtained by

18  an app developer, and a subset of *those* whose information was misused in some way that injured them.

19  But Plaintiffs are not among them, and cannot represent them.  All three Plaintiffs unhesitatingly share

20  that same information with the world, for free.  For example, the first thing Mr. McCullough did after

21  purchasing Backpacker GPS Trails Pro was to provide precisely the same information directly to the

22  developer in the process of registering to use the App.  And, according to the record none of the three

23  Plaintiffs had their information obtained or misused by an app developer.

24        Thus Plaintiffs cannot meet any of Rule 23(a)'s requirements of numerosity, commonality,

25  typicality, and adequacy, and they must meet them all.   But the next hurdle—predominance—is even

26  higher.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

27  cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

28  (1997).  Rule 23(b)(3) "is far more demanding" than the commonality test under Rule 23(a)(2).  *Id.* at

623–24.  Here again, the individualized inquiry into the conduct of every developer's practices and

conduct utterly dwarfs any common issues.  At a minimum, in order to determine whether *any* purchaser

of any App has a claim, the Court will need to try the question whether the developer of each of tens of

thousands of Apps in fact ever looked up information concerning any of its purchasers, let alone

thereafter misused that information in any of the ways Plaintiffs and their expert hypothesize.  In

addition, the Court will have to determine, on an individualized basis, whether each class member has

voluntarily provided the same information to those developers (as is typical in registering for many

Apps), in which case there has of course been no damage even if the same developer acquired the same

information from Google as well.  Place all of those inquiries on one pan of the scale.  On the other pan

there is only one disputed common question, and it is hypothetical:  *if* an App developer obtained users'

names and email addresses from Google, and *if* that App developer misused that information to cause

harm to users or gain to itself, would that event constitute a breach of the user's contract with Google?

All of the *factual* elements of Plaintiffs' contract claim are either undisputed (formation and the terms of

the agreements) or individualized (causation and damages).  The scale tips dramatically against

predominance.

Perhaps cognizant of the foregoing barriers to class treatment, Plaintiffs suggest a half measure:

"issue certification" under Rule 23(c)(4).  In so doing, Plaintiffs misapprehend the nature of Rule

23(c)(4) certification.  Under that rule, a court may bifurcate a case, and (typically) try liability on a

class-wide basis, leaving the calculation of individual damages for later, separate calculation.  This

approach is typically used where the *fact* of damages can be established on a class-wide basis, but the

*amount* of damages varies.  It is even appropriate where some members of the class may have suffered no

injury at all.  But it is not appropriate, and we are aware of no case allowing it, in a situation such as this:

where Plaintiffs seek a class trial where there is no evidence that *anyone* has actually suffered damage,

and thus a trial of only a *subset* of the elements necessary to establish liability at all.

The law, and the Constitution, prohibit this, for at least three reasons:  *First*, piecemeal

adjudication of the elements of a single cause of action, by two juries, runs afoul of the Seventh

Amendment.  As explained by Judge Posner in *In the Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293,

1303 (7th Cir. 1995), it is improper to allow one jury to establish some of the elements of a claim and a

second jury to decide the rest. *Second*, Federal Courts are not in the business of issuing advisory opinions, and a trial of some of the elements of a contract claim (formation, plaintiff's performance, and breach), while leaving trial of the remaining elements (causation and damages) for another day is precisely that: It seeks an advisory opinion on the question whether, if Google's alleged breach is later found to have caused damage to someone, that fact would give rise to a cause of action. It is one thing to try the existence of damages, and thus establish liability, in a first phase, leaving the calculation of individual amounts for another day. It is quite another to leave proof of any damages aside entirely, and thus fail to try liability on any cause of action. And *third*, for the same reasons that a Rule 23(c)(3) class fails the predominance test, a Rule 23(c)(4) issue class would leave virtually all the work—on both liability and damages—to be done later.

## II. ARGUMENT

### A. Plaintiffs Cannot Establish The Existence of A Class

The first requirement of Rule 23(a) is numerosity. There must be a large enough group of individuals with the same cause or causes of action to justify trying their claims as a group. Plaintiffs cannot meet this test.

