# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

```
_____
                                   )
                                   )
IN RE GOOGLE, INC. PRIVACY         )  Case No.
POLICY LITIGATION                  )  5:12-cv-01382-PSG
                                   )
_____)
```

VIDEOTAPED DEPOSITION OF FERNANDO TORRES
San Francisco, California
Tuesday, April 7, 2015
Volume I

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 2038295

Page 2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

_____
                                )
                                )
IN RE GOOGLE, INC. PRIVACY      ) Case No.
POLICY LITIGATION               ) 5:12-cv-01382-PSG
                                )
_____)

     Videotaped deposition of FERNANDO
TORRES, Volume I, taken on behalf of
Defendant Google, Inc., at 217 Leidesdorff
Street, San Francisco, California,
beginning at 9:28 a.m. and ending at
p.m., on Tuesday, April 7, 2015, before
SUZANNE F. BOSCHETTI, Certified Shorthand
Reporter No. 5111.

Page 14

1    A    The transmission of personally identifiable
2    information of the class members to developers.
3    Q    Okay.  And how do you know that happened?
4    A    Well, that is claimed in the complaint, and
5    the Third Amended Complaint is what I'm basing my --
6    my report on.
7    Q    I see.  So your evidence for the
8    transmission having happened is the allegation of
9    the complaint -- in the complaint?
10       MS. ZILKA:  Objection to form.
11   BY MR. PAGE:
12   Q    Is that correct?
13   A    So my analysis and my opinions are based on
14   my review of the complaint.  I -- that's -- that's
15   it.
16   Q    I see.  So is it fair to say that you've
17   been asked to assume that for each class member,
18   their personally identifiable information has been
19   transmitted to each developer for whom they bought
20   an app?
21   A    My -- my assumption or my -- yeah, the
22   underlying assumption is that what is argued in the
23   complaint is correct, yes.
24   Q    I see.  And -- okay.  And it's your
25   understanding that the complaint argues that every

1          hypothetical websites), requested the same
2          set of personal information from the
3          subjects.  The personal information
4          consisted of name, home address, phone
5          number, email address, credit card
6          information, and some" specific industry --
7          "and some industry-specific information.
8          In particular, travel websites requested
9          the person's occupation, travel purpose,
10         destination, and frequency of travel, as
11         well as frequent flyer numbers; health-care
12         websites asked for medical history, drug
13         allergies, and prescription record; and
14         financial websites asked for household
15         income, stock portfolio, and previous stock
16         trading experience."
17              Is it your expert opinion that it is valid
18    to take users' valuation of that set of personal
19    information and use it as an estimate of their
20    valuation of simply their name, their email and
21    their ZIP code?
22         A    Well, there are several things to that --
23    to that question.  First, they're not valuing the
24    information.  We've already covered the value of the
25    information outside of this section of the report.

1      Q    Mm-hmm.
2      A    So it is valid to use a complete experiment
3  that controls for all these other variables to
4  analyze people's valuation of their privacy interest
5  in order to value the privacy interest in this case.
6  It's -- I think methodologically it's proper to do
7  it.
8      Q    So you think it's okay to take a study
9  which, as you say, among U.S. subjects protection
10 against errors, improper access, and secondary use
11 of personal information, such as we just listed, and
12 use that value as the value of protecting against
13 disclosure of only your name, email address, and
14 coarse address?
15           MS. ZILKA:  Objection.
16           THE WITNESS:  I think you're misconstruing
17 how the experiment works and how it's being used
18 here.  The experiment values their consideration of
19 what the privacy is worth.  What does it take to
20 overcome the privacy concerns.  To properly do that,
21 you have to consider a lot of variables that are
22 involved and a range, a full range of disclosure
23 from the minimal to the more complete, which varies
24 depending on the industry, but it's a whole range.
25           So varying the range of this -- of the

1    disclosure is how you can value the appreciation or
2    the appraisal, the individual appraisal for privacy
3    at the different -- at the different instances. So
4    that is exactly how it has to be done.
5             So because the experiment focuses on
6    valuing the -- the appraisal by individuals of the
7    restriction, the gradual description of different
8    privacy restrictions, that is what measures the
9    privacy interests, and it's applicable in -- in this
10   case.
11   BY MR. PAGE:
12      Q   I see. So is it your expert opinion that
13   people's privacy interests have the same monetary
14   value regardless of what the information at issue
15   is?
16            MS. ZILKA: Objection.
17            THE WITNESS: No, not exactly. That is one
18   of the points that is brought out in the results of
19   the experiment. And that is -- in fact, it's really
20   behind the range that -- between the lower and upper
21   bound that is set out here. The initial disclosure
22   of -- of the information is more valuable than
23   much -- than continuing to disclose more and more
24   and more information eventually so that you're
25   disclosing that -- its stock trading experience, for

1    example, in that stock trading website -- stock
2    trading experience in that stock trading example.
3    That is the principle of diminishing return in -- in
4    economics.  The marginal utility of keeping that
5    additional information private diminishes --
6    BY MR. PAGE:
7        Q    I see.
8        A    -- because once you -- you know, the
9    disclosure of the basic information we're talking
10   about in this case is the first step.  But if they
11   know -- if you've already given your name and your
12   email address and your location, it's easier to let
13   go or you ask less value from the other side for
14   additional information, maybe to the question do you
15   have stocks or not.  Then to the additional question
16   you're going to place a lower and lower value.
17           So if they already know what you own, how
18   you trade your email address, your tax ID number,
19   your email address and everything else, whether you
20   tell them that you have experience or not barely
21   increases the -- the value.
22           So in the range of value, the upper level
23   is for the initial disclosure of the basic
24   information.  The lower level is when you're already
25   disclosing a lot of information.