DURIE TANGRI LLP
MICHAEL H. PAGE (SBN 154913)
mpage@durietangri.com
JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
SONALI D. MAITRA (SBN 254896)
smaitra@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:     415-236-6300

Attorneys for Defendant
GOOGLE INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION | Case No. 5:12-cv-01382-PSG<br><br>**CONSOLIDATED CLASS ACTION**<br><br>**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF FERNANDO TORRES**<br><br>Date:    August 11, 2015<br>Time:    10:00 a.m.<br>Ctrm:    5 - 4th Floor<br>Judge:  Honorable Paul Singh Grewal |

Plaintiffs' opposition to Google's *Daubert* motion fails to address the central flaw in Mr. Torres' opinion: One cannot determine the price of oranges by simply looking up the price of apples and declaring they are the same because apples are the closest "comparable" available.

Plaintiffs defend that "methodology" as accepted "market-based" analysis, but it is nothing of the sort. Suppose, for example, one wants to determine the fair market-based price for a 1974 Ford Mustang. But when one goes on craigslist or eBay, none is for sale today. However, there is a 1974 Ferrari for sale for $700,000, and a 1974 AMC Gremlin for sale for $4,500.

Can one, based on that data, conclude that the fair price for a 1974 Mustang is either $4,500 or $700,000? Of course not. Neither is a rational "proxy" for the Mustang, and there is no scientific basis to accept either just because they are also cars. But that is precisely what Mr. Torres has done:

> In my Report, I state that the market value of the personally identifiable information at issue is measurable via the proxy of the prices paid for consumer email databases for mass marketing purposes.

Reply Declaration of Fernando Torres, Dkt. No. 130-3 ¶ 3.

The problem—as explained in Google's motion and Mr. Kidder's declaration—is that Mr. Torres makes no effort to make the necessary next step, and adjust the prices of widely disparate products to account for their differences. Finding the closest available comparable is only the first step. If the only comparable home sale in a neighborhood is for a three bedroom home, and one is trying to value a two bedroom home down the street, one could perhaps look at the national ratio of prices of the two, and apply that ratio. Or in our car example, one could look at original sale prices, ages, and/or past auctions, derive applicable ratios, and apply them. In this case, one could presumably research relative values of different sorts of data (home addresses vs. credit card numbers vs. email addresses) in other contexts and adjust accordingly.

But Mr. Torres has done none of this. He has simply taken what he believed (erroneously) to be the price of a comparable product, and applied it with no adjustment or analysis. You can't just take the closest analogue you find and quit: by doing so, Mr. Torres' Mustang is priced at $700,000.

Plaintiffs respond, as is the norm, with the mantra that these fundamental flaws go to the "weight, not the admissibility," of Mr. Torres' testimony. Opp'n at 2, 7, 11. But this misapprehends the gatekeeping function of *Daubert* analysis. It is the Court's role to keep from the trier of fact opinions

1

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE TESTIMONY OF FERNANDO TORRES / CASE NO. 5:12-CV-01382-PSG

that are not based on "sufficient facts or data." *Newkirk v. ConAgra Foods*, *Inc.*, 727 F. Supp. 2d 1006, 1016 (E.D. Wash. 2010); *Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).  If the two sides' experts disagreed on Mr. Torres' calculations based on data from a market for email addresses, that disagreement might be a weight issue for the jury.  But where—as here—there is an absence of underlying facts on which to base the opinion in the first place, *Daubert* demands exclusion.

This is of course not the only error Mr. Torres makes.  In order to have a market-based valuation, one needs a market, as Plaintiffs themselves explain in their Opposition (at 9–14).  But unlike (for example) Ford Mustangs, Mr. Torres' report does not contain or rely on evidence of *any* market—robust or otherwise, at any price—for email addresses and names.  There may or may not be one: its existence is intuitively questionable, given that we all (including the named Plaintiffs) typically give our email addresses to virtually anyone for free.  But if that market exists at all, Mr. Torres' report is not based on it:  he relies solely on a price from a market for mailing addresses, together with an academic study of a hypothetical market for vastly more personal information.