### 1. Plaintiffs cannot establish either breach or damage to anyone, let alone a sufficiently large group to justify class treatment

As Google noted in its pending motion, this case is in an odd posture. Both fact and expert discovery has closed, and we are briefing class certification, while the pleadings are not set and a Rule 12 motion is pending. But regardless, even if we assume the Plaintiffs' claims survive motions practice, the evidentiary record is closed. There is no evidence that will be available at trial that is not already in the parties' possession. And as we also previously noted, Plaintiffs' evidence has a gaping, insurmountable gap: they have exactly zero evidence of *either* any dissemination of their information to anyone *or* any damages whatsoever, either to themselves or to anyone else, as result. And unlike some other causes of action, damages aren't just a remedy in a breach of contract case: they are an element of the claim. Without breach and damages caused thereby, there is no cause of action. "A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, **defendant's breach and damage to plaintiff resulting therefrom**." *McKell v. Wash. Mut., Inc.*, 142

Cal. App. 4th 1457, 1489 (2006) (emphasis added); *see also Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1031 (2009).  Under California law, to state a claim for breach of contract a plaintiff must plead "the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012), *citing Gautier v. General Tel. Co.*, 234 Cal. App. 2d 302, 305, 44 Cal. Rptr. 404 (1965).  To establish contractual damages, a Plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511, 64 Cal. Rptr. 187 (1967) ("A breach of contract without damage is not actionable.").  Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury.  *See Aguilera*, 223 F.3d at 1015; *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).[3]

Plaintiffs suggest (Motion at 15) that *Robertson v. Facebook, Inc.*, 572 F. App'x 494 (9th Cir. 2014), holds that "contract damages may be established without a showing of pecuniary harm."  But that unpublished, one paragraph order says no such thing.  As we discussed at length in the pending motion to dismiss, what *Facebook* says, at most, is that *if* there is a "robust market" for the information at issue, and *if* the defendant took that information without leave or payment, the plaintiff may in fact have suffered pecuniary loss.  Def.'s Mot. to Dismiss Third Am. Compl. at 5–6, ECF No. 115.  But there are not, and have never been, any such claims in *this* case.  The *sole* injury alleged by Plaintiffs in their breach of contract claim is battery depletion and bandwidth use, and the parties have completed discovery based on those pleadings.  Moreover, there is no claim that *Google* obtained the Plaintiffs' information improperly:  to the contrary, Plaintiffs provided that information to Google as part of the process of opening a Wallet account.  And there is no evidence anyone else ever obtained the information at all, much less misused it.

---

[3] California does allow nominal damages in particular sorts of contract actions, but an award of nominal damages is required only where that award would either establish a property right or entitle the plaintiff to recover costs.  *See, e.g.*, *Am. Diversified Prods., Inc. v. RE/EX Valencia, Inc.*, No. B246501, 2014 WL 3696704, at *14 (Cal. Ct. App. July 25, 2014) (unpublished); *Sweet v. Johnson*, 169 Cal. App. 2d 630, 633–34 (1959) (same).  But nominal damages, even if available here, would be meaningless in a damages class action, as any costs would be recoverable with or without class certification.

If there was class-wide or widespread dissemination and misuse of Plaintiffs' and the putative class' email addresses or names, one would expect some evidence of it.[4]   Discovery from the developers of the Apps each Plaintiff purchased could have established whether any of those developers either accessed Plaintiffs' information or thereafter used it improperly.   This would hardly require a far-flung fishing expedition:   After all, two of the three Plaintiffs purchased only one and two Apps, respectively. But Plaintiffs chose not to ask.   Neither did they ask Google.   Nor have they adduced any evidence of any sale of email lists with their names and addresses, or identity theft, or credit card fraud, or any other harm whatsoever, much less any evidence tying such harm to Google Wallet or Google Play data.   On the Plaintiffs' evidence, there are no class members.

**2.      Mr. Torres' testimony does not establish any damages**

In the place of evidence of breach and damage, Plaintiffs place their eggs in the single basket of the testimony of Mr. Torres.   But Mr. Torres' testimony—once he understood that his assumption that the information at issue had actually been transmitted to every App developer was fallacy—consists of nothing more than speculation concerning a parade of hypothetical risks that might have occurred in the past.