Plaintiffs attempt to elide this failing by arguing that Mr. Torres, despite erroneously mistaking the VistaPrint list of mailing addresses as one of email addresses, also relies on a second data source, EMAILZIPCODE.NET.  Opp'n at 8.  This is doubly wrong.  *First*, Mr. Torres does not rely on that data at all:  he instead simply discards it, relying instead on the much higher price of VistaPrint.  And *second*, EMAILZIPCODE.NET is not a comparable list of email addresses and names *either*.  As pointed out in Google's motion and Mr. Kidder's report and exhibits, that list also includes street addresses, gender, area code, and date of birth.  Dkt. Nos. 131-2 – 131-5 (Page Decl. Exs. A, D).  Neither of the two sources on which Mr. Torres purports to base his opinion "demonstrate the existence of a market for the data at issue." Opp'n at 8.

In addition, as explained previously, he assumes not only the fact of liability but also the fact of harm.  Plaintiffs defend this as proper, portraying Google's objection as simply as importing Google's view of the jury's likely conclusion into the realm of expert valuation.  But again, this misses the point: without knowing *what* harm he is valuing, how can Mr. Torres value it?  He identifies various *risks* of harm, but is forthcoming in admitting that he has no basis on which to assume that any of those risks has ever occurred.  *A fortiori*, he cannot make a reasoned valuation in a vacuum:  presenting a list of possible

2

DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE TESTIMONY OF FERNANDO TORRES / CASE NO. 5:12-CV-01382-PSG

prices of possible events to a jury, without identifying which (if any) event has in fact occurred, cannot possibly assist the trier of fact. Plaintiffs' damages theory—that they have somehow been harmed even if the identified risk has never been realized and cannot be realized in the future—is ambitious, but Mr. Torres' report does not speak to it. It attempts to price an injury that he has no reason to believe ever happened, and is of no more relevance to a jury than a guess at the harm that might have occurred had a defective tire not been replaced before failing. Most fundamentally, it cannot be relied upon as the *only* basis to bootstrap a finding of the very harm it simply assumes.

Nowhere is the circularity of Plaintiffs' reasoning more evident than in their effort to explain away the lack of any actual harm in any actual marketplace. As Plaintiffs put it, "[s]imply put, what app developer would pay the Class members for their names and email addresses when the app developer was provided that information by Google without having to make any payment?" Opp'n at 1–2. This is perfect bootstrapping: we can explain away the absence of any actual harm from developer access to data by presuming the existence of a "robust market" from which Plaintiffs have been excluded. Simultaneously, we can explain away the lack of evidence of the very existence of that market by presuming that developers have in fact been improperly using that data for free—a proposition for which there is zero evidence. This circular exercise is unconvincing as an explanation for *why* there is no market, but even if it held together, it cannot explain why an expert opinion of a hypothetical price in that nonexistent market should pass *Daubert* scrutiny.

Finally, Plaintiffs suggest that Google's *Daubert* motion, filed five months before trial, is too late. Nonsense. Regarding the pending motion to dismiss or for summary judgment, Google made the same arguments there, and that motion stands submitted: Google does not expect the Court to rely on this motion in deciding that one. As for class certification, this motion and Plaintiffs' motion for certification are set for argument the same day, and there is no reason the Court cannot consider both together. Indeed, if anyone is disadvantaged, it is Google, as our class certification opposition was filed before Plaintiffs' opposition to this motion. But in any event, again, the same objections to Mr. Torres' report are raised in that opposition. The fact that Google has also filed a formal *Daubert* motion does not alter the analysis.

Google's *Daubert* motion is timely. If anything, it is early: *Daubert* motions are typically brought either in conjunction with dispositive motions (the filing deadline for which is in this case August 14, 2015; *see* Dkt. No. 92 at 2) or as pretrial motions *in limine*. *See, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1131 (9th Cir. 2002) ("Defendants linked their summary judgment motion to dozens of in limine motions . . . commonly known as '*Daubert* motions'"); *Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 993 (C.D. Cal. 1996) (*Daubert* motion in reality an alternate form of summary judgment motion).

Plaintiffs' Opposition cannot repair the fundamental flaws of Mr. Torres' report, and his testimony should be excluded.

Dated: July 7, 2015                              DURIE TANGRI LLP

By: _____*/s/ Michael H. Page*_____
                 MICHAEL H. PAGE

Attorneys for Defendant
GOOGLE INC.

# **CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on July 7, 2015 with a copy of this document via the Court's CM/ECF system.

*/s/ Michael H. Page*
MICHAEL H. PAGE