At deposition, Mr. Torres made clear that he had incorrectly assumed that the now-withdrawn claim of automatic transmission from users' phones to every App developer was fact:

> Q: I see. And you say "and transmitted."   What is your basis for -- for believing that any personally identifiable information of any of the plaintiffs was in fact transmitted to any of the developers?
> MS. ZILKA: Objection to form.
> THE WITNESS: My understanding is that this transmission happened and it happens systematically.   I don't have a – you know, the information or – or the access to precisely determine who – whose information, to what developer, when.
> Q: Okay. When you say "My understanding is that this transmission happened," what transmission?
> A: The transmission of personally identifiable information of the class members to developers.
> Q: Okay.   And how do you know that happened?

---

[4]   In point of fact, although availability of names and emails in individual transaction records began in 2009, Plaintiffs' first evidence that anyone in the world was even aware of that fact is a blog post *four years later* by an Australian developer.   If there was a robust black market of App developers selling email lists to identity thieves, or spamming users with marketing pitches, it would be unlikely to have escaped notice.

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

A: Well, that is claimed in the complaint, and the Third Amended Complaint is what I'm basing my – my report on.
Q: I see.  So your evidence for the transmission having happened is the allegation of the complaint – in the complaint?
MS. ZILKA: Objection to form.
Q: Is that correct?
A: So my analysis and my opinions are based on my review of the complaint.  I – that's – that's it.
Q: I see.  So is it fair to say that you've been asked to assume that for each class member, their personally identifiable information has been transmitted to each developer for whom they bought an app?
A: My – my assumption or my – yeah, the underlying assumption is that what is argued in the complaint is correct, yes.

Page Decl. Ex. 1 (Torres Dep., Apr. 7, 2015) at 13:12–14:23.

Having assumed that sweeping counterfactual, based on no evidence, Mr. Torres then attempts to quantify the value of the risk the imagined dissemination would cost a user.  But the parade of horribles Mr. Torres posits, based on the mistaken assumption that every user's information has fallen into the potentially unscrupulous hands of each of thousands of developers, is a second level of rank speculation.  Mr. Torres posits three separate risks:  that developers might use the information for targeted marketing, that they might sell the information to others for "marketing or other uses," and that the developers' servers may be hacked.  Page Decl. Ex. 2 (Torres Report) ¶ 25.  But when pressed, Mr. Torres admits that he is unaware of any of those risks having ever materialized:

Q: [] And then you list three risks.  And I want to just double-check each of those.  The first is: "The developers may make secondary use of the information, such as targeted marketing."  Are you aware of any evidence that any Google app developer has ever made secondary use of any of plaintiffs' information such as targeting marketing -- targeted marketing?
A: No, I do not have any specific evidence of – of that.  As I say here, it's – there is a risk.
Q: Okay.  But you have – you have no evidentiary basis to – to opine that it has ever happened?
A: No, I don't – I don't have the evidence.
Q: Okay.  Your next risk that you identify is that: "The developers may make the information available to other third parties for marketing or other uses."  Same question: Do you have any evidentiary basis to believe that that has ever happened?
A: No.  This is not citing any evidence.  It's a reference to potential risks.
Q: Okay.  And the third risk you identify is that: "The developers' servers housing the information may be subject to security breaches and, thus, the information may be released to nefarious parties."  Do you have any evidentiary basis to believe that that has ever happened?
A: No, I don't have any evidence of it happening.

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

1   Page Decl. Ex. 1 at 143:1–144:11.

2          In short, Plaintiffs' claim for the very existence of a class rests entirely on the testimony of Mr.

3   Torres, and Mr. Torres' testimony in turn rests entirely on air.

4          These are hardly the only problems with Mr. Torres' opinions:  having assumed with no evidence

5   the fact of harm, he then proceeds to suggest possible values for that harm by reference to wholly

6   irrelevant data concerning the price of qualified mailing lists of new home buyers, the value to consumers

7   of protecting their credit card numbers, investment history, health records, and the like.  Google detailed

8   those failings both in the expert report of Douglas Kidder (Page Decl. Ex. 3 ¶¶ 16–55) and in its reply in

9   support of Google's pending motion to dismiss (ECF No. 115 at 12–14), and will not reprise them here.

10          One additional issue, however, requires mention.  Plaintiffs' argument *du jour* for damages

11   (having recognized that no information is transmitted from users' phones to developers) is that "Plaintiffs

12   and the Class members have lost the opportunity to sell that same personal information . . . ."  Motion at

13   8.  But there is no evidence *either* that a market for that information exists in the first place *or* that, if it

14   did, Plaintiffs have been excluded from it.  Mr. Torres attempts to support this imagined market by

15   reference to entirely different markets: in particular, the availability from a company named VistaPrint of

16   a mailing list of the *street addresses* of persons who have recently bought houses in a specified town or

17   zip code, for eighteen cents a name.[5]  He then applies that same price to Plaintiffs' email addresses.  But

18   the problem is that Mr. Torres is mistaken as to the VistaPrint product.  Both in his expert report and in

19   his deposition (even after the error had been pointed out to him in Mr. Kidder's report) Mr. Torres

20   insisted that VistaPrint was selling email addresses, not street addresses:

21          Q: Is that the service that you used as a comparable service here?
          A: Yes.
22          Q: Okay.  What is that service?
          A: Well, that database that you get access to is – contains names, email addresses, and the
23          ZIP code of the – of the person.
          Q: How do you know that?
24          A: Because I downloaded the sample information.
          Q: I see. And what did – do you produce – did you keep the sample information?
25          A: No.
          Q: What did – okay.
26

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5] The value of such a list is fairly obvious.  Any of us who have bought a home is familiar with the
     barrage of mail that promptly arrives offering all manner of local services needed by homeowners.

9

A: It has the risks [sic] instead of names and –
Q: Is it your belief that this is a service that provides email addresses as opposed to mailing addresses?
A: Yes.

Page Decl. Ex. 1 at 71:10–72:3.

Out of an excess of caution, Google thereafter had Mr. Kidder actually purchase the product on which Mr. Torres based his valuation, for a small town in New Hampshire.[6]  Mr. Torres is wrong:  the list, introduced into evidence at Mr. Kidder's deposition (Page Decl. Ex. 4 (Kidder Dep., May 1, 2015) at 232:4–233:16 & Ex. 5) is indeed a list of street addresses of new homeowners, not email addresses, and entirely irrelevant to Mr. Torres' purported valuation.[7]  And yet Plaintiffs continue to cite and rely on that valuation as their sole purported proof of harm.

### 3.      Unrealized past risk of damage is not damage

Without any evidence of actual harm to anyone, Plaintiffs are left to rely on Mr. Torres' speculation that the availability of email addresses to merchants might have posed the various risks described above.  As an initial matter, we are talking about *past* risk.  It is undisputed (depending on which system, Wallet or Play, each developer used) that the information at issue ceased being available between the Spring of 2013 and May 2014, the end of the purported class period.  A spill in a supermarket aisle may present a risk of injury at the time, but a year after it is cleaned up someone who didn't slip and fall cannot complain of the former, unrealized risk.

Moreover, even in cases where the risk is alleged to be continuing, it is established law in this Circuit that the mere risk of disclosure of personal information cannot support a claim:

---

[6] There is nothing special about the choice of Keene, NH.  It was chosen solely based on its small size, to limit the cost.

[7] This is hardly the sole example of Mr. Torres' willingness to rely unquestioningly on unsupported falsehoods.  For example, although he now disclaims any opinion that users' battery life is an element of damages (Page Decl. Ex. 1 at 52:12–23), he steadfastly maintains that, in the process of purchasing an App, the user's device "must" transmit the user's email address to Google:  "Q: And you believe that in order to make a purchase in the Google Play Store, a user's Android device must transmit the user's email address to Google? A: At one point during the transaction that email address has to be transmitted."  *Id.* at 54:10–15.  This is indisputably false, and Plaintiffs' counsel knows it.  Every detail of the purchase process has been detailed to them in the Declaration of Ficus Kirkpatrick (*see* ECF No. 105-10, & Page Decl. Ex. 6) and the technical specifications they have had for a year.  And yet they cite and rely on Mr. Torres' "opinion" concerning the value of bandwidth in their Motion.

1

2

3

4

5

6

7

> To the extent that Plaintiff seeks to establish a future harm, Plaintiff's allegation that his sensitive information *may* be transmitted via his browser history is too theoretical to support injury in-fact for the purposes of Article III standing. Plaintiff has not alleged that his browser history will be linked to his identity by LinkedIn and that this information will necessarily be transmitted to third parties, or indeed, how third party advertisers will be able to infer his personal identity from his anonymous LinkedIn user ID. Therefore, the Court finds these allegations to be insufficient to establish an injury-in-fact that is concrete and particularized, as well as actual and imminent. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009) (finding lack of standing because of the "conjectural and hypothetical nature" of the alleged injury).

8   *Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011)

9   (citation omitted). And that is precisely what Plaintiffs have here: the "conjectural and hypothetical"

10   musings of Mr. Torres concerning farfetched risks that might have been posed in the past, and nothing

11   more. There is no evidence of cognizable harm, or even the threat of harm, to any Plaintiff or putative

12   class member, let alone enough of them to satisfy Rule 23's numerosity requirement.

13   **B.      The Plaintiffs Cannot Meet Rule 23(a)'s Remaining Requirements**

14   The utter lack of evidence of any person with a viable claim should end the analysis at

15   numerosity. But Plaintiffs cannot meet Rule 23(a)'s remaining requirements either.

16   **1.      Commonality**

17   In order to certify a class, one must also establish that "there are questions of law or fact common

18   to the class." Fed. R. Civ. P. 23(a)(2). We discuss the issue in more detail *infra* as regards both

19   predominance and the proposed Rule 23(c)(4) issue class, but in short, the common issues are both few

20   and uncontroversial: a class trial of common issues would be exceedingly brief.

21   The formation and contents of each contract are not at issue: Google publishes and archives each

22   version of the relevant privacy policies and terms of use, and the dates on which each named Plaintiff

23   opened his Checkout or Wallet account and purchased each App are similarly undisputed. Those issues,

24   moreover, are not entirely common: different users were subject to different versions of those

25   agreements, and purchased different Apps at different times.

26   There is no commonality, however, as to any *disputed* facts, the resolution of which are necessary

27   to resolve the claims. As Plaintiffs concede, "[c]ommonality requires the plaintiff to demonstrate that the

28   class members have suffered the same injury." Motion at 10; *see also Dukes*, 131 S. Ct. at 2551.

11

1  Plaintiffs simply cannot meet that requirement.  No two Plaintiffs purchased the same App, and the

2  question whether the purchaser of any of tens of thousands of different Apps from different developers

3  was damaged would require trying what—if anything—each developer did.  *If* a particular developer

4  went to the trouble of individually looking up and assembling a list of his own customers' emails,[8] and *if*

5  that developer then violated his contract with Google and either used that data for marketing or sold it to

6  others for nefarious purposes, then there might be a subclass of customers of that particular developer.

7  But (putting aside the complete lack of evidence of anything of the sort), there are thousands upon

8  thousands of different developers, and thus common issues of fact could exist, if at all, only among the

9  members of each of thousands of potential corresponding subclasses.

10       Each putative class member's alleged damages—and thus the existence of liability at all—are

11  also individualized.  Many (perhaps most) users of most Apps freely provide the same information at

12  issue here (their email addresses, name, or location) to those Apps in the process of registering,

13  particularly in the case of paid Apps, where there is typically both an ongoing relationship and the need

14  to update and provide notices.  As noted, Plaintiff McCullough did precisely that in registering for his

15  paid App.  Where a putative class member freely provides the same App developer the same information

16  alleged to have been made available here, there cannot possibly be a claim of damage.  And that question

17  is an individual one as well, which can only be answered on a user-by-user, app-by-app basis.

18       Plaintiffs' theory—that some inchoate "harm" occurs simply as a result of the *risk* of access and

19  misuse—cannot overcome this problem.  In addition to being contrary to established law, as discussed

20  above, it simply will not suffice to make either damages or liability a common question.  This is not a

21  Rule 23(b)(2) case, where plaintiffs seek class-wide injunctive relief against an ongoing practice that

22  (they claim) poses a risk of damages.  The conduct at issue stopped long ago.  This is a Rule 23(b)(3)

23  case, seeking damages for breach of contract on a class-wide basis, and neither liability not damages are

24  common questions.

25

26  _____

[8] Of course, the simpler way for any developer to obtain the names and emails (or even precise GPS

27  locations) of its own customers is simply to ask them in the process of opening their accounts, as was in
   fact the case with the class representative discussed *infra*.  Nonetheless, Mr. Torres engages in elaborate

28  speculation that a developer might instead write a script to automate the process of retrieving, transaction
   by transaction, the same information from its Google Wallet account records.  Page Decl. Ex. 1 at 42:10–
   43:7.

1

### 2.     Typicality

2    As noted above, the three class representatives likely are typical of the putative class in the sense

3    that neither they nor anyone else has suffered any damages.  But if one assumes the counterfactual, that

4    there exists a class of persons who (1) place a pecuniary value on their own name and email address, and

5    (2) have had that information purloined and misused by any App developer, Plaintiffs are not typical of

6    them.

7    Mr. McCullough, for example, is a photographer.  He publishes (in the real sense of making it

8    available to the entire internet for free without restriction) a biography page on the popular website

9    Flickr, which contains his name, his email address, and both his hometown and his current residence.

10   Page Decl. Ex. 7 (McCullough Flickr Page).  He also had no compunction about providing that same

11   information to the very app developers at issue here:  as he testified in deposition, the first thing he did

12   after downloading one of the two apps he purchased, Backpacker GPS Trails Pro, was to register with the

13   developer by providing his name and email address, which he also includes on his business cards.  Page

14   Decl. Ex. 8 (McCullough Dep., Apr. 3, 2015) at 27–33.  Mr. Goldberg, the newest Plaintiff, is himself a

15   plaintiff's class action lawyer, and maintains a public website containing his name, his full street address,

16   his phone and fax numbers, and a "vcard" containing his email address.  *Id.* Ex. 9 (Goldberg Attorney

17   Page).  And Mr. DeMars maintains a public Kickstarter page via which he can be emailed freely.  *Id.* Ex.

18   10 (DeMars Kickstarter Page).  Any claim that this information has a quantifiable pecuniary or privacy

19   value to the proposed class representatives is impeached by their own actions.  If a class of persons exists

20   who feel differently, Plaintiffs are not typical of them, and cannot represent them.

21

### 3.     Adequacy

22   Rule 23(a)'s adequacy requirement focuses primarily on whether the interests of the

23   representatives' interests align with those of the class.  As the Supreme Court noted in *Dukes*, 131 S. Ct.

24   at 2550–51 n.5, adequacy, commonality, and typicality "tend to merge."  For the same reasons stated

25   above, if one posits the existence of a class with members who have suffered damages and have a claim,

26   Plaintiffs are not among them.  We do not, however, question that Plaintiffs' counsel has and will

27   vigorously press their putative claims.

28

1

### 4.    Ascertainability

2    Plaintiffs' argument on ascertainability similarly glosses over the elements of a cause of action

3 for breach of contract.  It is true that Google's records would enable the identification of persons who had

4 opened Wallet accounts and purchased Apps.  But that will not get Plaintiffs to an ascertainable class:

5 for that, it would be necessary to turn to the records of each of thousands of App developers, to determine

6 both whose information each developer obtained, how they obtained it, and what—if anything—that

7 developer did with that information to cause damage to its customers.

8    ### C.    Common Issues Do Not Predominate, and a Class Action is Thus Not Superior

9    In addition to satisfying all four prongs of Rule 23(a), Plaintiffs must satisfy one of the

10 requirements of Rule 23(b).  In this case, Plaintiffs assert Rule 23(b)(3):  "that the questions of law and

11 fact common to class members predominate over any questions affecting only individual members, and

12 that a class action is superior to other available methods for fairly and efficiently adjudicating the

13 controversy."  Rule 23(b)(3) "is far more demanding" than the commonality test under Rule 23(a)(2).

14 *Amchem Prods.*, 521 U.S. at 623–24.  The Plaintiffs bear the burden of establishing that common issues

15 of law or fact predominate.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Plaintiffs

16 cannot meet this burden.

17    While it is the case that the later need to calculate the *amount* of damages individually will not

18 necessarily defeat class certification, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013), this

19 is not such a case.  Here, the very *fact* of damage, and thus the establishment of liability at all, requires

20 individualized determination.  In such cases, where the question of liability is itself individualized, class

21 treatment is inappropriate.  *See, e.g.*, *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 130–31 (N.D. Cal.

22 Aug. 11, 2014) (distinguishing *Leyva* on that basis); *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D.

23 108, 120 (C.D. Cal. 1978) ("Fact of damage, on the other hand, is a sufficient ground on which to deny

24 certification"); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70–71 (4th Cir. 1977) (denying class where

25 fact of damage is an element of the claim requiring individual proof).

26    Similarly, where (as here) the proposed damages methodology is not applicable on a class-wide

27 basis, or includes elements "that are not the result of the wrong," certification is inappropriate.  *Comcast*

28 *Corp. v. Behrend*, 133 S. Ct. 1426, 1434 (2013).  Mr. Torres' report, as noted above, does just that,

1   suggesting a range of possible numbers that bear no relation to the alleged breach or the types of

2   information at issue here.

3         For the same reasons that Plaintiffs fail the commonality test, they *a fortiori* fail the far more

4   stringent predominance test.  A class trial of contested common issues would barely scratch the surface

5   of Plaintiffs' claims, and would do nothing to avoid or streamline subsequent individual determinations,

6   both on a developer-by-developer basis and a user-by-user basis.

7         **D.      An "Issue Class" is Inappropriate**

8         Plaintiffs correctly note that Rule 23(c)(4) allows the certification of individual issues in certain

9   circumstances, allowing (for example) courts to decide liability in circumstances where the calculation of

10  the amount of damages is individual and requires later calculation.  But none of the cases cited by

11  Plaintiffs, and none of which we are aware, permit class certification and trial of only *some* of the

12  elements of a claim, leaving to subsequent triers of fact the determination of the remaining elements.

13  And that is precisely what Plaintiffs propose here:  "Determining whether Google's conduct violates its

14  agreements with Class members is a question that can be answered in a single stroke . . . .  An answer to

15  that question would significantly ease the burden on **consumers seeking to establish Google's ultimate**

16  **liability, making later individual damages actions against Google exponentially more efficient.**"

17  Motion at 18 (emphasis added).

18        This suggestion runs squarely afoul of the Seventh Amendment.  As Judge Posner held in *Rhone-*

19  *Poulenc*, although courts have wide latitude to bifurcate and structure proceedings, "the district judge

20  must carve at the joint."  51 F.3d at 1302.  Specifically, courts may not divide up the trial of a single

21  cause of action—as Plaintiffs propose here—such that one jury decides some of the elements (in *Rhone-*

22  *Poulenc*, negligence) while a second jury decides the others (both there and here, liability and damages).

23  Bifurcation in the middle of the determination of liability inevitably intertwines the issues presented to

24  both juries, and violates the Seventh Amendment.  *Id.* at 1303–04; *see also In re Joint E. & S. Dist.*

25  *Asbestos Litig.*, 982 F.2d 721, 748–49 (2d Cir. 1992) (same).

26        Deciding less than an entire cause of action also implicates the Article III prohibition against

27  advisory opinions.  As the Supreme Court put it long ago, "[t]his Court is without power to

28  give advisory opinions.  It has long been its considered practice not to decide abstract, hypothetical or

1    contingent questions." *Ala. State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945) (internal

2    citations omitted); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 723–24 (E.D. Pa. 2001);

3    *In re One Canandaigua Props., Inc.*, 140 B.R. 616, 618 n.1 (W.D.N.Y. 1992) (deciding "but one element

4    of a cause of action" impermissible as advisory opinion, distinguishing partial summary judgment

5    because it "addresses an entire cause of action").  Plaintiffs ask this Court to do the former:  certify a

6    class and conduct a jury trial to decide only threshold elements of a cause of action, leaving the

7    determination of "Google's ultimate liability" on that cause of action to "later individual damages

8    actions."  This is the essence of an advisory opinion.

9           Finally, even if the structure suggested by Plaintiffs were permitted, it would be of little utility.

10   As discussed above, the common issues they propose to try in an "issue class action" are both largely

11   undisputed and dwarfed by the issues to be tried in the subsequent individual actions they envision.  To

12   make the imagined plaintiffs in those "later individual damages actions" wait for the class trial, and

13   perhaps appeal, of a tiny subset of their cause of action hardly streamlines anything.

14   **III.    CONCLUSION**

15          Plaintiffs' motion for class certification fails to meet the requirements of Rule 23, and should be

16   denied.

17

18   Dated:  June 2, 2015                        DURIE TANGRI LLP

19

20                                         By:  _____/s/ Michael H. Page_____
                                                         MICHAEL H. PAGE

21                                              Attorneys for Defendant
                                                GOOGLE INC.

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on June 2, 2015 with a copy of this document via the Court's CM/ECF system.

*/s/ Michael H. Page*
MICHAEL H. PAGE

OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION, APPOINTMENT OF CLASS REP
AND APPOINTMENT OF CLASS COUNSEL / CASE NO. 5:12-CV-01382-PSG